# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:19-CR-19-MHL |
| | ) |
| TROY GEORGE SKINNER, | ) **FILED UNDER SEAL**[1] |
| | ) |
| Defendant. | ) |
| | ) |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH FOUR ON FIFTH AMENDMENT DUE PROCESS GROUNDS

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Brian R. Hood and Katherine Martin, Assistant United States Attorneys, hereby responds in opposition to Defendant's Motion to Dismiss Counts One through Four on Fifth Amendment Due Process Grounds (ECF No. 27). For the reasons that follow, the defendant's motion should be denied.

**I.  FACTUAL BACKGROUND**

In December 2017, the defendant, TROY GEORGE SKINNER, ▮

▮

---

[1] Because the government's responsive pleadings to defendant's pretrial motions contain extensive references to facts which fall under the ambit of 18 U.S.C. §§ 3509(d)(1)(A) and 3509(d)(2), and consistent with the Court's Protective Order (ECF No. 4), the government's responses have been filed under seal.





When SKINNER was arrested on June 22, 2018, law enforcement officers seized

two cell phones from him: a Huawei ALE-L02 P8 Lite and a Samsung GT-I9300 Galaxy S III.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Searches of those devices and email accounts revealed the following child pornography images, which are charged in Counts One through Four of the Indictment.

Count One charges SKINNER with the production of an image file entitled 20180203_074421.jpg, on or about February 3-4, 2018.[2] ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] Because of the significant time difference between SKINNER's home in New Zealand and the Eastern Time Zone, depending on the exact hour of day when the image was produced the respective dates of production in New Zealand and Virginia could be different. To account for this possibility, all counts in the Indictment allege a two-day date range.

4



Count Two pertains to the production of a movie file entitled "Desktop 02.06.2018-03.16.130100.DVR.mp4, on or about February 5-6, 2018. Investigators found this movie file on SKINNER's Huawei cell phone that was seized at the time of his arrest in Goochland.

Count Three relates to an image file named "20180223_120558.jpg," created on or about February 22-23, 2018, that is connected to both SKINNER's Samsung phone as well as his ▮▮▮▮ account. ▮▮▮▮



Count Four is a movie file entitled "2018-03-05 17-50-35.flv" that SKINNER made on or about March 4-5, 2018.

---

[3] EXIF is short for "Exchangeable Image File Format," which is metadata relating to the image. When digital cameras take pictures, often the camera will save EXIF data about the photo, including information about the make and model of the camera itself, the date and time the photo was taken, and other information such as aperture size, exposure length, and if the camera is so equipped, geographical location information.



On June 20, 2018, SKINNER departed from Auckland, New Zealand, via Qantas Airlines, arriving in Sydney, Australia.  On the same day, SKINNER departed from Sydney, Australia, via American Airlines, arriving in Los Angeles, California.  SKINNER's travel on June 20 continued as he departed from Los Angeles, California, via American Airlines, arriving the next day on June 21, 2018, at Washington Dulles Airport in Dulles, Virginia.  On June 21, 2018, SKINNER took a Greyhound Bus from Washington, DC, to Richmond, Virginia.  SKINNER spent the night of June 21, 2018, at the Hostelling International in Richmond, located at 7 North 2nd Street, Richmond, Virginia 23219.

On June 22, 2018, SKINNER traveled to the Walmart Supercenter (hereafter "Walmart"), located at 11400 West Broad Street Road, Glen Allen, Virginia.  While at Walmart, SKINNER made two purchases.  SKINNER first purchased pepper spray.  In a separate transaction,

7

SKINNER purchased a clip knife and duct tape.

Later on the afternoon of June 22, 2018, SKINNER arrived at V1's residence in Goochland, Virginia. V1 had previously given SKINNER her actual home address during one of their online chat sessions. Footprints on the ground that matched the tread on SKINNER's shoes indicate that SKINNER did not walk up the driveway to V1's house, but rather approached the residence from nearby woods.

SKINNER attempted to gain entrance to the residence through a basement sliding glass door. Speaking through the glass door, SKINNER asked V1's mother for help. V1's mother told SKINNER to go away or she would call the police. SKINNER responded, "You're not going to help me?" or words to that effect, and the mother repeated her warning. At that point SKINNER picked up a hard object and began to beat on the glass of the basement sliding glass door. Unsurprisingly, V1, her sister and her mother were all frightened by SKINNER's actions, so they ran upstairs out of the basement and locked the door at the top of the steps. Family members telephoned V1's father, who in turn called 911. V1's father also instructed the mother to get the family pistol, which was in the house for protection. At one point, V1's mother called out to SKINNER from inside the house and demanded that he leave, told him that the police were on their way, and further told him that she had a gun.

The defendant eventually went up the stairs connected to an outside deck that was located over the basement sliding glass door through which SKINNER had first attempted to force his way into the residence. The entrance to the house from the deck was a wooden door that had a large glass panel. While on the deck, SKINNER took a large gardening stone and smashed the glass panel to this door. He then reached his upper body into the opening created by the smashed glass. As he was doing this, V1's mother shouted at him repeatedly that the police were on the way and that she had a gun and would shoot him. As SKINNER's hand was reaching the interior door knob

8

to unlock the door, V1's mother fired her handgun twice, striking SKINNER once in the neck with a bullet.

Law enforcement officers with the Goochland County Sheriff's Office (GCSO) arrived on the scene shortly thereafter and found SKINNER covered in blood and lying in a neighbor's yard. A GCSO deputy sheriff asked SKINNER what had happened. SKINNER told the deputy that he was shot while trying to break the window to the door. When the deputy asked further why was SKINNER had been trying to break the window, SKINNER said so that he could get to his girlfriend, or words to that effect.

In near proximity to SKINNER as he was lying on the ground was a sweatshirt, which investigators later connected to SKINNER. Underneath the sweatshirt was a knife, which was open and in an extended position. Officers also found a backpack nearby SKINNER, which they connected to him. A search of the backpack revealed a roll of duct tape. Investigators also recovered from SKINNER a small canister of pepper spray, as well as a hand-written checklist of items to bring, which included pepper spray and duct tape. As mentioned earlier, GCSO investigators identified and seized two cell phones from him – a Huawei ALE-L02 P8 Lite and a Samsung GT-I9300 Galaxy S III – which they turned over to the FBI for analysis.

## II.   LEGAL ARGUMENT

### A.   Defendant's *Mens Rea* Arguments Are Flawed

The above facts led to a five-count indictment against the defendant, Counts One through Four of which charge him with production of child pornography, in violation of 18 U.S.C. § 2251(a). The defendant argues that Counts One through Four should be dismissed because § 2251 is unconstitutional as-applied to him, or, in the alternative, the Court should give the jury a reasonable mistake of age instruction. SKINNER's argument, which at bottom involves an inaccurate interpretation and unwarranted extension of the Supreme Court's opinion in *United*

9

*States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), consists of two main parts.

The first part is an assumption that Congress' decision to exclude from § 2251(a) the requirement that the government prove a child pornography producer know the age of the child is only permissible because it is understood that perpetrators confront the victims personally and are therefore in a position to judge the child's age. From this assumption, which the defendant implicitly converts into a constitutional requirement, SKINNER argues that his relationship with the victim, which was over the Internet and not in person, renders § 2251 unconstitutional as applied to him because he was not physically around her to judge her age.

As discussed below, the presumption that child pornography producers are in the physical presence of their victims at some point is not an ingredient that is constitutionally necessary to justify Congress' decision not to require the government prove a defendant knew the age of his child victim. Moreover, the facts of the case clearly show that SKINNER had every bit of information necessary—including textual, audio and video information—for him to know V1's underage status every bit as well as if he had been in the same room with her. The defendant's motion is therefore without merit, and should be denied.

### 1. *Mens Rea Generally*

As discussed in greater detail below, SKINNER's *mens rea* arguments are flawed for multiple reasons. Indeed, a pervasive problem in SKINNER's motion is his loose and often imprecise use of the term "*mens rea*." In general, a crime consists of both a physical part, *i.e.*, an "*actus reus*," which is an act or omission, and a mental part, *i.e.*, "*mens rea*" ("guilty mind"), which is the state of mind necessary to make the act or omission a crime. The Model Penal Code, Section 2.02, describes four general types of *mens rea*, to include purposely, knowingly, recklessly and negligently. As noted by one legal scholar, there are a myriad of adjectives, and some verbs, that legislatures use to define the level of "guilty mind" or *mens rea* necessary to consummate a

10

criminal offense.[4]  Some minor public safety and health laws, *e.g.,* speeding, impose strict liability where no "guilty mind" is required to commit the offense.

### 2. *United States v. X-Citement Video, Inc., and Lack of Knowledge Regarding the Child Victim's Age*

Much of the defendant's argument to dismiss the production counts relies upon various passages from *United States v. X-Citement Video, Inc*., 513 U.S. 64 (1994), and cases interpreting that Supreme Court case.  Two important points about *X-Citement Video* must be noted at the outset.  First, *X-Citement Video* is a statutory interpretation decision, not one of constitutional analysis.  Second, the statute at issue in *X-Citement Video* was 18 U.S.C. § 2252, the distribution counterpart to § 2251(a)'s production prohibition.  In *X-Citement Video,* the Ninth Circuit had previously held that the language of § 2252 did not require knowledge of the child's age and thus violated the First Amendment.  The Supreme Court avoided the constitutional question, and as a matter of statutory interpretation, reversed the Ninth Circuit and concluded that a distribution offense under § 2252 did in fact require proof that the distributor knew that the performer was a minor.  *Id.* at 66.

In reaching that conclusion, the Supreme Court observed, in what has become well-known *dicta*, that § 2251 was different from § 2252 in that Congress intentionally struck "knowingly" from § 2251 when drafting the statute:  "The Conference Committee explained the deletion in § 2251(a) as reflecting an 'intent that it is not a necessary element of a prosecution that the

---

[4] "(1) Many statutes defining conduct which is criminal employ words (usually adverbs) or phrases indicating some type of bad-mind requirement: 'intentionally' or 'with intent to …'; 'knowingly' or 'with knowledge that …'; 'purposely' or 'for the purpose of …'; 'fraudulently' or 'with intent to defraud'; 'wilfully'; 'maliciously'; 'corruptly'; 'designedly'; 'recklessly'; 'wantonly'; 'unlawfully'; 'feloniously' and so on. (2) Some of the statutes use words or phrases indicating a requirement of fault, but not necessarily mental fault—*e.g.*, 'negligently,' 'carelessly,' or 'having reason to know …' (3) Some statutes define criminal conduct without any words or phrases indicating any express requirement of fault; thus 'whoever does so-and-so (or: whoever omits to do so-and-so) is guilty of a crime and subject to the following punishment …' However, although the statute may contain no adverbs or phrases indicating a requirement of fault, some fault may be inherent in a verb which the statute employs (*e.g.*, whoever 'refuses' to do something or 'permits' another to do something.)"  WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW, § 5.1(a) (3d ed. 2018)

11

defendant knew the actual age of the child.'"  *Id.* at 76.  Courts have noted that part of Congress' justification for this deletion is that child pornography producers who come in direct contact with the victim have a low risk of reasonable mistake of age and may be reasonably required to ascertain the victim's age.  *See, e.g., United States v. Malloy*, 568 F.3d 166, 172 (4th Cir. 2009).

Ignoring these overarching principles, SKINNER cherry-picks passages discussing general presumptions regarding common law scienter requirements for criminal offenses to support his position.  He quotes *Staples v. United States*, 511 U.S. 600, 605 (1994) for the idea that "[th]e existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence."  Motion at 5.  Continuing this argument, the defendant, relying on *X-Citement Video, Inc.*, 513 U.S. at 72, asserts, "[i]n fact, a 'presumption' exists in favor of a scienter requirement for 'each of the statutory elements that criminalize otherwise innocent conduct.'"  Motion at 5.  Taking this thread further, SKINNER argues:

> In *United States v. X-Citement Video, Inc.*, the Court found § 2252 to be "akin to the common-law offenses against the state, the person, property, or public morals, that presume a scienter requirement in the absence of express contrary intent." *Id*. at 71-72.

Motion at 6.

These general principles about *mens rea* are true as far as they go, but they utterly miss several fundamental points from *X-Citement Video* and other cases that are pertinent to SKINNER's case here.  The most obvious one is that in *X-Citement Video* the Supreme Court implicitly acknowledged that not every element of an offense must include a *mens rea* requirement.  Regarding the *X-Citement Video* quote immediately above from page 6 of the defendant's motion, the defendant's motion neglects to include an important qualifying footnote in that case, which reads:

> *Morissette's* treatment of the common-law presumption of *mens rea* recognized that

>the presumption expressly excepted "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." . . . But as in the criminalization of pornography production at 18 U.S.C. § 2251 . . . the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age. The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, *unavailable for questioning by the distributor or receiver*. Thus we do not think the common-law treatment of sex offenses militates against our construction of the present statute.

*X-Citement Video,* 513 U.S. at 72, n.2 (internal citations omitted) (emphasis added).

Not surprisingly, virtually every circuit to consider the knowledge question has held that it is neither an element of the offense nor available as an affirmative defense. *See, e.g., United States v. Griffith*, 284 F.3d 338 (2d Cir. 2002); *United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009); *United States v. Crow*, 164 F.3d 229 (5th Cir. 1999); *United States v. Humphrey*, 608 F.3d 955 (6th Cir. 2010); *United States v. Fletcher*, 634 F.3d 395 (7th Cir. 2011); *United States v. Wilson*, 565 F.3d 1059 (8th Cir. 2009); *United States v. Deverso*, 518 F.3d 1250 (11th Cir. 2008).

### 3. *Production of Child Pornography is a Crime Involving Specific Intent, Not Strict Liability*

SKINNER incorrectly relies on *United State v. Malloy*, 568 F.3d 166, 172 (4th Cir. 2009), for the argument that because the defendant's knowledge of a child's age is not an element of the offense, and reasonable mistake regarding the child's age is not an affirmative defense, § 2251 is a strict liability crime. Motion at 4. *Malloy's* holding that "[a] defendant's awareness of the victim's minority is not an element of the offense" does not, however, make § 2251 a strict liability crime containing no "guilty mind" requirement.

Section 2251(a) proscribes the employment or use of a minor to engage in sexually explicit conduct "for the purpose of producing" a visual depiction of such conduct. "In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent." *United States v.*

13

*Bailey*, 444 U.S. 394, 405 (1980). The statute, by requiring proof of purposeful conduct, clearly contains a scienter requirement, and in reality is a specific intent crime. *United States v. Esch*, 832 F.2d 531, 536 (10th Cir. 1987); s*ee also United States v. Fenton*, 654 F.Supp. 379, 380 (E.D. PA. 1987) (because government bears the burden of establishing that defendant acted purposefully to involve a minor in sexually explicit conduct and to produce a visual depiction of that conduct, statute's requirement to proof purposeful conduct establishes a scienter element, and thus § 2251(a) is not a strict liability but rather a specific intent offense).

### B.  Defendant's As-Applied Challenge Has Already Been Rejected by Courts

Several courts have rejected as-applied challenges to § 2251(a) that relied on arguments similar to the defendant's. The Eleventh Circuit's opinion in *United States v. Ruggiero*, 791 F.3d 1281 (11th Cir. 2015), contains several instructive parallels to the defendant's case here. Like SKINNER, the defendant in *Ruggiero* relied heavily on general discussions of *mens reas* in *X-Citement Video's* dicta to argue that § 2251(a) "violates the Fifth Amendment's Due Process Clause 'because it eliminates the element of *mens rea* from a criminal offense which is not a public welfare offense and which carries a severe penalty.'" *Id.* at 1284. The *Ruggerio* court flatly rejected the defendant's *mens rea*-based arguments, however, reasoning that:

> Although a criminal statute originating in common law is generally construed to include the ancient requirement of a culpable state of mind,' . . . the common law recognizes several exceptions to that rule of construction. The relevant one is an exception for sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent. Against that common law backdrop, Congress has enjoyed nearly unfettered discretion to exclude knowledge from the definition of statutory crimes in recognition that young children need special protection against sexual exploitation.

*Id.* at 1287 (internal citations and quotations omitted). The *Ruggerio* court further noted that "the Due Process Clause has rarely concerned itself with limiting Congress's 'wide latitude ... to declare

14

an offense and to exclude elements of knowledge and diligence from its definition.'" *Id.* (citing *Lambert v. California*, 355 U.S. 225, 228 (1957)).

At least one court has considered and rejected the notion, advanced by SKINNER, that when it comes to production of child pornography an online relationship falls outside of the *mens rea* analysis in *X-Citement Video* and related cases. In *United States v. Tollefson*, --- F.Supp.3d ---- (2019), 2019 WL 644831 (E.D. WI), the defendant was charged with production of child pornography under § 2251 stemming from several online Internet chats during which he persuaded a 13-year-old girl to record videos of herself masturbating, which eventually fell into the hands of law enforcement. The *Tollefson* defendant moved to dismiss the § 2251 count on as-applied due process grounds because the statute imposes strict liability with regard to a victim's age even for people who confront the child victim over the Internet, not face-to-face. *Id.* at *4. Without face-to-face contact, so the defendant argued, the pornography producer has no real opportunity to ascertain the victim's age. *Id.*

The *Tollefson* court thoroughly dismantled the defendant's argument. Citing *Hamling v. United States*, 418 U.S. 87, 121-23 (1974), the court noted that not every element of an offense must include scienter. Citing *Powell v. Texas*, 392 U.S. 514, 535 (1968), it observed that the Supreme Court has never ruled specifically when, if ever, the imposition of strict liability in a criminal statute by itself violates due process. Analyzing *Ruggiero* above, the court clarified that the common-law presumption of scienter, and its recognized exceptions, is a tool of statutory interpretation, and says nothing of Congress' authority to enact strict liability schemes. Concerning *X-Citement Video*, the *Tollefson* court observed what has already been discussed above, which is that *X-Citement Video* is a case about statutory construction, not constitutional limits. The *Tollefson* court explained that, at bottom:

A Fifth Amendment due process challenge to Section 2251 does not depend on what

>the *X-Citement Video* Court meant by "confronts the underage victim personally." To succeed on a due process claim, Tollefson would have to demonstrate that the legislature's exercise of its authority to enact a statute with strict liability as to knowledge of age, that covers virtual conduct, "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"

*Id.* at *9. The *Tollefson* court held that that was not the case there, noting that federal courts have uniformly rejected claims that the Constitution requires the government to prove that a child pornography producer knew his victim was underage, even if the defendant might have made a reasonable mistake as to the victim's age, and that the unique circumstances of Tollefson's case—that he confronted his victim only online—did not meaningfully set him apart from the defendants in all the other cases.

### III. CONCLUSION

For all of the above reasons, therefore, this Court should deny the defendant's motion.

          Respectfully submitted,

          G. ZACHARY TERWILLIGER
          UNITED STATES ATTORNEY

By:   */s/ Brian R. Hood*
      Brian R. Hood
      Katherine Lee Martin
      Assistant United States Attorneys
      United States Attorney's Office
      919 East Main Street, Suite 1900
      Richmond, VA 23219
      Telephone: (804) 819-5400
      Email: brian.hood@usdoj.gov
      Email. katherine.martin@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **April 26, 2019**, I filed the foregoing with the Clerk of Court, and provided a true copy to all counsel of record.

>Respectfully submitted,
>
>G. ZACHARY TERWILLIGER
>UNITED STATES ATTORNEY
>
>By: _/s/ Brian R. Hood_
>Assistant United States Attorney
>United States Attorney's Office
>919 East Main Street, Suite 1900
>Richmond, VA 23219
>Telephone: (804) 819-5400
>Email: brian.hood@usdoj.gov