IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No. 3:19cr19 |
| | ) | |
| **TROY GEORGE SKINNER,** | ) | |
| **Defendant** | ) | |

### MOTION TO DISMISS COUNTS ONE THROUGH NINE FOR LACK OF SUBJECT-MATTER JURISDICTION AND VIOLATION OF DUE PROCESS

Troy Skinner, through counsel, moves the Court to dismiss Counts One through Nine of the indictment for lack of subject-matter jurisdiction and alternatively as a violation of his right to due process.

### FACTS

Mr. Skinner is and always has been a citizen of New Zealand. In approximately December 2017, he "met" a young American woman online ███████████████████████. The platform allows users of the platform to "chat" with each other. The users can message each other in the platform to have a typed "conversation." The users can also talk with each other while on a video call. ████████████████████████████████████████

████████████████████████████████████████████████████████████████ Mr. Skinner truthfully told the young woman that he was twenty-four years old. In New Zealand, where Mr. Skinner was born, raised, and spent his entire life until coming to the United States in June 2018, the age one

---

████████████████████████████████████████████████████████████████████████████████

1

can legally consent to sexual activities is sixteen years. *See* Crimes Act 1961, 1961 No. 43, §134 (N.Z.) (as amended in 2005 through the Crimes Amendment Act 2005), attached here in relevant part as Exhibit A. In New Zealand, reasonable mistake of age is a defense to sexual conduct with a person under sixteen years old. *Id.* at § 134A.

 The government seized the images described in Counts One through Nine from Mr. Skinner's Google accounts, his phone, and his desktop computer. Mr. Skinner never shared these images or videos with anyone else. All of Mr. Skinner's conduct as it relates to Counts One through Nine happened in New Zealand.

## ARGUMENT

I. ***The Court lacks subject matter jurisdiction over Counts One through Nine because Congress did not intend 18 U.S.C. § 2251 to apply to conduct by a non-citizen for acts committed in a foreign land.***

Congress has the power to criminalize extraterritorial conduct, but only if "Congress clearly so provides." *United States v. Shibin*, 722 F.3d 233, 245 (4th Cir. 2013). The Supreme Court has repeatedly stated that there is a presumption against an American law applying extraterritorially. *See, e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) ("'The presumption against extraterritorial application helps ensure that the Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches.'"); *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255

2

(2010) ("When a statute gives no clear indication of an extraterritorial application, it has none."); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law."); *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173-74 (1993); *Smith v. United States*, 507 U.S. 197, 203-04 (1993) ("the presumption against extraterritorial application of United States statutes requires that any lingering doubt regarding the reach of the FTCA be resolved against its encompassing torts committed in Antarctica"). Here, Congress did not clearly provide in the statutory language that 18 U.S.C. § 2251(a) criminalize extraterritorial conduct.

Congress was well aware of its power to criminalize extraterritorial conduct in the child pornography context. In 18 U.S.C. § 2251(c), Congress criminalized the production of child pornography of a minor engaged in sexually explicit conduct that occurred "outside of the United States, its territories or possessions" when the person produced such pornography intending that it would be transported to the United States or produced such pornography and actually transported it to the United States. This provision was meant to deter people from the United States from traveling to other countries for the purpose of having sex with minors, making images or videos of it, and bringing it back to the United States. H.R. Rep. 108-66, at 62-63 (2003) ("The purpose of this section is to stop efforts by producers of child pornography to avoid criminal liability based on the fact that the child pornography was produced outside of the United States, but intended for use inside the United States."). In 18 U.S.C. § 2260, Congress criminalized production of child pornography outside of the United States for importation into the United States. Congress clearly intended for this statute to apply extraterritorially. *See* H.R. Rep. 103-469 (1994) ("H.R. 3993 would make it a federal offense for a person outside of the United States to employ or coerce a minor to engage in sexually explicit conduct in order to produce visual material for importation

into the United States or into waters within 12 miles of its coast, or to be involved in the trafficking of this material."). In contrast, there is nothing in the legislative history of 18 U.S.C. § 2251(a) that Congress intended the statute to apply extraterritorially. *See* S. Rep. 95-438, at 4-8 (1977) (describing domestic problem of child pornography and wanting to eradicate "highly organized, multimillion dollar industries that operate on a nationwide scale"). To the contrary, the Department of Justice commented that the law would not apply to material produced outside of the United States. *Id.* at 29 ("It is our understanding that many of the photographs and films the legislation would attempt to cover are in fact produced abroad; the legislation would not apply to such materials except for that portion of subsection 2252(a)(2) which punishes receipt from foreign commerce.").

There are a handful of cases, primarily stemming from a Ninth Circuit case, that hold in cases where a United States citizen produced child pornography overseas and subsequently returned to the United States with the pornography, that 18 U.S.C. § 2251(a) applied to extraterritorial acts in those situations. *See United States v. Thomas*, 893 F.2d 1066 (9th Cir. 1990) (relying on *United States v. Baker*, 609 F.2d 134 (5th Cir. 1980) (construing extraterritorial application of 21 U.S.C. § 841 and misconstruing *United States v. Bowman*, 260 U.S. 94 (1922)); *see also United States v. Kapordelis*, 569 F.3d 1291, 1306-07 (11th Cir. 2009) (relying solely on *Thomas*); *United States v. Harvey*, 2 F.3d 1318, 1327-28 (3d Cir. 1993) (relying on *Thomas* in evaluating sentencing guidelines issue and misconstruing *United States v. Bowman*, 260 U.S. 94 (1922)). In *Bowman*, two men aboard a steamship that the United States owned hatched a plot to defraud agents of the National Shipping Corporation, in which the United States held stock, by ordering 1,000 tons of fuel oil but only taking 600 tons onto the ship and pocketing the remaining

4

cash among themselves and two men in Rio Janeiro.[2] The defendants asserted that the United States did not have jurisdiction over the offense. The *Bowman* Court observed that:

> Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds, which affect the peace and good order of the community must, of course, be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed out side of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard.

*Id.* at 98. The *Bowman* Court went on to say, "But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents." *Id.* On its face, this latter language plainly describes an exception to the presumption against extraterritorial application for offenses that are committed against the United States as was the case in *Bowman* because the National Shipping Corporation was the entity the defendants were defrauding.

The Fifth Circuit in *United States v. Baker*, 609 F.2d 134 (5th Cir. 1980), took this latter language from *Bowman* and held that laws may apply extraterritorially even where Congress did not so specifically say "where the nature of the activities warranted a broad sweep of power." *Baker*, 609 F.2d at 137. Since *Bowman*, as noted above, the Supreme Court has been quite clear that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010); *see also E.E.O.C. v. Arabian American Oil. Co.*, 499 U.S. 244, 248-49 (1991) ("Aramco") ("It is a longstanding principle of

---

[2] The case discusses the ship's docking location as Rio Janeiro, which counsel understand to refer to Rio de Janeiro, a port city in Brazil. One of the men in Brazil was an American citizen. The other was a British citizen. The latter was not found and brought to trial. *Bowman*, 260 U.S. at 96.

American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'") (quoting *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949)). Thus, the *Thomas*, *Kapordelis*, and *Harvey* cases cited above are of limited relevance not only in that they involved an American citizen committing the acts abroad, but also because they purported to rely on an exception to the presumption against extraterritorial application of American laws that is limited to offenses against the United States itself.

As discussed above, there is no indication that Congress clearly intended for 18 U.S.C. § 2251(a) to apply extraterritorially to individuals such as Mr. Skinner, a non-citizen whose alleged production acts occurred solely abroad. The Court must dismiss Counts One through Nine for lack of subject matter jurisdiction in this case.

## II. *Prosecution of Mr. Skinner in Counts One through Nine violates his right to due process.*

Additionally, when the government seeks to prosecute a non-citizen for conduct occurring abroad, the Due Process Clause of the Fifth Amendment requires "a sufficient nexus between the defendant and the United States, so that such application [of the criminal law] would not be arbitrary or fundamentally unfair." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011). This "sufficient nexus" test in the criminal context "serves the same purpose as the 'minimum contacts' test in [civil] personal jurisdiction. It ensures that a United States court will assert jurisdiction only over a defendant who 'should reasonably anticipate being haled into court' in this country.'" *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In *United States v. Brehm*, 691 F.3d 547, 552 (4th Cir. 2012), the Fourth Circuit held that "[t]hough a criminal statute having extraterritorial reach is declared or conceded substantively valid under the Constitution, its enforcement in a particular instance must comport with due process. Some courts have, as a proxy

6

for due process, required 'a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary and fundamentally unfair.'" *Brehm*, 691 F.3d at 552 (citing to *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990) and *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003)).

In addition to requiring a sufficient nexus "between the defendant and the United States, the Due Process Clause also requires that foreign defendants receive fair warning that their conduct could expose them to criminal liability." The idea of fair warning is that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Al Kassar*, 660 F.3d at 119 (quoting *Bottle v. City of Columbia*, 378 U.S. 347, 351 (1964)). In the international context, "fair warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." *Id.*; *see also United States v. Ahmed*, No. 10-CR-131, 2011 WL 5041456, at *3 (S.D.N.Y. Oct. 21, 2011) (considering a due process challenge based on lack of fair warning in the context of a motion to dismiss); *United States v. Bin Laden*, 92 F. Supp. 2d 189, 218 (S.D.N.Y. 2000) (same), abrogated on other grounds by *United States v. Gatlin*, 216 F.3d 207, 212 n.6 (2d Cir. 2000).

In analyzing due process claims by foreign defendants based on a lack of notice, courts have considered whether the alleged acts are "self-evidently criminal," *Ahmed*, 2011 WL 5041456, at *3 (internal quotation marks and citation omitted), or, as the Eleventh Circuit has put it, "condemned universally by law-abiding nations." *United States v. Saac*, 632 F.3d 1203, 1210 (11th Cir. 2011) (internal quotation marks omitted). To the extent that a given crime is universally condemned, a defendant cannot reasonably complain that he did not know his conduct would render him subject to prosecution. *See Bin Laden*, 92 F. Supp. 2d at 218 (defendant could not

7

reasonably be surprised to learn that mass murder was illegal in the United States or anywhere else). By the same token, however, where an alleged crime is not self-evidently criminal and is not universally condemned, constitutionally sufficient notice is less likely to exist.

Counsel have not been able to find any opinions addressing cases similar to Mr. Skinner's as it relates to Counts One through Nine, where the government prosecuted a non-citizen for allegedly producing visual depictions under 18 U.S.C. § 2251(a) where the non-citizen's production actions were confined to a foreign country. In New Zealand, where all of Mr. Skinner's actions related to the alleged production of the charged visual depictions occurred, individuals sixteen years and older can consensually engage in sexual conduct. *See* Ex. A. Individuals who reasonably believe that they are engaging in consensual sexual activity with a person of age, when in fact the person is not of age, cannot be prosecuted criminally in New Zealand. *Id.* There could be no reasonable expectation by Mr. Skinner that his acts in New Zealand would render him subject to prosecution here.

## CONCLUSION

As discussed above, this Court does not have subject matter jurisdiction over Counts One through Nine in this case. Additionally, the government's prosecution of Mr. Skinner in Counts One through Nine violate his right to due process. The Court must dismiss Counts One through Nine.

Respectfully submitted,
TROY GEORGE SKINNER

By: _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600

8

Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

Robert Wagner
Va. Bar No. 27493
Office of the Federal Public Defender
701 East Broad Street, Suite 3600
Richmond, VA 23219
Ph. (804) 565-0808
Fax (804) 648-5033
robert_wagner@fd.org

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 10, 2020, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

      _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org