**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19cr19** |
| | ) | **Hon. M. Hannah Lauck** |
| **TROY G. SKINNER,** | ) | |
| | ) | **(FILED UNDER SEAL)** |
| **Defendant.** | ) | **Unredacted** |

**Defendant's Motion to Dismiss Counts One through Nine**
**On First Amendment Grounds**

COMES NOW, the defendant, by counsel, and moves this Court, pursuant to the First

Amendment of the United States Constitution, to dismiss Counts 1 through 9 of the pending

indictment. In the alternative, the defendant requests a reasonable mistake of age instruction.

Under the unique facts of this case, that is, the prosecution of a person engaged in online sexual

conduct, which is protected speech under the First Amendment between consenting adults,

Counts 1 through 4 of the government's indictment inhibits the exercise of expression, and chills

protected speech, to the extent that First Amendment interests are implicated. Counts 1 through 9

should be dismissed.

### *As Applied Challenge*

Mr. Skinner brings this case as an as-applied First Amendment challenge to the statute at

issue, Title 18 U.S.C. § 2251(a). It is the government's allegations of a violation of the statute

through online sexual conduct, as is found here, that violates the First Amendment, and not

through traditional applications of the statute involving production of child pornography, such as

live in-person recording or photographing. This is not brought as a facial challenge because Mr.

Skinner concedes that the statute has not been found to be unconstitutional in all or a substantial

number of its applications, which is required for a facial challenge. *See City of Los Angeles v.*

*Patel*, 135 S. Ct. 2443, 2450-51 (2015); *New York v. Ferber*, 458 U.S. 747, 769-71 (1982). In fact, federal circuits that have addressed this issue have held that the statute survives First Amendment challenges of this type in cases that do not involve online sexual conduct.  *See United States v. Malloy,* 568 F.3d 166, 173 (4th Cir. 2009) (concluding that "no reasonable mistake of age defense is constitutionally required" under § 2251(a)); *United States v. Humphrey,* 608 F.3d 955, 962 (6th Cir.2010) (First Amendment concerns do not require engrafting mistake-of-age defense onto § 2251(a)); *United States v. Crow,* 164 F.3d 229, 236 (5th Cir.1999) (defendant's "assertion that section 2251(a) is unconstitutional because it lacks a scienter requirement is meritless"); *United States v. Fletcher*, 634 F.3d 395, 404–05 (7th Cir. 2011); *United States v. Henry*, 827 F.3d 16, 23 (1st Cir. 2016). *But see United States v. United States District Court*, 858 F.2d 534 (9th Cir. 1988) (finding a scienter requirement in a §2251(a) prosecution).

Although the statute may be constitutional in many of its applications, in the particular circumstances of this case, it is not. And any as-applied challenge should be the addressed before a facial challenge in order to avoid "proceed[ing] to an overbreadth [facial] issue unnecessarily." *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989). It is in this context that Mr. Skinner proceeds with this First Amendment challenge.

### *Relevant Facts*

On February 6, 2019, Mr. Skinner was indicted on four counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), which carries a mandatory minimum sentence of fifteen years, and one count of kidnapping a minor, in violation of 18 U.S.C. § 1201(a)(1), (d) and (g), which carries a mandatory minimum sentence of twenty-five years, all stemming from conduct that occurred between December of 2017 and June of 2018.

Count 1 and 3 charge that, in violation of Title 18 U.S.C. § 2251(a), on February 3-4, 2018

(Count 1) and February 22-23, 2018 (Count 3), Mr. Skinner, while in New Zealand, allegedly

employed, used, persuaded, induced, enticed, and coerced a minor child in Goochland, Virginia,

to "engage in sexually explicit conduct for the purpose of producing visual depictions of such

conduct." Counts 2 and 4 alleges that Mr. Skinner, on February 5-6, 2018 (Count 2), March 4-5,

2018 (Count 4), employed, used, persuaded, induced, enticed, and coerced a minor child in

Goochland, Virginia, to not only "engage in sexually explicit conduct for the purpose of

producing visual depictions of such conduct,"  but also with the purpose of "transmitting a live

visual depiction of such conduct."

On September 18, 2019, the government obtained an 11-count Superseding Indictment

against Mr. Skinner after receiving additional evidence from New Zealand.  Counts 1 through 9

charged Mr. Skinner with production of child pornography, in violation of 18 U.S.C.

§ 2251(a), and Counts 10 and 11 charged him with kidnapping and attempted kidnapping of

a minor, in violation of 18 U.S.C. § 1201(a)(1), (d) and (g) (Count 10) and kidnapping and

attempted kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and (d) (Count 11).  The

Superseding Indictment expanded the dates of alleged production of child pornography back

to January 13-14, 2018 (Counts 1, 2 and 3), January 16-17, 2018 (Counts 4 and 5), and

January 25-26, 2018 (count 6) through February 5-6, 22-23, and March 4-5, 2018 (Counts 7

through 9, respectively).  The kidnapping allegations expanded upon the original indictment

from alleging that the young woman with whom Mr. Skinner had an online relationship was

kidnapped (Count 10), to include a kidnapping charge involving the young woman's mother

(Count 11).  The date of the alleged kidnappings remains the same, June 22, 2018.

The sequence of events that led to Mr. Skinner's appearance in Goochland County,

Virginia on June 22, 2018, where he was shot in the neck by █████ mother and arrested by

Goochland County authorities, provides an important backdrop for an understanding of how Mr. Skinner, who previously had no interactions with the criminal justice system, finds himself in the midst of a federal case that could land him in prison for most of his adult life. Mr. Skinner met RD on an online gaming site normally occupied by adults. He was not an online predator looking for juveniles to meet or exploit.

On this gaming site, Mr. Skinner, ██, and a third person, a woman of age, became friends and, over a period of time, Mr. Skinner and ██ left the site and started conversations separate from the third person. ██ told Mr. Skinner and the third person that ████████████████████████████████████████████████████████); the other woman was at least 20 years old. Both ██ and the other woman showed a personal romantic interest in Mr. Skinner; Mr. Skinner chose to pursue a friendship with ██ . ██ never revealed her true age to Mr. Skinner.

The relationship started in late December of 2017 as non-romantic at first; ████████ ████████████████████████████████████████████ Soon, though, in mid-January 2018, ██ expressed an interest in ending the online relationship with the other person and beginning an online romantic relationship with Mr. Skinner. Finding ██ to be attractive and of age, at least under New Zealand law (████████████████████████████ ████████████████████████████), Mr. Skinner embarked on a romantic online relationship with RD, believing that there was nothing unlawful or inappropriate about their relationship. They communicated over the online app Discord which would allow full voice and video interaction.

████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



There was talk of marriage and children for the online couple over the next few months and, as far as Mr. Skinner was concerned, he had found the love of his life. At the time of the burgeoning online relationship, it never occurred to Mr. Skinner that he may be doing anything illegal because he believed she was of the New Zealand legal age of consent of 16 ██████████████████ Mr. Skinner had no intent to violate any laws with regard to his online relationship with ██.

Over time, ██ grew weary of the online relationship with Mr. Skinner. By late May, she decided to move on to another online relationship and she cut off her communications with Mr. Skinner. As a consequence, Mr. Skinner was devastated. He suffers from serious mental health problems and this abandonment and rejection by ██ made matters much worse. When Mr. Skinner was 12 years old, his mother left him to live with his father, never to see him again. Since the breakup with ██ Mr. Skinner has wanted to kill himself. Mr. Skinner has been previously diagnosed with serious mental health disorders. Despite his heartache, he never distributed or shared with a third person any images of ██

*Argument*

The statute at issue in this case, 18 U.S.C. § 2251(a) and (e), provides in pertinent part: "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished [to a term of imprisonment of not less than 15 years] if that visual depiction was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means . . . ." This statute, as indicated above, is a strict liability offense. *See United States v. Malloy*, 568 F.3d 166, 172 (4th Cir. 2009) ("A defendant's awareness of the victim's minority is not an element of the offense").

The prosecution of this offense involves the defendant engaging in virtual sexual conduct, or video phone sex, with ▇▇. Title 18 U.S.C. § 2251(a) regulates unprotected speech and it is the age of the minor involved in the depiction that defines the boundary between speech that is constitutionally protected and speech that is not. *See Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 508 (1984) (in regulating unprotected speech, Congress may not improperly chill speech that is protected).  The question before the Court is whether § 2251(a) may subject Mr. Skinner to a strict liability standard for misjudging this boundary in the context of virtual online sex. Clearly the answer must be that it cannot.

In *Smith v. California*, 361 U.S. 147 (1959), the Supreme Court found unconstitutional an ordinance that criminalized the possession of obscene materials. The Court, in determining whether a bookseller can be subjected to a strict liability standard for selling obscene materials, stated that strict liability cannot be applied in situations where the

6

provisions of law "have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it." *Id*. at 151. To be sanctioned for possessing obscene materials, the Court found that the bookseller could not be punished if he did not have some knowledge of the contents of the obscene materials. *Id*. at 153.

What can be drawn from *Smith* is that a person cannot be placed in peril in distinguishing from protected and unprotected speech. In *Smith*, the defendant could only avoid liability by remaining silent, causing the person "to make only statements which 'steer far wide[] of the unlawful zone.' " *New York Times v. Sullivan*, 376 U.S. 254, 279 (1964) (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)). Section 2251(a), when applied to virtual online sexual activity, will have exactly this effect unless a reasonable mistake of age defense may be employed. A person's precise age is difficult enough to ascertain from personal contact; making that determination through a 10-inch screen is untenable. *See New York v. Ferber*, 458 U.S. 747, 765 (1982) (citing *Smith v. California*, 361 U.S. 147 (1959); *Hamling v. United States*, 418 U.S. 87 (1974) ("As with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant.").

The First Amendment does not allow the imposition of criminal punishments on a strict liability basis which would chill protected speech. Engaging in virtual or online sex with consenting adults is clearly protected speech. Allowing the prosecution of a person engaging in online sex without the protection of a reasonable mistake of age defense would seriously chill protected speech. The punishment of those who knowingly subject minors to sexual exploitation is a legitimate legislative function, but punishing the unsuspecting engaging in online conduct with mandatory minimum sentences of 15 years without a reasonable mistake of age defense violates the First Amendment.

For the Court to impose upon an act of Congress a defense that was not otherwise provided is no simple matter. However, this Court has the responsibility to give a statute a reasonable construction that will, if possible, save it from invalidation. *See Ferber*, 458 US at 769, n. 24. Under the presumption that Congress would not intend "absurd or glaringly unjust results," *Sorrells*, 287 U.S. at 450, the Court may engraft a mistake of age defense to avoid constitutional infirmity. Under the limited circumstances of online sexual conduct, permitting a defendant to prove their reasonable good-faith belief as to the age of the actor and the legality of their conduct would not seriously disrupt the operation of Section 2251(a), or hamper government's interest in protecting children from exploitation. Section 2251(a) should be subject to the narrowing construction of a mistake of age defense when confronted with the First Amendment infirmity presented here with this prosecution for a violation of the statute under online sexual circumstances.

### A.    Voluntary, Self-Created Sexual Visual Content by Minors Falls Outside of the *Ferber* Rule

Nearly thirty-seven years ago, before the advent of the internet, webcams, laptops, cell phone cameras, sexting, texting, or e-mail, the Supreme Court decided *New York v. Ferber*, 458 U.S. 747 (1982).  In *Ferber* the Supreme Court considered the constitutionality, under the First Amendment, of a New York statute that prohibited promoting a sexual performance by a child. *Id*. at 751.

The Supreme Court held, **first**, that the state's interest in "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id*. at 757.  It **next** noted that the distribution of such materials "is intrinsically related to the sexual abuse of children" because their distribution exacerbates the harm of the initial abuse, and because prosecution of distributors was a necessary part of the scheme to control "the sexual

exploitation of children." *Id*. at 759. **Third**, it noted that the distribution and sale of child pornography provided an "economic motive" for producers of such material to continue their abuse of children. *Id*. at 761. **Fourth**, the Court noted that the value of such materials, in an artistic, scientific or educational sense, was *de minimis*. *Id*. at 762-63. **Fifth**, in cautious language, it noted that placing child pornography outside of the protections of the First Amendment was "not incompatible" with prior decisions. *Id*. at 763. Proceeding to the defendant's facial overbreadth argument, it held that the New York statute did not impermissibly burden a substantial amount of protected speech, and left open the door to case-by-case First Amendment defenses: "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sactions, assertedly, may not be applied." *Id*. at 773-74 (quotations, citations omitted).

The social, technological, and legal landscapes have all changed in the intervening thirty-seven years. *Ferber* need not be overruled for Mr. Skinner to prevail; this Court should recognize that the rule established in *Ferber* does not apply in this case. Subsequent decisions of the Supreme Court have tied the First Amendment status of the scope of prohibited material to the concerns of harm to minors, none of which are implicated in this case. Subsequent decisions have also fatally undermined other justifications invoked by the *Ferber* Court.

The Supreme Court itself clarified the limits of *Ferber* in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). It noted that the materials at issue in *Ferber* were a "record of sexual abuse." *Id*. at 250. It noted that virtual child pornography was not "intrinsically related' to the sexual abuse of children" as in *Ferber*. *Id*. It held quite clearly that the *Ferber* Court "anchored its holding in the concern for the participants, whom it called the 'victims of child pornography.'" *Id*. It said, "*Ferber's* judgment about child pornography was based upon *how it was made*, not on what it communicated." *Id*. at 251. Thus, the Supreme Court tied the scope of

the definition of constitutionally-proscribable child pornography to the concerns with actual sexual abuse of children.  "In the case of the material covered by *Ferber*, the creation of the speech is itself the crime of child abuse," the Court further held.  *Id*. at 254.

If *how the materials were made* informs whether images of sexual activity by minors is proscribable, then materials voluntarily created by a minor him- or herself do not implicate the concern with "exploitation" and "abuse" identified by the *Ferber* Court.  A minor who is at home, and who voluntarily initiates an exchange of sexually explicit material with an individual literally on the other side of the planet cannot implicate the concerns with coercion and exploitation that were the basis of the decision in *Ferber*.

When *Ferber* was decided, it was unheard of, if not impossible, for a minor to instantaneously create and send sexually explicit images of him- or herself to an individual on another continent.  The Supreme Court has already shown that a change in the technological landscape can provide a ground for distinguishing its precedent.  In *Free Speech Coalition* itself, the Court held that virtual child pornography is not proscribable.  In other contexts, the Court has considered the rationale for the rule when deciding how prior cases apply in a new technological context.  *See, e.g.*, *Riley v. California*, 573 U.S. 373 (2014) (Fourth Amendment requires warrant to search cell phones); *Carpenter v. United States*, 138 S.Ct. 2206 (2018) (Fourth Amendment covers cell-site location data).

*Conclusion*

A reasonable mistake of age defense in this case would involve the Court allowing  a defense that Mr. Skinner reasonably believed that ▮ was of the age of consent in his home country. *See* **Motion to Dismiss Counts One through Four for Lack for Subject Matter Jurisdiction**, pp. 1-2, filed in conjunction with this motion. Failing to provide such an instruction under the facts and circumstances of this case would run afoul of the First Amendment and would require dismissal of Counts 1 through 9.

<div style="margin-left:40%">

Respectfully Submitted,
**TROY G. SKINNER**

</div>

By:         /s/

<div style="margin-left:45%">

Counsel

Robert J. Wagner
Va. Bar No. 27493
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0808
robert_wagner@fd.org


Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
laura_koenig@fd.org

</div>

**CERTIFICATE OF SERVICE**

       I hereby certify that on January 10, 2020, I filed the foregoing unredacted version of this pleading with the Clerk of the Court, and sent a notification of such filing to:

          Brian Hood
          Katherine Martin
          US Attorney's Office
          SunTrust Building
          919 East Main Street
          Suite 1900
          Richmond, VA 23219

                                 /s/
                         Robert J. Wagner
                         Va. Bar No. 27493
                         Assistant Federal Public Defender
                         Office of the Federal Public Defender
                         701 E. Broad St., Ste. 3600
                         Richmond, VA 23219
                         (804) 565-0830
                         robert_wagner@fd.org