IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:19cr19 |
| | ) | Hon. M. Hannah Lauck |
| TROY G. SKINNER, | ) | |
| | ) | |
| **Defendant.** | ) | |

**Defendant's Motion to Dismiss Counts One through Nine
On Fifth Amendment Due Process Grounds**

COMES NOW, the defendant, by counsel, and moves this Court, pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, to dismiss Counts 1 through 9 of the pending indictment. In the alternative, the defendant requests a reasonable mistake of age instruction. Under the facts of this case, which involves online sexual conduct, the defendant had no opportunity to interact in person with the alleged victim. Due process challenges to this statute have previously been met with the rationale that producers of child pornography meet face-to-face with their subjects, and so they can properly assess the age of the victims on a personal basis. This prosecution for production of child pornography is distinguishable from others in that respect. Therefore, Counts 1 through 9 should be dismissed on due process grounds based on this as-applied challenge.

*Relevant Facts*

On February 6, 2019, Mr. Skinner was indicted on four counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), which carries a mandatory minimum sentence of fifteen years, and one count of kidnapping a minor, in violation of 18 U.S.C. § 1201(a)(1), (d) and (g), which carries a mandatory minimum sentence of twenty-five years, all stemming from conduct that occurred between December of 2017 and June of

1

2018. Counts 1 and 3 charge that, in violation of Title 18 U.S.C. § 2251(a), on February 3-4, 2018 (Count 1) and February 22-23, 2018 (Count 3), Mr. Skinner, while in New Zealand, allegedly employed, used, persuaded, induced, enticed, and coerced a minor child in Goochland, Virginia, to "engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." Counts 2 and 4 alleges that Mr. Skinner, on February 5-6, 2018 (Count 2), March 4-5, 2018 (Count 4), employed, used, persuaded, induced, enticed, and coerced a minor child in Goochland, Virginia, to not only "engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct," but also with the purpose of "transmitting a live visual depiction of such conduct."

On September 18, 2019, the government obtained an 11-count Superseding Indictment against Mr. Skinner after receiving additional evidence from New Zealand.  Counts 1 through 9 charged Mr. Skinner with production of child pornography, in violation of 18 U.S.C. § 2251(a), and Counts 10 and 11 charged him with kidnapping and attempted kidnapping of a minor, in violation of 18 U.S.C. § 1201(a)(1), (d) and (g) (Count 10) and kidnapping and attempted kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and (d) (Count 11).  The Superseding Indictment expanded the dates of alleged production of child pornography back to January 13-14, 2018 (Counts 1, 2 and 3), January 16-17, 2018 (Counts 4 and 5), and January 25-26, 2018 (count 6) through February 5-6, 22-23, and March 4-5, 2018 (Counts 7 through 9, respectively).  The kidnapping allegations expanded upon the original indictment from alleging that the young woman with whom Mr. Skinner had an online relationship was kidnapped (Count 10), to include a kidnapping charge involving the young woman's mother (Count 11).  The date of the alleged kidnappings remains the same, June 22, 2018.

The sequence of events that led to Mr. Skinner's appearance in Goochland County, Virginia on June 22, 2018, where he was shot in the neck by ▒▒▒▒ and arrested by Goochland County authorities, provides an important backdrop for an understanding of how Mr. Skinner, who previously had no interactions with the criminal justice system, finds himself in the midst of a federal case that could land him in prison for most of his adult life. Mr. Skinner met ▒ on an online gaming site normally occupied by adults. He was not an online predator looking for juveniles to meet or exploit.

On this gaming site, Mr. Skinner, ▒, and a third person, a woman of age, became friends and, over a period of time, Mr. Skinner and ▒ left the site and started conversations separate from the third person. ▒ told Mr. Skinner and the third person that ▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒); the other woman was at least 20 years old. Both ▒ and the other woman showed a personal romantic interest in Mr. Skinner; Mr. Skinner chose to pursue a friendship with ▒▒ never revealed her true age to Mr. Skinner.

The relationship started in late December of 2017 as non-romantic at first; ▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. Soon, though, in mid-January 2018, ▒ expressed an interest in ending the online relationship with the other person and beginning an online romantic relationship with Mr. Skinner. Finding ▒ to be attractive and of age, at least under New Zealand law (▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒), Mr. Skinner embarked on a romantic online relationship with ▒, believing that there was nothing unlawful or inappropriate about their relationship. They communicated over the online app Discord which would allow full voice and video interaction.

3



There was talk of marriage and children for the online couple over the next few months and, as far as Mr. Skinner was concerned, he had found the love of his life. At the time of the burgeoning online relationship, it never occurred to Mr. Skinner that he may be doing anything illegal because he believed she was of the New Zealand legal age of consent of 16 ( ). Mr. Skinner had no intent to violate any laws with regard to his online relationship with .

Over time, grew weary of the online relationship with Mr. Skinner. By late May, she decided to move on to another online relationship and she cut off her communications with Mr. Skinner. As a consequence, Mr. Skinner was devastated. He suffers from serious mental health problems and this abandonment and rejection by made matters much worse. When Mr. Skinner was 12 years old, his mother left him to live with his father, never to see him again. Since the breakup with RD, Mr. Skinner has wanted to kill himself. Mr.

Skinner has been previously diagnosed with serious mental health disorders. Despite his heartache, he never distributed or shared with a third person any images of ▉.

### *Argument*

The statute at issue in this case, 18 U.S.C. § 2251(a) and (e), provides in pertinent part: "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished [to a term of imprisonment of not less than 15 years] if that visual depiction was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means . . . ." This statute, as indicated above, is a strict liability offense. *See United States v. Malloy*, 568 F.3d 166, 172 (4th Cir. 2009) ("A defendant's awareness of the victim's minority is not an element of the offense"). The Fourth Circuit in *Malloy* justifies this standard by comparing the offense of production of child pornography to traditional statutory rape laws where mistake of age is not a defense. The court cites to Supreme Court precedent, *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) to explain this standard, stating,

> 'the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age.' 513 U.S. at 72 n. 2, 115 S.Ct. 464. The Court also noted that the 'opportunity for reasonable mistake as to age' is extremely low in cases where the defendant comes into direct contact with the victim and she is available for questioning. *Id.* '[P]roducers may be convicted under § 2251(a) without proof they had knowledge of age.' *Id.* at 77 n. 5, 115 S.Ct. 464.

*Malloy*, 568 F.3d at 172. *See also Morissette v. United States,* 342 U.S. 246, 251 n. 8 (1952) ("as in the criminalization of pornography production at 18 U.S.C. §2251, the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age."). The difference in this case is that Mr. Skinner never had direct contact with ▉. During the

5

charged period of alleged production of child pornography, all of his communications flowed through computers and phones; he never saw ▅ outside the confines of her bedroom and only through a 10-inch screen. Until June of 2018, he was always more than 8500 miles from ▅.

"The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." *Staples v. United States*, 511 U.S. 600, 605 (1994), citing *United States v. United States Gypsum Co.*, 438 U.S. 422, 436 (1978). Scienter in some form is usually and traditionally a requirement of criminal responsibility. *United States v. Freed*, 401 U.S. 601, 607 (1971), citing *Morissette*, 342 U.S. at 251. In fact, a "presumption" exists in favor of a scienter requirement for "each of the statutory elements that criminalize otherwise innocent conduct." *See X-Citement Video, Inc.*, 513 U.S. at 72.

The notion that wrongdoing must be conscious in order to be criminal is fundamental to our justice system. Justice Jackson wrote:

> It is as universal and persistent in mature systems of law as belief in freedom on the human will and a consequent ability and duty of the normal individual to choose between good and evil… to constitute any crime there must first be a 'vicious will.'

*Morissette v. United States*, 342 U.S. 246, 250-51 (1952). More recently, the United States Supreme Court reinforced this rule that the imposition of criminal liability generally requires proof of mens rea. *See Staples v. United States*, 511 U.S. at 605 (1994). The *Staples* court held that criminal liability, generally, requires proof of mens rea: that a defendant must "know the facts that make his conduct illegal." *Id*. at 605. Here, based on the misrepresentations of his online companion, Troy Skinner never knew his conduct was illegal.

While Congress may impose strict liability, its ability to do so is not without limits. Strict liability has only been accepted in two narrow areas: public welfare offenses and crimes where it is reasonable to place the burden on the defendant to discover the facts that make the conduct

criminal. *See United States v. Freed*, 401 U.S. 601, 607 (1971); *Morissette,* 342 U.S. at 251 n. 8. Public welfare offenses generally involve items or conduct that by their very nature inform the defendant that his conduct may be subject to strict regulation. These offenses also usually carry only small penalties. The other category of offenses involves cases like the sexual assault of underage children and production of child pornography. In both examples, the defendant comes face-to-face with the victim and is therefore presumed to be able to ascertain the victim's age. *Id.*

In *United States v. X-Citement Video, Inc.*, the Court found § 2252 to be "akin to the common-law offenses against the state, the person, property, or public morals, that presume a scienter requirement in the absence of express contrary intent." *Id*. at 71-72. However, that same court found,

> the common-law presumption of mens rea . . . expressly excepted sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached the age of consent. But as in the criminalization of pornography production at 18 U.S.C. § 2251(a), the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age. The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver. Thus, we do not think the common-law treatment of sex offenses militates against our construction of the present statute.

*United States v. Humphrey*, 608 F.3d 955 (6th Cir. 2010) quoting *United States v. X-Citement Video, Inc.*, at 77, n.5. *See also Malloy*, 568 F.3d at 172. Both *Humphrey* and *Malloy* presumed that § 2251(a) involves (as it typically does) in-person viewing of the minor. *Humphrey*, 608 F.3d at 955 ("the perpetrator confronts the underage victim personally"); *Malloy*, 568 F.3d at 172 (same). Although this is generally true for violations of § 2251(a), it is not true in this case. Here, Troy Skinner was literally on the other side of the planet, and the only opportunity to observe ▮ came from whatever images she chose to convey, having full control over the camera and the images she sent.

7

Under the due process clause of the Fifth Amendment of the Constitution, the legislature's exercise of its authority to enact a statute with strict liability as to knowledge of age that sanctions or contemplates the online interactions of the kind presented in this case with a fifteen-year mandatory minimum sentence, offends principles of justice " 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *See United States v. Ransom*, 942 F.2d 775, 776–77 (10th Cir. 1991) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Our criminal laws and procedures require in almost all areas, a level of criminal intent and a degree of wrongdoing that is commensurate with the sanctions for the criminal conduct and the state of mind at issue. A person devoid of criminal intent, who conducts himself without any suggestion that a child is being exploited in any way, should not and cannot be subjected to a strict liability punishment of this magnitude. Congress, in enacting the child pornography laws, could not have envisioned this type of conduct and this minimal level of culpability resulting in a mandatory minimum sentence of any length, much less, fifteen years.

"Allowing defendants to prove their reasonable, good-faith belief as to the age of an actor would not seriously disrupt the effective operation of section 2251(a) or materially disrupt the vital effort to protect minors from sexual abuse. Such a defense would be entirely implausible under most circumstances, particularly in cases involving children or prepubescent teenagers." *United States v. United States Dist. Court for Cent. Dist.*, 858 F.2d 534, 541 (9th Cir. 1988). By precluding Mr. Skinner an opportunity to present a "reasonable-mistake-of-age" affirmative defense, both liberty and justice will be sacrificed. In the absence of a reasonable mistake of age defense when the defendant was not afforded an opportunity for a face-to-face personal encounter before the alleged offense, the prosecution of this conduct cannot survive a due process challenge.

The Fourth Circuit has already held that, as a matter of statutory construction, Congress did not intend to allow a mistake of age defense to § 2251(a). *United States v. Malloy*, 568 F.3d 166, 172 (4th Cir. 2009). It further held that mistake of age was not *facially* constitutionally required, *see id*. at 174-75, but the facts of that case involved the defendant personally having sex with a minor and videotaping the encounters. *Id*. at 169. The Court therefore did not address the proper result when the defendant has a meritorious *as-applied* challenge. In this case, because the statute has been conclusively construed to preclude a defense that is constitutionally required, dismissal is the appropriate remedy. "[I]t is for Congress, not [the] Court[s], to rewrite the statute." *Blount v. Rizzi*, 400 U.S. 410, 429 (1971) (declining to read in extra-textual but constitutionally-required avenue for judicial review, holding statute concerning impoundment of obscene materials unconstitutional). In the alternative, Mr. Skinner asks that the Court provide a mistake of age instruction to the jury in the trial of this matter.

### *Conclusion*

Mr. Skinner asks that the Court dismiss Counts 1 through 9 on due process grounds. The absence of a mistake of age defense under the facts and circumstances of this case deprives Mr. Skinner of his fundamental rights and offends principles of justice regarding criminal intent and mens rea.

WHEREFORE, Mr. Skinner respectfully requests that the charges as provided in Counts 1 through 9 be dismissed.

<div style="margin-left:40%">

Respectfully Submitted,
**TROY G. SKINNER**

By: \_\_\_\_\_/s/_____
      Counsel

Robert J. Wagner
Va. Bar No. 27493
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0808
robert_wagner@fd.org

Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
laura_koenig@fd.org

</div>

## CERTIFICATE OF SERVICE

  I hereby certify that on January 10, 2020, I filed the foregoing unredacted version of this pleading with the Clerk of the Court, and sent a notification of such filing to:

  Brian Hood
  Katherine Martin
  US Attorney's Office
  SunTrust Building
  919 East Main Street
  Suite 1900
  Richmond, VA 23219

                _____/s/_____
                Robert J. Wagner
                Va. Bar No. 27493
                Assistant Federal Public Defender
                Office of the Federal Public Defender
                701 E. Broad St., Ste. 3600
                Richmond, VA 23219
                (804) 565-0830
                robert_wagner@fd.org