IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal No. 3:19cr19-MHL |
| v. | ) |
| | ) |
| TROY GEORGE SKINNER, | ) **FILED UNDER SEAL**[1] |
| | ) |
| *Defendant.* | ) |
| | ) |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND VIOLATION OF DUE PROCESS**

The United States of America, by and through its undersigned attorneys, respectfully moves this Honorable Court to deny defendant TROY GEORGE SKINNER's motion to dismiss for lack of subject matter jurisdiction Counts One through Nine of the Indictment for the following reasons:

**FACTUAL SUMMARY**

[redacted]

---

[1] Portions of the government's responsive pleadings to defendant's motions have been redacted because they contain extensive references to facts which fall under the ambit of 18 U.S.C. § 3509(d)(1)(A) and § 3509(d)(2), and are covered by this Court's Protective Order, (Doc. No. 4).



## LEGAL STANDARD

In *RJR Nabisco, Inc. v. European Cmty*, the United States Supreme Court outlined a two-step framework for analyzing extraterritoriality issues. First, a court must consider whether a statute was intended to apply extraterritorially. 136 S.Ct. 2090, 2101 (2016). If the statute applies to extraterritorial conduct, the inquiry is over and the court may apply the statute to any conduct regardless of geography, absent some other limitation. *RJR Nabisco*, 136 S.Ct. at 2101.

If the statute does not apply extraterritorially, then a court must determine whether the case involves a domestic application of the statute. *Id.* In so doing, a court must examine the "focus" of the statute and determine if any alleged conduct that is relevant to that focus occurred in the United States. *Id.* The focus of a statute is the conduct that it seeks to regulate, as well as the parties that the statute seeks to protect. *WesternGeco LLC v. ION Geophysical Corp.*, 138 S.Ct. 2129, 2137-38 (2018). Whether a district court has subject matter jurisdiction is a question of law subject to de novo review. *United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994).

## ARGUMENT

In his motion, defendant argues that 18 U.S.C. § 2251(a) should not apply to a non-citizen acting outside the United States; that defendant's due process rights were arbitrarily and unfairly violated because no nexus existed between his conduct and the United States; and that defendant lacked "fair warning" that his conduct would expose him to prosecution in the United States. However, Congress clearly intended for Section 2251(a) to apply extraterritorially and use of the statute here does not offend due process. But even assuming the statute does not apply to extraterritorial conduct, defendant's offenses fall within the territorial jurisdiction of the United States given that he used a minor victim within the United States to engage in sexually explicit conduct within the United States for the purpose of producing a visual depiction that was transmitted from within the United States.

**A.     18 U.S.C. § 2251 Applies Extraterritorially**

The Court interprets federal law with the presumption that Congress ordinarily legislates with respect to domestic matters. *See Morrison v. Nat'l Austl. Bank*, 561 U.S. 247, 255 (2010) (citing *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). However, this is only a "canon

3

of construction … rather than a limit upon Congress's power to legislate." *Id.* Congress may explicitly draft a statute "to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control." *Id.*

Section 2251(a) currently provides:

> *Any* person who employs, uses, persuades, induces, entices or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or *foreign* commerce, or in any Territory of Possession of the United States, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished …, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or *foreign* commerce or in or affecting interstate or *foreign* commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or *foreign* commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or *foreign* commerce or in or affecting interstate or *foreign* commerce or mailed.

18 U.S.C. § 2251(a) (2019) (*emphasis added*). The plain language of this statute, which broadly refers to "any person" without limitation and references "foreign commerce" five separate times, reflects Congress's clear intent that the statute apply extraterritorially to both U.S. citizens and foreign nationals. Indeed, a district court in the Eastern District of New York recently concluded as much in *United States v. Kalichenko*, 2019 WL 1559422 (E.D.N.Y. April 10, 2019). In *Kalichenko*, the defendant, a Ukrainian citizen, filmed herself in the Ukraine performing various sexually explicit acts on her daughter. *Id.* at *1. Defendant then sent those videos to a United States citizen living in New York via her mobile phone and a parcel delivery service. *Id.* The district court denied defendant's motion to dismiss the indictment for lack of jurisdiction finding among other things that Congress drafted Section 2251 to ensure that the statute applied beyond

4

our borders. *Id.* at *3-4.

Specifically, the district court in *Kalichenko* found that the term "any person" as used in the statute encompasses both U.S. citizens and foreign nationals. *Id.* at n. 1. To read the term more narrowly would effectively immunize foreign nationals who commit crimes against children living in the United States. The district court further found that in 2008 Congress added the phrase "using any means or facility of interstate or *foreign* commerce" to Section 2251(a) to "clarify[]" that the statute's prohibition on the production of child pornography applied extraterritorially. *Id.* at *4; Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102(1), (4), 122 Stat. 4001 (2008).

Section 2251(a)'s plain meaning is illuminated further by the purpose, history and context of federal statutes criminalizing the exploitation of children. *See also RJR Nabisco, Inc.* 136 S.Ct. at 2102-03 ("While the presumption can be overcome only by a clear indication of extraterritorial effect, an express statement of extraterritoriality is not essential," and "context can be consulted as well."); *Louis Vuitton Malletier S.A.*, 676 F.3d 83, 108 (2d Cir. 2012) ("A particular statute's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." (internal quotations omitted)).

Congress first regulated child pornography in 1978, and has amended and expanded the statutes criminalizing offenses involving the exploitation of children several times over the years. *See, e.g.* Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, 92 Stat. 7 (1978); Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204 (1984); Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(1)(C) 120 Stat. 623

(2006); Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102(1), (4), 122 Stat. 4001 (2008). Section 2251 "is part of a comprehensive scheme created by Congress to eradicate the sexual exploitation of children and eliminate child pornography." *See United States v. Frank*, 599 F.3d 1221, 1231 (11th Cir. 2010). Congress recognized the need to create a scheme that "deals directly with the abuse of children that is inherent in the production of [child pornography]." S. Rep. No. 95-438, 95th Cong., 2d Sess. 10, *reprinted in* 1978 U.S.C.C.A.N. 40, 47. Indeed, a primary motivation for expanding the child-pornography laws was that "many of the sources of child pornography never came within the purview of federal investigators." *Id.*

Moreover, as internet technology evolved Congress expressed concern about child pornography's global scope. In the Child Protection and Safety Act, Congress found "the interstate market in child pornography is carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(1)(C) 120 Stat. 623 (2006). This finding was supplemented in 2008 by Congress's observation that this market is a "multibillion dollar industry of global proportions" and "readily available through virtually every internet technology." Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102(1), (4), 122 Stat. 4001 (2008). Ultimately, "the technological ease, lack of expense, and anonymity in obtaining and distributing child pornography over the internet has resulted in an explosion in the multijurisdictional distribution of child pornography." *Id.* at § 102(5). Accordingly, the purpose, history and context of Section 2251 evinces Congress's clear intent that courts should interpret the statute broadly.

Three circuit courts have concluded that Congress intended Section 2251(a) to apply extraterritorially. *See United States v. Kapordelis*, 569 F.3d 1291, 1307 (11th Cir. 2009) ("[W]e conclude that Congress intended to reach extraterritorial acts … that otherwise satisfy the statutory elements of 18 U.S.C. §2251(a)."); *United States v. Harvey*, 2 F.3d 1318, 1327-28 (3d Cir. 1993) (applying U.S.S.G. § 2G2.4(c)(1) extraterritorially because it closely resembles § 2251(a) which applies outside the United States); *United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir. 1990) ("Section 2251(a) does not explicitly state that it applies to conduct outside the United States…. [But] Congress has created a comprehensive statutory scheme to eradicate sexual exploitation of children."). Alternatively, no circuit courts have endorsed defendant's argument that the statutory language of Section 2251(a) does not encompass conduct outside the United States. *See* (Def.'s Mem. at 3-6).

Defendant points to Section 2251(c) and Section 2260 as examples of statutes that Congress explicitly drafted to reach foreign offenses involving child pornography. That is, Section 2260 criminalizes child pornography produced, received, transported, or distributed abroad intending that it be imported into the United States. And Section 2251(c) applies to an offender located in the United States who causes a minor located outside the United States to engage in sexually explicit conduct for the purpose of producing child pornography that the offender either intends to transport, or actually transports, to the United States. But these statutes actually support the argument that the statutory scheme as a whole is intended to "eradicate the sexual exploitation of children." *See Frank*, 599 F.3d at 1231. Indeed, it would be illogical to presume that Congress intended to protect minor children outside the United States from the "abuse … that is inherent in the production of child pornography," *see* S. Rep. No. 95-438, 95th

Cong., 2d Sess. 10, *reprinted in* 1978 U.S.C.C.A.N. 40, 47, but that it did not intend to protect minor citizens within the United States from the exact same abuse perpetrated by predators from other countries.

It is clear that Section 2251 can be applied extraterritorially to a non-citizen acting outside the United States based on the unambiguous language of the statute, and because restricting this statute to the domestic production of child pornography would severely diminish its effectiveness.

**B.      Skinner's Offenses Have Sufficient Nexus To United States**

The Fourth Circuit has recognized that once a statute is construed as having extraterritorial application, due process is not satisfied unless there is "a sufficient nexus between the defendant and the United States, so that [the] application [of the statute] would not be arbitrary or fundamentally unfair." *United States v. Mohammad-Omar*, 323 Fed. Appx. 259, 261 (4th Cir. 2009) (quoting *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003)). The nexus requirement, the Fourth Circuit reasoned, "serves the same purpose as the minimum contacts test in personal jurisdiction," namely ensuring that "a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country." *Id.*

Courts that have applied this nexus test have considered a wide range of factors including (1) the defendant's actual contacts with the United States, including his citizenship or residency; (2) the location of the acts giving rise to the alleged offense; (3) the intended effect a defendant's conduct has on or within the United States; and (4) the impact on significant United States' interests. *See Yousef,* 327 F.3d at 112 (finding a sufficient nexus existed between the defendants and the United States "[g]iven the substantial intended effect of their [planned] attack on the

8

United States and its citizens"); *United States v. Davis,* 905 F.2d 245, 247 (9th Cir. 1990) (finding the nexus requirement satisfied where the captain's intent to smuggle contraband into United States territory demonstrated that the "attempted transaction is aimed at causing criminal acts within the United States"); *Mohammad–Omar,* 323 F. App'x. at 262 (finding sufficient nexus between foreign citizen and the United States on account of drug activity in Afghanistan, Dubai, and Ghana because the defendant knew the drugs were destined for the United States); *United States v. Shahani–Jahromi,* 286 F.Supp.2d 723, 725 (E.D.Va. 2003) (finding a sufficient nexus when defendant retained his child in Iran in violation of the mother's lawful American custody order because the defendant and child were United States citizens, the marriage between the defendant and mother took place in the United States., and the United States has a clear interest in ensuring that parental rights are protected); *United States v. Clark,* 315 F.Supp.2d 1127, 1133 (W.D.Wash.2004) (finding the nexus requirement satisfied in a case involving illicit sexual conduct with a child in a foreign country because the defendant, an American citizen, "could reasonably anticipate being haled into court in the United States for illicit sexual conduct with a child in a foreign country.").

Here, the facts alleged establish a sufficient nexus between defendant and the United States to warrant prosecuting defendant in this country. █████████████████

████████████████████████████████████████████████████████████████████████████████

9

███████████████████

"For non-citizens acting entirely abroad, a jurisdictional nexus exists where the aim of the activity is to cause harm inside the United States or to U.S. citizens or interests." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011). ███████

███████ ███████ As the Supreme Court has noted, the production of child pornography is intrinsically related to child sex abuse because "the materials produced are a permanent record of the child[]'s participation." *New York v. Ferber*, 458 U.S. 747, 759 (1982). Each viewing of such images is injurious as well. *See Ashcroft v. Free Speech Coalition,* 525 U.S. 234, 249 (2002) ("Like a defamatory statement, each new publication … [causes] new injury to the child's reputation and emotional well-being."). This is true even if defendant did not distribute the visual depictions he produced, but instead continued to possess and view them himself. *See United States v. Sherman,* 268 F.3d 539, 547 (7th Cir.2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy."); *United States v. Norris,* 159 F.3d 926, 930 (5th Cir.1998)

███████

("the mere existence of child pornography represents an invasion of privacy of the child depicted"); *United States v. Church,* 701 F.Supp.2d 814, 2010 WL 1270209, at *6 (W.D.Va. April 5, 2010) ("Possession of child pornography offends the victim's rights to privacy due to the inherently nonconsensual nature of the production and dissemination of the material.").

### C. Skinner Had Fair Warning Conduct Would Subject Him to Criminal Prosecution

The Fourth Circuit has emphasized that "[f]air warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States so long as they reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." *United States v. Brehm*, 691 F.3d 547, 554 (4th Cir. 2012) (internal citations omitted). (Def.'s Mot. at 7-8). And fair warning certainly does not require that defendant be subject to prosecution in his own country especially if he understood that he could be subject to criminal prosecution in the United States.

Defendant, thus, had reason to expect that his conduct would be illegal in the United States where the age of majority is 18 years old. In other words:

11

> Even assuming [defendant] was ignorant of the law as he claims, he must bear the risk of the potential illegality of his conduct. The child pornography laws are directly related to a commonly understood moral censure. The very nature of child pornography, which is commonly regulated throughout the world, should cause a reasonable person to investigate the laws of the United States before sending such material into this country. This is not a case where due process prohibits convicting a person who has unwittingly broken the law through conduct which an ordinary person would not assume to be at least potentially criminal.

*United States v. Moncini*, 882 F.2d 401, 405-406 (9th Cir. 1989) (citations omitted).

More to the point, 

12

███████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

In short, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

**D.     Skinner's Offenses Are Within Territorial Jurisdiction Of United States**

Assuming for the sake of argument that Section 2251 does not apply extraterritorially, the court still has territorial jurisdiction over Counts One through Nine. Generally, territorial jurisdiction is proper where "the offense, or part of the offense, occurred within the United States." *See Moncini*, 882 F.2d at 402-04. In this regard, "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it," justify the exercise of territorial jurisdiction. *See Strassheim v. Daily*, 221 U.S. 280, 285 (1911). In determining whether conduct was territorial or extraterritorial in nature, the Fourth Circuit has concluded that the analysis should turn on "whether the participants, acts, targets, and effects involved in the transaction at issue are primarily foreign or primarily domestic." *In re French*, 440 F.3d 145, 149-50 (4th Cir.

13

2006).

 Accordingly, multiple material elements of the charged offenses occurred domestically.[3] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Because part of the offense happened in the United States, territorial jurisdiction is proper.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny the defendant's motion to dismiss Counts One through Nine of the Indictment.

---

[3] The elements of Section 2251(a) are:

(1) The defendant employed, used, persuaded, induced, enticed, or coerced any minor to engage in any sexually explicit conduct;
(2) The defendant did so for the purpose of either producing any visual depiction of such sexually explicit conduct or transmitting a live visual depiction of such sexually explicit conduct; and
(3) The defendant knew or had reason to know:
   a. That such visual depiction would be transported or transmitted using any means or facility of interstate of foreign commerce or in or affecting interstate or foreign commerce or mailed;
   b. That the visual depiction was produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or
   c. That the visual depiction had actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a); *see e.g.*, *United States v. Engle*, 676 F.3d 405, 416-17 (4th Cir. 2012).

        Respectfully submitted,

        G. Zachary Terwilliger
        United States Attorney

By:    \_\_/s/_____
        Brian Hood
        Katherine Lee Martin
        Assistant United States Attorneys
        United States Attorney's Office
        919 East Main Street, Suite 1900
        Richmond, Virginia 23219
        Phone: (804) 819-5400
        Fax: (804) 771-2316

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **January 24, 2020**, I filed the foregoing with the Clerk of Court, and provided a true copy to all counsel of record.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:  \_\_/s/_____
Brian Hood
Katherine Lee Martin
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: katherine.martin@usdoj.gov