IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 3:19cr19-MHL |
| v. | ) | |
| | ) | |
| TROY GEORGE SKINNER, | ) | **FILED UNDER SEAL**[1] |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through its undersigned attorneys, respectfully

moves this Honorable Court to deny defendant TROY GEORGE SKINNER's motion to

suppress evidence for the following reasons:

### FACTUAL SUMMARY

On July 20, 2018, an agent of the Federal Bureau of Investigation (FBI) ("Affiant #1")

submitted an application for a warrant to search two cell phones recovered from defendant at the

time of his arrest.  The application was based on an 18-page affidavit, submitted by Affiant #1,

describing potential violations of 4 criminal statutes, specifically production of child pornography,

in violation of 18 U.S.C. § 2251(a); distribution or receipt of child pornography, in violation of 18

U.S.C. § 2252A(a)(2); enticement of a minor, in violation of 18 U.S.C. § 2422(b); and kidnapping,

in violation of 18 U.S.C. 1201(a).

---

[1] Portions of the government's responsive pleadings to defendant's motions have been redacted because they contain extensive references to facts which fall under the ambit of 18 U.S.C. § 3509(d)(1)(A) and § 3509(d)(2), and are covered by this Court's Protective Order, (Doc. No. 4).

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

After describing the evidence of potential criminal violations, the affidavit set forth reasons to believe that pertinent information and other materials would be found on defendant's cell phones. [REDACTED] Cell Phones Aff. ¶ 34.  Attachment B to the warrant identified items subject to search, including but not limited to records falling within 10 specific categories:

2

a. Any and all visual depictions of minors;

b. Any and all communications with minors;

c. Any and all communications with other individuals about Victim 1;

d. Any and all communications with other individuals that discuss TROY GEORGE SKINNER's plan to travel, or which discuss his actual travel, from New Zealand to the Richmond, Virginia area, which travel occurred during June 2018;

e. Any and all address books, names, and lists of names and addresses of minors;

f. Any and all diaries, notebooks, notes, and any other records reflecting physical contact, whether real or imagined, with minors, and any such items discussing sexual activities with minors;

g. Any and all child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings, diaries, and sexual aids;

h. All records and information relating to any and all Discord accoutns/usernames used by TROY GEORGE SKINNER, ████████████████████████████
████████████████████

i. All records and information relating to the location, past or present, of TROY GEORGE SKINNER;

j. All records relating to TROY GEORGE SKINNER's Internet search and online shopping histories.

The attachment also identified an additional 11 categories of evidence subject to search all relating to use or access to the cell phones.  A federal magistrate judge approved the warrant application (hereinafter "Cell Phones Warrant").

Following a search of defendant's Huawei cell phone for the items identified in Attachment B to the Cell Phones Warrant, the government identified a movie file entitled "Desktop 02.06.2018-03.16.130100.DVR.mp4" which was created on or about February 5-6, 2018. ████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████ This movie file serves as the basis for

Count Seven in the Superseding Indictment.

On October 12, 2018, another agent of the FBI ("Affiant #2) submitted applications for

two warrants to search two separate email accounts associated with defendant.  These applications

both were based on the same 17-page affidavit, submitted by Affiant #2, describing the potential

violations of the same criminal statutes listed in the Cell Phones Warrant.  After describing again

the evidence of these potential criminal violations, the affidavit set forth reasons to believe that

pertinent records and other material would be found in the identified email accounts.  This

included information that the movie file (described above), which was recovered from defendant's

cell phone, was downloaded to the phone on or about June 19, 2018 from defendant's

██████████████████ account.  Gmail Aff. ¶¶ 41-42.  The same Attachment

B was incorporated by each warrant and permitted the seizure of items occurring after December

25, 2017 until the date of the warrant.  The attachment identified items subject to search,

including but not limited to records falling within 11 specific categories:

     a. All contact information, including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

     b. All records pertaining to other accounts with which SUBJECT ACCOUNTS may have shared Google Drive content, specifically video and/or picture content;

     c. Any and all visual depictions of minors;

     d. Any and all communications with minors, both public and private messages;

     e. Any and all communications with other individuals about Victim 1, both public and private messages;

     f. Any and all documents and communications relating to the manner and means of abduction and kidnapping another person, including: 1) tools and techniques for gaining access to buildings, vehicles and separately secured containers; 2) tools and techniques for restraining individuals; and 3) information about torture and methods

4

of disposing of bodies.;

g.  Any and all documents relating to TROY GEORGE SKINNER's plans to travel, or his actual travel, from New Zealand to the Richmond, Virginia area, including any communications with other individuals about his travel, information and or documents relating to methods and means of travel, lodging, points of interest, and safety and security while traveling, including but not limited to personal safety and information security;

h.  All records or other information stored by an individual using the account, including address books, contact and buddy lists, servers the user participates in, pictures, and files;

i.  Any and all communications, notes, and any other records reflecting physical contact, whether real or imagined, with minors, and any such items discussing sexual activities with minors;

j.  Any and all child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings, diaries, and sexual aids;

k.  All records and information relating to the location, past or present, of TROY GEORGE SKINNER.

A federal magistrate judge also approved these warrant applications (hereinafter the "Gmail Warrants").

Following a search of defendant's ▮▮▮▮▮▮▮▮▮▮ account for the items identified in Attachment B to the Gmail Warrants, the government identified an image file entitled "20180223_120558.jpg", which was created on or about February 22-23, 2018.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This image file serves as the basis for Count Eight in the Superseding Indictment.

Following a search of defendant's ▮▮▮▮▮▮▮▮▮▮ account for the items identified in Attachment B to the Gmail Warrants, the government identified a movie file entitled "2018-03-05 17-50-35.flv", which was created on or about March 4-5, 2018.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████

█████████ ████████████████████████████████ This movie

file serves as the basis for Count Nine in the Superseding Indictment.

Defendant now moves to suppress evidence found on his cell phones and in his email accounts claiming that their search and seizure violated his rights under the Fourth Amendment.

## LEGAL STANDARD

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The second (or "Warrant") clause of the Amendment contains the particularity requirement, which was designed "to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search," the Supreme Court has explained, "the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*

As the Court's explanation in *Garrison* reflects, the requirement that a warrant "particularly describ[e]" the place to be searched and things to be seized embodies two "related but distinct concepts": "breadth and particularity." *United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017), *pet. for cert. filed*, No. 17-950 (Jan. 4, 2018). "Particularity is the requirement that the warrant must clearly state what is sought," while "[b]readth deals with the requirement that the scope of the warrant be limited by

6

the probable cause on which the warrant is based." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (internal citation and quotations omitted), *cert. denied*, 549 U.S. 1299 (2007); s*ee also United States v. Hoang Anh Thi Duong*, 156 F. Supp. 2d 564, 571 (E.D. Va. 2001) (under the particularity requirement, "the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize.") (internal citation and quotations omitted).  That said, "[c]ourts must refrain from interpreting warrant terms in a 'hypertechnical' manner, and should instead employ a 'commonsense and realistic' approach." *United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013) (citing *U.S. v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010)).

"When reviewing a magistrate judge's probable cause determination, a court looks to whether there was a substantial basis for the decision." *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006) (internal quotation omitted).  "After-the-fact scrutiny by courts of the sufficiency of an affidavit should accord great deference to the magistrate's determination of probable cause." *Id.* (quoting *Illinois v. Gates*, 462 U.S. at 236 (internal quotation marks omitted)).

## ARGUMENT

Defendant seeks to suppress and exclude evidence, including an image and videos, obtained pursuant to three separate search warrants, arguing that the warrants lacked particularity and were overbroad.  But, the warrants, including the accompanying affidavits and attachments, adequately identified the evidence subject to seizure and amply justified the scope of the searches.  In any event, the cure for any overbreadth is not the blanket suppression that defendant seeks, rather any offending language may be severed and the evidenced collected under it suppressed.  Moreover, these warrants were not so

deficient as to particularity or probable cause as to prevent law enforcement agents from reasonably relying on them.  Any constitutional infirmity therefore would not require suppression under the good-faith exception to the exclusionary rule.  Finally, any delay in obtaining a search warrant for defendant's cell phones was reasonable given the investigative timeline and circumstances described in detail below.

### A.     The Warrants Were Sufficiently Particular

The particularity requirement applies to the warrant, as opposed to the application or supporting affidavit submitted by the applicant.  *Hurwitz,* 459 F.3d at 470 (citing *Groh v. Ramirez,* 540 U.S. 551, 557 (2004)).  The particularity requirement, however, may be satisfied by cross-reference in the warrant to separate documents that identify items to be seized in sufficient detail.  *See Groh* 540 U.S. at 557–58.  "As a general rule, a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity 'if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.' "  *Hurwitz,* 459 F.3d at 470–71 (quoting *Groh,* 540 U.S. at 557–58, 124 S.Ct. 1284).  In the Fourth Circuit, it is sufficient either for the warrant to incorporate the supporting document by reference or for the supporting document to be attached to the warrant itself.  *Id.* at 471.  The entire warrant should be reviewed as a whole.  *United States v. Washington,* 852 F.2d 803, 805 (4th Cir.1988).  Accordingly, all three warrants at issue here should be reviewed as a whole, including the supporting affidavits and attachments.

In this case, the warrants' descriptions of the items subject to seizure were adequately particularized because the warrants identified the items to be seized by their relation to designated crimes and in so doing adequately limited the executing agents'

discretion.  *See United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017)

(Gorsuch, J.) ("[W]arrants may pass the particularity test if they limit their scope either

to evidence of specific federal crimes or to specific types of material.") (internal citations

and quotations omitted).  Specifically, Attachment B to the Cell Phones Warrant

authorized agents to seize "records and information relating to" any of the subject

offenses.  Attachment B to the Gmail Warrants authorized agents to seize from what

Google produced "all information … that constitutes fruits, contraband, evidence, and

instrumentalities" of the subject offenses.  Accordingly, the executing agents were

authorized "to seize only evidence of a particular crime" and could not engage in

exploratory searches for general evidence of criminality.  *See United States v. Fawole*,

785 F.2d 1141, 1144 (4th Cir. 1986) (a warrant generally satisfies the particularity

requirement when it allows officers "to seize only evidence of a particular crime");

*United States v. Young*, 260 F. Supp. 3d 530, 549 (E.D. Va. 2017) (rejecting particularity

challenge to warrant that sought "all records and documents" falling within eight

enumerated categories).

        In addition to requiring that the evidence seized related to specific crimes, the

warrants also identified an illustrative list of the records at issue.  Courts have held that a

warrant meets the Fourth Amendment particularity requirement where, as here, the

warrant contains a description of the items to be seized that is "delineated in part by an

illustrative list of seizable items."  *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir.

1990).  In reaching this conclusion, courts have recognized that where, as here, a warrant

contains an illustrative list of records, that list further limits the discretion of the

executing agents to construe the warrant in light of the illustrative list and to seize only

records similar to those records listed in the warrant. *Id.*

9

Defendant's argument that the Gmail Warrants were especially lacking in particularly misunderstands the nature of electronic evidence, and the reasonable means necessary to examine it in order to locate and extract the files that contain the evidence allowed to be seized pursuant to a search warrant. Section I of Attachment B to the Gmail Warrants itemized all the information to be disclosed by Google in connection with the identified email accounts. For example, the warrant required Google to disclose the "contents of all emails associated with the user account identified in Attachment A." However, Section II of Attachment B to the Gmail Warrants then identified the information to be seized from what Google produced. The affidavit for the Gmail Warrants clearly explains the reason Google was required to produce broad categories of records related to the specified email accounts without first making a determination as to what was relevant or irrelevant to the investigation. Paragraph 24 of the affidavit reads:

> The provider is neither qualified nor trained to search the account information as would a law enforcement officer. Only a trained agent, familiar with the statutory violations and facts of the case, can determine what items should or should not be seized. For these reasons, the Affiant requests the provider disclose the records listed in Section I of Attachment B, for the account(s) listed in Attachment A.

Gmail Aff. ¶24.

In short, the warrants in this matter sought with sufficient particularity evidence that defendant engaged in the production of child pornography, distribution or receipt of child pornography, enticement of a minor, and attempted kidnapping.

**B.      The Warrants Also Satisfied The Fourth Amendment's Breadth Requirement**

The facts set forth in the affidavits at issue amply support the common-sense conclusions reach by two separate magistrate judges to authorize the seizure of the categories of records listed in the attachments. For example, the Cell Phones Warrant

10

authorized the seizure of "[a]ll records relating to TROY GEORGE SKINNER's Internet

search and online shopping histories." v*See* Cell Phones Att. B ¶ 1j; Def.'s Mot. 3.



Cell Phones Aff. ¶¶ 40-41.  The Cell Phones Warrant also authorized the

seizure of "any and all information relating to any and all Discord accounts/usernames

used by TROY BRANDON SKINNER."  *See* Cell Phones Att. B ¶ 1h; Def.'s Mot. 3.

Cell Phones Aff. ¶¶ 32-34, 39.  The affidavit

also identified at least two separate Discord user names associated with defendant.  *Id.*

Both the Cell Phones Warrant and the Gmail Warrants authorized the seizure of

"all visual depictions of minors" and "all communications with minors."  *See* Cell Phones

Att. B ¶¶ 1a, 1b; Gmail Att. B ¶¶ IIc, IId; Def.'s Mot. 3.

Cell Phones Aff. ¶¶ 36-

39; Gmail Aff. ¶¶ 30-32.

*Id.*

The affidavit accompanying the Cell Phones Warrant also set forth common

characteristics of child pornography collectors based on the Affiant's knowledge,

experience, and training in child pornography investigations.  Cell Phones Aff. ¶¶ 17-24.

These facts taken together made it reasonable to infer that defendant possessed some

quantity of child pornography.  *Cf. United States v. Vosburgh*, 602 F.3d 512, 528-29 (3rd

Cir. 2010) (finding that officers could reasonably infer that defendant "already possessed

some quantity of child pornography" after his "repeated, deliberate attempts to access"

child pornography trading site.).  Additionally, this category of evidence must be read in

light of the subject offenses listed in the warrant immediately before it.  *See Andresen v.*

*Maryland*, 427 U.S. 463, 479-81 (1976) (the phrase "together with other fruits,

instrumentalities, and evidence of crime at this (time unknown)," had to be read in context

and together with the warrant's "lengthy list of specified and particular items to be

seized").  When it is so read, the warrant's reference to "all visual depictions of minors"

serves to focus the agents on those visual depictions that relate to the subject offenses.

### C.    Any Overbroad Warrant Language May Be Severed

Even if any overbreadth required suppression, it would not support exclusion of

the image and videos recovered from defendant's cell phone and his email accounts that

serve as the basis of Counts Seven, Eight and Nine in the Superseding Indictment.

Rather, under the doctrine of severance, any suppression remedy would be limited to

evidence seized under the portion of the warrant that is overbroad, which would at most

be any information related to other minor children seized pursuant to the Gmail Warrants,

as those warrants inadvertently did not include facts regarding the common characteristics

of child pornography collectors.  The courts of appeals have uniformly applied the

doctrine of severance (also sometimes referred to as "partial suppression" or "redaction")

when a warrant only partly satisfies either the particularity or probable cause

requirements.  *United States v. Sells*, 463 F.3d 1148, 1150 n.1 (10th Cir. 2006) (citing

cases from every circuit), *cert. denied*, 549 U.S. 1229 (2007); *see also United States v. Jones*, No. 3:17-cr-71, 2018 WL 935396, at *16 (E.D. Va. Feb. 16, 2018) (recognizing doctrine).  The doctrine reflects a judgment that "it would be harsh medicine indeed if a warrant issued on probable cause and particularly describing certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well."  2 Wayne R. LaFave, *Search And Seizure: A Treatise On The Fourth Amendment* § 4.6(f) (5th ed. 2012).  Similarly, it would be absurd to suppress a sexually explicit image and videos of the minor child described in detail in the affidavits because the warrants authorized the seizure of "all visual depictions of minors."  Cell Phone Att. B ¶ 1a; Gmail Att. B ¶ IIc.

**D.     Suppression Is Not An Appropriate Remedy**

Even if defendant's particularity and overbreadth challenges were meritorious, suppression of all the evidence obtained via the warrants would not be justified under the good-faith exception to the exclusionary rule.  *See United States v. Leon*, 468 U.S. 897, 922 (1984); *see also United States v. Burton*, 756 Fed. Appx 295, 300-01 (4th Cir. 2018) (assuming, without deciding that cell phone and home warrants were overbroad, court found that officers acted in good-faith reliance on warrants); *United States v. Qazah*, 810 F.3d 879, 885-86 (4th Cir. 2015) (explaining that "[w]hen officers obtain a search warrant but the requirements of the Fourth Amendment are nonetheless violated, evidence recovered during the search may" be excluded "in certain egregious cases," but that "in the ordinary course, the exclusion of evidence is not the proper remedy"), *cert. denied*, 136 S. Ct. 2398 (2016).  As the Supreme Court has explained, the exclusionary rule "does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid."  *Davis v. United States*, 564 U.S. 229, 238- 39 (2011) (quoting

*Leon*, 468 U.S. at 922).  "The error in such a case rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule."  *Id.* at 239 (quoting *Leon*, 468 U.S. at 916).  Of relevance here, the Court has applied that reasoning both where the warrant was allegedly unsupported by probable cause (as in *Leon*, 468 U.S. at 903), and where it was found to be overbroad (as in the companion case of *Massachusetts v. Sheppard*, 468 U.S. 981, 988-91 (1984)).

The circumstances of this case fall within the heartland of the good-faith exception.  The Affiants prepared 17 and 18 page affidavits that (a) described in detail facts that undisputedly establish probable cause to believe that defendant committed the subject offenses and (b) also included facts to establish probable cause that evidence of those violations would be found on the defendant's phones and in his email accounts.  The warrant applications were reviewed by prosecutors.  The Affiants then submitted the applications to two separate neutral magistrate judges.  Having thus taken "every step that could reasonably be expected," the Affiants were entitled to conclude "that the warrant[s] authorized a search for the materials outlined in the affidavit[s]," *Sheppard*, 468 U.S. at 989.  *See United States v. McLamb*, 880 F.3d 685, 690-91 (4th Cir. 2018) (good-faith exception applied where no "judicial precedent" had re-solved legal questions underlying the issuing judge's authority and the FBI consulted with prosecutors before seeking the warrant).

None of the exceptions recognized in *Leon* applies here, nor has the defendant made any claim otherwise.  Even if the particularity challenges raised by defendant were meritorious, any lack of particularity did not render the warrant "so facially deficient … that the executing officers [could] not reasonably presume it to be valid."  *Leon*, 468 U.S. at 923.  To the contrary, because courts have rejected particularity challenges to similar

14

provisions in other warrants, *see* pp. 8-9, *supra*, "a reasonably well trained officer would [not] have known that" the warrant here was invalid "despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.  Even if the affidavits did not establish probable cause to support all the items seized, it was not so "bare bones" or "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 926; *see Millender*, 565 U.S. at 547 (stating that "the threshold for establishing this exception is a high one, and it should be").  Accordingly, the good-faith exception forecloses application of the exclusionary rule.

**E.     The 29-Day Delay Between Seizure Of Defendant's Cell Phones And Obtaining the Cell Phones Warrant Was Not Unreasonable**

In February 2019, the Fourth Circuit decided *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019), holding on the specific facts of that case that a 31-day delay between seizing a cell phone and obtaining a search warrant for its contents was constitutionally unreasonable, requiring suppression.  In that case, FBI agents spoke with a seventeen-year-old "RM" who told them that her boyfriend, Samuel Pratt, had brought her from North Carolina to South Carolina to work as a prostitute.  RM told the agents that Pratt possessed nude images of her on his cell phone.  When agents questioned Pratt in the parking lot of a motel, he was holding an iPhone, which he identified as his.  Agents asked if he had nude photos of RM on the phone; Pratt answered yes.  The agents then seized the phone and told Pratt they would be obtaining a search warrant.  Pratt refused consent to search the phone and declined to give up his passcode.  The agents obtained a search warrant for the phone 31 days after seizing it.  It contained nude photos of RM as well as incriminating text messages with her and others.  Pratt moved to suppress the contents of the phone on the grounds of unreasonable delay.  The government argued only that the delay arose from

15

discussions over whether to obtain a warrant in North or South Carolina. The district court denied the suppression motion.

On appeal, the Fourth Circuit noted that a "strong government interest can justify an extended seizure", but an extended seizure may be unreasonable when "an individual's interest outweighs the government's." *Id.* at 271. The court observed that an individual has a diminished possessory interest "if he consents to the seizure or voluntarily shares the seized object's contents." *Id.* at 271–72. Because Pratt did neither, the court decided the case solely on the government's justification for the delay, which was "that Pratt committed crimes in both North Carolina and South Carolina and agents had to decide where to seek a warrant." *Id.* at 272. The court found this justification unpersuasive because "the FBI's resources were not over-whelmed" and the decision about forum would likely not affect a later prosecution, undercutting the force of the government's interest. *Id.* at 272.

Though the facts in *Pratt* pertained almost entirely to the strength of the government's justification, the overwhelming weight of authority in other Circuits supports reasonable delays of comparable or longer periods, addressing multiple additional factors:

- Whether the defendant asked for the device back at any point, *see United States v. Sullivan*, 797 F.3d 623, 634 (9th Cir. 2015); *United States v. Christie*, 717 F.3d 1156, 1163 (10th Cir. 2013); *United States v. Laist*, 702 F.3d 608, 616 (11th Cir. 2012); *United States v. Burgard*, 675 F.3d 1029, 1033–34 (7th Cir. 2012); *Stabile*, 633 F.3d at 235–36; *United States v. Burgess*, 576 F.3d 1078, 1097 (10th Cir. 2009);

- Whether delay included weekends and holidays, *see United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)

- Whether the defendant was incapable of using the device, such as during incarceration, *see Sullivan*, 797 F.3d at 633; *United States v. Shaw*, 531 F. App'x 946, 949 (11th Cir. 2013);

- Whether the government has a strong interest in seizing and retaining the device, including the likelihood it contained contraband such as child pornography, *see*

16

*Sparks*, 806 F.3d at 1339; *Sullivan*, 797 F.3d at 634; *Laist*, 702 F.3d at 616; *Shaw*, 531 F. App'x at 949;

- Whether the seizure was made with or without a warrant, and based on probable cause or reasonable suspicion, *see United States v. Fulton*, 914 F.3d 390, 397 (5th Cir. 2019); *Burgard*, 675 F.3d at 1033; *Burgess*, 576 F.3d at 1097; *Shaw*, 531 F. App'x at 949; and

- Whether the government agents had good reason for the delay, including competing case-loads or other high-priority responsibilities, *see Christie*, 717 F.3d at 1163; *Laist*, 702 F.3d at 616; *Burgard*, 675 F.3d at 1033–34; *United States v. Stabile*, 633 F.3d 219, 236 (3d Cir. 2011); *Burgess*, 576 F.3d at 1097; *Vallimont*, 378 F. App'x 972, 976 (11th Cir. 2010).

Importantly, courts note that the government is not required to use the least intrusive course of action (*i.e.*, the fastest possible period between seizure and warrant) so long as it is reasonable under the totality of circumstances. *See, e.g.*, *Fulton*, 914 F.3d at 397–98; *Sullivan*, 797 F.3d at 634; *Burgard*, 675 F.3d at 1034.

In contrast to the single justification offered by the government for the 31-day delay in *Pratt*, the investigative timeline set forth below provides substantial justification for the 29-day delay here between the seizure of defendant's cell phones by the Goochland County Sheriff's Office and the search warrant obtained by the government:

|   | DATE | DAY OF WEEK | EVENT |
|---|------|-------------|-------|
| 1 | June 22, 2018 | Friday | • Defendant encountered by Goochland County Sheriff's Office (GCSO) in the front yard of minor victim's home with gunshot wound to neck<br><br>• Defendant transported to VCU hospital in the custody of GCSO.  A deputy from the GCSO remained posted inside defendant's hospital room for the duration of his hospitalization.<br><br>• Cell Phones seized at the scene |

| | DATE | DAY OF WEEK | EVENT |
|---|---|---|---|
| 2 | June 23, 2018 | Saturday | • GCSO obtained arrest warrant charging defendant with violating Virginia Code § 18.2-90 (breaking and entering with intent to rape)<br><br>• FBI notified by GCSO of incident |
| 3 | June 24, 2018 | Sunday | • No investigative activity over weekend |
| 4 | June 25, 2018 | Monday | • FBI Special Agent Kathryn Weber collected two cell phones seized from defendant at GCSO |
| 5 | June 26, 2018 | Tuesday | • FBI opened investigation<br><br>• SA Weber assigned to work as case agent<br><br>• SA Weber coordinated with FBI legal attaché in New Zealand to notify New Zealand authorities<br><br>• SA Weber was required to serve as the Acting Supervisor of Squad Four at the Richmond Field Office of FBI, which handles public corruption, civil rights, and crimes against children investigations |
| 6 | June 27, 2018 | Wednesday | • U.S. Attorney's Office opened case file<br><br>• SA Weber was called to assist the FBI Evidence Response Team with the search for a missing 17-year-old in Dinwiddie, Virginia.  The missing teen was found dead the following day<br><br>• SA Weber continued to serve as the Acting Supervisor of Squad Four |

|  | DATE | DAY OF WEEK | EVENT |
|---|---|---|---|
| 7 | June 28, 2018 | Thursday | • SA Weber reviewed portions of minor victim's Discord account on her cellular phone.  During review, SA Weber identified images constituting child pornography within a Discord conversation between defendant and minor victim<br><br>• FBI Child Forensic and Adolescent Forensic Interviewer conducted forensic interview of minor victim |
| 8 | June 29, 2018 | Friday | |
| 9 | June 30, 2018 | Saturday | • No investigative activity over weekend |
| 10 | July 1, 2018 | Sunday | • No investigative activity over weekend |
| 11 | July 2, 2018 | Monday | |
| 12 | July 3, 2018 | Tuesday | • SA Weber visited Walmart and reviewed security footage of defendant purchasing pepper spray, duct tape and a knife |
| 13 | July 4, 2018 | Wednesday | • Federal Holiday |
| 14 | July 5, 2018 | Thursday | |
| 15 | July 6, 2018 | Friday | |
| 16 | July 7, 2018 | Saturday | • No investigative activity over weekend |
| 17 | July 8, 2018 | Sunday | • No investigative activity over weekend |
| 18 | July 9, 2018 | Monday | • SA Weber sent first draft of affidavit for cell phone warrant to U.S. Attorney's Office |
| 19 | July 10, 2018 | Tuesday | |
| 20 | July 11, 2018 | Wednesday | |

|  | DATE | DAY OF WEEK | EVENT |
|---|---|---|---|
| 21 | July 12, 2018 | Thursday | • SA Weber conferred with U.S. Attorney's Office on obtaining evidence from New Zealand |
| 22 | July 13, 2018 | Friday | • SA Weber returned to Walmart to obtain copies of the security footage |
| 23 | July 14, 2018 | Saturday | • No investigative activity over weekend |
| 24 | July 15, 2018 | Sunday | • No investigative activity over weekend |
| 25 | July 16, 2018 | Monday | • SA Weber out of office for previously scheduled training |
| 26 | July 17, 2018 | Tuesday | • SA Weber out of office for previously scheduled training<br><br>• SA Weber conferred with Department of Justice Office of International Affairs, and New Zealand officials about process for obtaining evidence from New Zealand |
| 27 | July 18, 2018 | Wednesday | • SA Weber out of office for previously scheduled training. |
| 28 | July 19, 2018 | Thursday | • SA Weber out of office for previously scheduled training.<br><br>• FBI Special Agent Melvin Gonzalez reviewed and confirmed final draft of affidavit<br><br>• The United States Attorney's Office scheduled appointment with U.S. Magistrate Judge to present search warrant |

|     | DATE | DAY OF WEEK | EVENT |
| --- | --- | --- | --- |
| 29 | July 20, 2018 | Friday | • SA Weber out of office for previously scheduled training<br><br>• SA Gonzalez served as affiant for search warrant<br><br>• The government obtained warrant to search defendant's cell phones |

During these 29 days, the government continuously monitored defendant's medical status, coordinated with local law enforcement and the Goochland Commonwealth Attorney's Office regarding state charges faced by defendant, and sought to obtain relevant evidence located in New Zealand. Moreover, SA Weber had numerous additional job responsibilities at the time, including at least 29 other cases to which she was assigned. Indeed, to prevent unreasonable delay, another FBI agent was substituted as affiant for the Cell Phones Warrant while SA Weber was out of the office for previously scheduled training. In the ten days between receipt of the first draft of the search warrant affidavit and the final draft submitted to the U.S. Magistrate Judge, the assigned Assistant United States Attorney also had multiple hearings, and other job responsibilities for other assigned cases, including multiple national security cases. In any event, defendant was not deprived of these cell phones during this time because he was hospitalized from June 22 through July 22, 2018 and under arrest by the Goochland County Sherriff's Office for the entire time period.[1] And the government had a strong interest in seizing and retaining these devices, as it was likely they contained child pornography. Given the totality of these circumstances, the delay here was reasonable, and did not violate the Fourth Amendment.

---

[1] The Goochland Commonwealth Attorney dismissed the state charges against defendant on October 29, 2018.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to suppress should be denied.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:      /s/_____
Brian Hood
Katherine Lee Martin
Assistant United States Attorneys
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on **January 24, 2020**, I filed the foregoing with the

Clerk of Court, and provided a true copy to all counsel of record.


Respectfully submitted,


G. Zachary Terwilliger
United States Attorney

By:    /s/_____
Brian Hood
Katherine Lee Martin
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: katherine.martin@usdoj.gov

23