**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:19-CR-19-MHL |
| | ) | |
| TROY GEORGE SKINNER, | ) | **FILED UNDER SEAL[1]** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH NINE
ON FIFTH AMENDMENT DUE PROCESS GROUNDS**

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Brian R. Hood, and Katherine Martin, Assistant United States Attorneys, hereby responds in opposition to Defendant's Motion to Dismiss Counts One through Nine on Fifth Amendment Due Process Grounds (ECF No. 72). For the reasons that follow, the defendant's motion should be denied.

## I. FACTUAL BACKGROUND

In December 2017, the defendant, TROY GEORGE SKINNER,

[1] Because the government's responsive pleadings to defendant's pretrial motions contain extensive references to facts which fall under the ambit of 18 U.S.C. §§ 3509(d)(1)(A) and 3509(d)(2), and consistent with the Court's Protective Order (ECF No. 4), the government's responses have been filed under seal.









On June 20, 2018, SKINNER departed from Auckland, New Zealand, via Qantas Airlines, arriving in Sydney, Australia. On the same day, SKINNER departed from Sydney, Australia, via American Airlines, arriving in Los Angeles, California. SKINNER's travel on June 20 continued as he departed from Los Angeles, California, via American Airlines, arriving the next day on June 21, 2018, at Washington Dulles Airport in Dulles, Virginia. On June 21, 2018, SKINNER took the Greyhound Bus from Washington, D.C., to Richmond, Virginia. SKINNER spent the night of June 21, 2018, at the Hostelling International located at 7 North 2nd Street, Richmond, Virginia.

On June 22, 2018, SKINNER traveled to the Walmart Supercenter (hereafter "Walmart"), located at 11400 West Broad Street Road, Glen Allen, Virginia. While at Walmart, SKINNER

made two purchases. SKINNER first purchased pepper spray. In a separate transaction, SKINNER purchased a clip knife and duct tape.

Later on the afternoon of June 22, 2018, SKINNER arrived at V1's residence in Goochland, Virginia. V1 had previously given SKINNER her actual home address during one of their online chat sessions. Footprints on the ground that matched the tread on SKINNER's shoes indicate that SKINNER did not walk up the driveway to V1's house but rather approached the residence from nearby woods.

SKINNER attempted to gain entrance to the residence through a basement sliding glass door. Speaking through the glass door, SKINNER asked V1's mother for help. V1's mother told SKINNER to go away or she would call the police. SKINNER responded, "You're not going to help me?" or words to that effect, and the mother repeated her warning. At that point, SKINNER picked up a hard object and began to beat on the glass of the basement sliding glass door. Unsurprisingly, SKINNER's actions alarmed V1, her sister and her mother, so they ran upstairs out of the basement and locked the door at the top of the steps. Family members telephoned V1's father, who in turn called 911. V1's father also instructed the mother to get the family pistol, which was in the house for protection. At one point, V1's mother called out to SKINNER from inside the house and demanded that he leave, told him that the police were on their way, and further told him that she had a gun.

The defendant eventually went up the stairs connected to an outside deck that was located over the basement sliding glass door through which he first attempted to force his way into the residence. The entrance to the house from the deck was a wooden door that had a large glass panel. While on the deck, SKINNER took a large gardening stone and smashed the glass panel to this door. He then reached his upper body into the opening created by the smashed glass. As

SKINNER's hand flailed about in an effort to reach the interior doorknob, V1's mother screamed repeatedly that the police were on the way, and that she had a gun and would shoot him. When SKINNER persisted in reaching for the doorknob, V1's mother fired her handgun twice, hitting SKINNER once in the neck.

Law enforcement officers with the Goochland County Sheriff's Office (GCSO) arrived on the scene shortly thereafter and found SKINNER covered in blood and lying in a neighbor's yard. A GCSO deputy sheriff asked SKINNER what happened. SKINNER told the deputy that he had been shot while trying to break the window to the door. When the deputy asked further why was trying to break the window, SKINNER said so that he could get to his girlfriend, or words to that effect.

In near proximity to SKINNER as he was lying on the ground was a sweatshirt, which investigators later connected to SKINNER. Underneath the sweatshirt was a knife, which was open and in an extended position. Officers also found a backpack nearby SKINNER, which they connected to him. A search of the backpack revealed a roll of duct tape. Investigators also recovered from SKINNER a small canister of pepper spray, as well as a hand-written checklist of items to bring, which included pepper spray and duct tape. GCSO officers also seized two cell phones from him, *i.e.*, a Huawei ALE-L02 P8 Lite and a Samsung GT-I9300 Galaxy S III.

Evidence obtained from those devices and Google accounts revealed several child pornography images, discussed at greater length below, which the defendant produced using V1 over the period of approximately February 3, 2018, to March 5, 2018.

On February 6, 2019, a grand jury returned a four-count indictment against the defendant, charging him with production of child pornography based on the initial evidence, discussed above, that investigators discovered on SKINNER's two mobile phones and in his online accounts [redacted] and [redacted] In the months following the indictment, the prosecution team worked with officials in the Department of Justice's Office of International Affairs and authorities in New Zealand to explore the possibility of obtaining relevant overseas evidence related to the SKINNER case. On September 3, 2019, the Richmond FBI Division received a USB thumb drive containing 120 video and 56 image files that authorities in New Zealand had obtained via a forensic triage review[2] of a laptop computer seized from SKINNER's apartment in New Zealand. [redacted]

The evidence provided by New Zealand authorities provided context for the case that was eye opening; indeed, even stunning. As it turns out, [redacted]

[2] This collection of images and videos does not represent the entirety of all categories of pertinent evidence recovered from digital devices seized from the defendant's residence, but rather a significant sampling of video and image files taken from SKINNER's laptop. Forensic analysis indicates that most of the files were recorded on SKINNER's desktop computer, though at the time of this writing the government does not possess any evidence that New Zealand investigators directly recovered from the desktop machine itself.



[redacted]

Based on this new evidence, on September 18, 2019, a grand jury returned a superseding indictment against the defendant, charging him in Counts One through Nine with production of child pornography, in violation of 18 U.S.C. § 2251(a). Count Ten alleged that the defendant committed kidnapping and attempted kidnapping of a minor, in violation of 18 U.S.C. §§ 1201(a)(1), (d) and (g). Count Eleven charged him with kidnapping and attempted kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and (d). The production of child pornography counts are described in greater detail below.

Counts One through Six are based on the evidence received from New Zealand authorities. The six videos, which were created over the period of January 13 to January 25, 2018, share many characteristics. [redacted]

Counts Seven, Eight and Nine make the same allegations as Counts Two, Three and Four, respectively, in the original indictment. Investigators recovered the video for Count Seven, which SKINNER made on or about February 5-6, 2018, from SKINNER's Huawei cell phone. Forensic

analysis revealed that the movie was downloaded to the phone from SKINNER's account. That video, which lasts 6:00 minutes, depicts essentially the same conduct as described above.

Count Eight relates to an image that investigators recovered from both SKINNER's Samsung phone as well as his account. EXIF data[3] related to the image indicate that the photo was created on February 22-23, 2018, using SKINNER's Samsung phone.

Finally, Count Nine is a video file investigators recovered from SKINNER's account pursuant to a federal search warrant.

[3] EXIF is short for "Exchangeable Image File Format," which is metadata relating to the image. When digital cameras take pictures, often the camera will save EXIF data about the photo, including information about the make and model of the camera itself, the date and time the photo was taken, and other information such as aperture size, exposure length, and if the camera is so equipped, geographical location information.

## II. LEGAL ARGUMENT

### A. Defendant's *Mens Rea* Arguments Are Flawed

The defendant argues that Counts One through Nine should be dismissed because § 2251 is unconstitutional as-applied to him, or, in the alternative, the Court should give the jury a reasonable mistake of age instruction. SKINNER's argument, which at bottom involves an inaccurate interpretation and unwarranted extension of the Supreme Court's opinion in *United States v. X-Citement Video, Inc*., 513 U.S. 64 (1994), consists of two main parts.

The first is part is an assumption that Congress' exclusion from § 2251(a) the requirement that the government prove a child pornography producer know the age of the child is only permissible because it is understood that perpetrators confront the victims personally and are therefore in a position to judge the child's age. From this assumption, which the defendant implicitly converts into a constitutional requirement, SKINNER argues that his relationship with the victim, which was over the Internet and not in person, renders § 2251 unconstitutional as applied to him because he was not physically around her to judge her age.

As discussed below, the presumption that child pornography producers are in the physical presence of their victims is not an ingredient that is constitutionally necessary to justify Congress' decision not to require the government to prove a defendant knew the age of his child victim. Moreover, the facts of the case clearly show that SKINNER had every bit of information necessary—including textual, audio and video information—for him to know V1's underage status every bit as well as if he had been in the same room with her. The defendant's motion is therefore without merit, and should be denied.

### *1. Mens Rea Generally*

As discussed in greater detail below, SKINNER's *mens rea* arguments are flawed for multiple reasons. Indeed, a pervasive problem in SKINNER's motion is his loose and often imprecise use of the term "*mens rea*." In general, a crime consists of both a physical part, *i.e.*, an "*actus reus*," which is an act or omission, and a mental part, *i.e.*, "*mens rea*" ("guilty mind"), which is the state of mind necessary to make the act or omission a crime. The Model Penal Code, Section 2.02, describes four general types of *mens rea*, including purposely, knowingly, recklessly and negligently. As noted by one legal scholar, there are a myriad of adjectives, and some verbs, that legislatures use to define the level of "guilty mind" or *mens rea* necessary to consummate a criminal offense.[4] Some minor public safety and health laws, *e.g.*, speeding, impose strict liability where no "guilty mind" is required to commit the offense.

### *2. United States v. X-Citement Video, Inc., and Lack of Knowledge Regarding the Child Victim's Age*

Much of the defendant's argument to dismiss the production counts is built upon various passages from *United States v. X-Citement Video, Inc*., 513 U.S. 64 (1994), and cases interpreting it. Two important points about *X-Citement Video* must be noted at the outset. First, *X-Citement Video* is a statutory interpretation decision, not one of constitutional analysis. Second, the statute at issue in *X-Citement Video* was 18 U.S.C. § 2252, the distribution counterpart to § 2251(a)'s

[4] "(1) Many statutes defining conduct which is criminal employ words (usually adverbs) or phrases indicating some type of bad-mind requirement: 'intentionally' or 'with intent to …'; 'knowingly' or 'with knowledge that …'; 'purposely' or 'for the purpose of …'; 'fraudulently' or 'with intent to defraud'; 'wilfully'; 'maliciously'; 'corruptly'; 'designedly'; 'recklessly'; 'wantonly'; 'unlawfully'; 'feloniously' and so on. (2) Some of the statutes use words or phrases indicating a requirement of fault, but not necessarily mental fault—*e.g.*, 'negligently,' 'carelessly,' or 'having reason to know …' (3) Some statutes define criminal conduct without any words or phrases indicating any express requirement of fault; thus 'whoever does so-and-so (or: whoever omits to do so-and-so) is guilty of a crime and subject to the following punishment …'5 However, although the statute may contain no adverbs or phrases indicating a requirement of fault, some fault may be inherent in a verb which the statute employs (*e.g.*, whoever 'refuses' to do something or 'permits' another to do something.)" WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW, § 5.1(a) (3d ed. 2018)

production prohibition. In *X-Citement Video*, the Ninth Circuit had previously held that the language of § 2252 did not require knowledge of the child's age and thus violated the First Amendment. The Supreme Court avoided the constitutional question, and as a matter of statutory interpretation, reversed the Ninth Circuit and concluded that a distribution offense under § 2252 did in fact require proof that the distributor knew that the performer was a minor. *Id.* at 66.

In reaching that conclusion, the Supreme Court observed, in what has become well-known *dicta*, that § 2251 was different from § 2252 in that Congress intentionally struck "knowingly" from § 2251 when drafting the statute: "The Conference Committee explained the deletion in § 2251(a) as reflecting an 'intent that it is not a necessary element of a prosecution that the defendant knew the actual age of the child.'" *Id.* at 76. Courts have noted that part of Congress' justification for this deletion is that child pornography producers who come in direct contact with the victim have a low risk of reasonable mistake of age and may be reasonably required to ascertain the victim's age. *See, e.g.*, *United States v. Malloy*, 568 F.3d 166, 172 (4th Cir. 2009).

Ignoring these overarching principles, SKINNER cherry-picks passages discussing general presumptions regarding common law scienter requirements for criminal offenses to support his position. He quotes *Staples v. United States*, 511 U.S. 600, 605 (1994) for the idea that, "[th]e existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." Motion at 5. Continuing this argument, the defendant, relying on *X-Citement Video, Inc.*, 513 U.S. at 72, asserts, "[i]n fact, a 'presumption' exists in favor of a scienter requirement for 'each of the statutory elements that criminalize otherwise innocent conduct.'" Motion at 5. Taking this thread further, SKINNER argues:

> In *United States v. X-Citement Video, Inc.*, the Court found § 2252 to be "akin to the common-law offenses against the state, the person, property, or public morals, that

> presume a scienter requirement in the absence of express contrary intent." *Id*. at 71-72.

Motion at 6.

These general principles about *mens rea* are true as far as they go, but they utterly miss several fundamental points from *X-Citement Video* and other cases that are pertinent to SKINNER's case here. The most obvious one is that in *X-Citement Video* the Supreme Court implicitly acknowledged that not every element of an offense must include a *mens rea* requirement. Regarding the *X-Citement Video* quote immediately above from page 6 of the defendant's motion, the defendant's motion neglects to include an important qualifying footnote, which reads:

> *Morissette's* treatment of the common-law presumption of *mens rea* recognized that the presumption expressly excepted "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." . . . But as in the criminalization of pornography production at 18 U.S.C. § 2251 . . . the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age. The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, *unavailable for questioning by the distributor or receiver*. Thus we do not think the common-law treatment of sex offenses militates against our construction of the present statute.

*X-Citement Video*, 513 U.S. at 72, n.2 (internal citations omitted) (emphasis added).

Not surprisingly, virtually every circuit to consider the knowledge question has held that it is neither an element of the offense nor available as an affirmative defense. *See, e.g.*, *United States v. Griffith*, 284 F.3d 338 (2d Cir. 2002); *United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009); *United States v. Crow*, 164 F.3d 229 (5th Cir. 1999); *United States v. Humphrey*, 608 F.3d 955 (6th Cir. 2010); *United States v. Fletcher*, 634 F.3d 395 (7th Cir. 2011); *United States v. Wilson*, 565 F.3d 1059 (8th Cir. 2009); *United States v. Deverso*, 518 F.3d 1250 (11th Cir. 2008).

### *3. Production of Child Pornography is a Crime Involving Specific Intent, Not Strict Liability*

SKINNER incorrectly relies on *United State v. Malloy*, 568 F.3d 166, 172 (4th Cir. 2009), for the argument that because the defendant's knowledge of a child's age is not an element of the offense, and reasonable mistake regarding the child's age is not an affirmative defense, § 2251 is a strict liability crime. Motion at 4. *Malloy's* holding that "[a] defendant's awareness of the victim's minority is not an element of the offense" does not, however, make § 2251 a strict liability crime containing no "guilty mind" requirement.

Section 2251(a) proscribes the employment or use of a minor to engage in sexually explicit conduct "for the purpose of producing" a visual depiction of such conduct. "In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent." *United States v. Bailey*, 444 U.S. 394, 405 (1980). The statute, by requiring proof of purposeful conduct, clearly contains a scienter requirement, and in reality is a specific intent crime. *United States v. Esch*, 832 F.2d 531, 536 (10th Cir. 1987); s*ee also United States v. Fenton*, 654 F.Supp. 379, 380 (E.D. PA. 1987) (because government bears the burden of establishing that defendant acted purposefully to involve a minor in sexually explicit conduct and to produce a visual depiction of that conduct, statute's requirement to proof purposeful conduct establishes a scienter element, and thus § 2251(a) is not a strict liability but rather a specific intent offense).

## **B. Defendant's As-Applied Challenge Has Already Been Rejected by Courts**

Several courts have rejected as-applied challenges to § 2251(a) that relied argument's similar to the defendant's. The Eleventh Circuit's opinion in *United States v. Ruggiero*, 791 F.3d 1281 (11th Cir. 2015), contains several instructive parallels to the defendant's case here. Like SKINNER, the defendant in *Ruggiero* relied heavily on general discussions of *mens reas* in *X-Citement Video's* dicta to argue that § 2251(a) "violates the Fifth Amendment's Due Process

Clause 'because it eliminates the element of *mens rea* from a criminal offense which is not a public welfare offense and which carries a severe penalty.'" *Id.* at 1284. The *Ruggerio* court flatly rejected the defendant's *mens rea*-based arguments, however, reasoning that:

> Although a criminal statute originating in common law is generally construed to include the ancient requirement of a culpable state of mind,' . . . the common law recognizes several exceptions to that rule of construction. The relevant one is an exception for sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent. Against that common law backdrop, Congress has enjoyed nearly unfettered discretion to exclude knowledge from the definition of statutory crimes in recognition that young children need special protection against sexual exploitation.

*Id.* at 1287 (internal citations and quotations omitted). The *Ruggerio* court further noted that "the Due Process Clause has rarely concerned itself with limiting Congress's 'wide latitude ... to declare an offense and to exclude elements of knowledge and diligence from its definition.'" *Id.* (citing *Lambert v. California*, 355 U.S. 225, 228 (1957)).

At least one court as considered and rejected the notion advanced by SKINNER that when it comes to production of child pornography an online relationship falls outside of the *mens rea* analysis in *X-Citement Video* and related cases. In *United States v. Tollefson*, --- F.Supp.3d ----, No. 18-CR-43-JPS, 2019 WL 644831 (E.D. WI February 15, 2019), the defendant was charged with production of child pornography under § 2251 stemming from several online Internet chats during which he persuaded a 13-year-old girl to record videos of herself masturbating, which eventually fell into the hands of law enforcement. The *Tollefson* defendant moved to dismiss the § 2251 count on as-applied due process grounds because the statute imposes strict liability with regard to a victim's age even for people who confront the child victim over the Internet, not face-to-face. *Id.* at *4. Without face-to-face contact, so the defendant argued, the pornography producer has no real opportunity to ascertain the victim's age. *Id.*

The *Tollefson* court thoroughly dismantled the defendant's argument. Citing *Hamling v. United States*, 418 U.S. 87, 121-23 (1974), the court noted that not every element of an offense must include scienter. Citing *Powell v. Texas*, 392 U.S. 514, 535 (1968), it observed that the Supreme Court has never ruled specifically when, if ever, the imposition of strict liability in a criminal statute by itself violates due process. Analyzing *Ruggiero* above, the court clarified that the common-law presumption of scienter, and its recognized exceptions, is a tool of statutory interpretation, and says nothing of Congress' authority to enact strict liability schemes. Concerning *X-Citement Video*, the Tollefson court observed what has already been discussed above, which is that *X-Citement Video* is a case about statutory construction, not constitutional limits. The *Tollefson* court explained that, at bottom:

> A Fifth Amendment due process challenge to Section 2251 does not depend on what the *X-Citement Video* Court meant by "confronts the underage victim personally." To succeed on a due process claim, Tollefson would have to demonstrate that the legislature's exercise of its authority to enact a statute with strict liability as to knowledge of age, that covers virtual conduct, "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"

*Id.* at *9. The *Tollefson* court held that that was not the case there, noting that federal courts have uniformly rejected claims that the Constitution requires the government to prove that a child pornography producer knew his victim was underage, even if the defendant might have made a reasonable mistake as to the victim's age, and that the unique circumstances of Tollefson's case—that he confronted his victim only online—did not meaningfully set him apart for the defendants in all the other cases.

## III. CONCLUSION

For all of the above reasons, the United States requests that the Court deny defendant's motion.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: *_/s/ Brian R. Hood_____*
Brian R. Hood
Katherine Lee Martin
Assistant United States Attorneys
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (804) 819-5400
Email: brian.hood@usdoj.gov
Email. katherine.martin@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **January 24, 2020**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Robert J. Wagner
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0808
Robert_wagner@fd.org

Laura Koenig
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
laura koenig@fd.org

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: *_/s/ Brian R. Hood_____*
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (804) 819-5400
Email: brian.hood@usdoj.gov