**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 3:19cr19-MHL |
| v. | ) | |
| | ) | |
| TROY GEORGE SKINNER, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by its undersigned attorneys, submits this supplemental briefing pursuant to the Court's Order entered on February 13, 2020.  (Doc No. 99).  The Court should deny defendant's motion to suppress and exclude evidence obtained pursuant to three separate search warrants because the warrants adequately identified the evidence subject to seizure and amply justified the scope of the searches.  Moreover, any delay in obtaining a search warrant for defendant's cell phones was reasonable under the Fourth Amendment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case have been set forth in the government's response.  *See* (Doc. No. 80, at 1-6).  On February 13, 2020, the Court held an evidentiary hearing on defendant's motion to suppress, during which the government elicited testimony from and introduced exhibits through FBI Special Agent Kathryn Weber.

Agent Weber testified that she has specialized training related to the investigation of crimes against children, and that in June 2018 she was one of two agents assigned to the FBI's Richmond Field Office able to handle child exploitation cases.  (Tr. 4:21-5:16; 37:8-11).  The other designated child exploitation agent was busy preparing for a trial in this Court of a

defendant accused of, among other things, attempted sex trafficking of a child.  (Tr. 37:12-17);
*See United States v. Richard Todd Haas*, No. 3:16cr139 (Payne, J.).  Accordingly, Agent Weber
initially assisted the Goochland County Sheriff's Office when they requested the FBI's help with
obtaining digital evidence from phones they seized from defendant, and with navigating the
international aspects of this case.  (Tr. 17:17-19:7).

That is, on Friday, June 22, 2018, the Goochland County Sheriff's Office responded to a
911 call and encountered defendant lying in the front yard of a home with a gunshot wound to
the neck.  (Tr. 10:2-17).  At that time, the Sheriff's Office recovered several items on the
defendant, including two cell phones, travel documents, duct tape, pepper spray, and a knife.
(Tr. 11:16-12:6).  The defendant was transported directly from the scene to the hospital so that he
could receive medical care.  (Tr. 12:23-13:3).  Meanwhile the Sheriff's Office took the recovered
evidence back to their office to maintain until they provided the evidence to the FBI.  (Tr. 12:18-
22).  The following Monday, on June 25, 2018, Agent Weber collected defendant's cell phones
from the Sheriff's Office before the FBI even opened its own investigative file.  (Tr.19:8-20:12).
After numerous conversations between the FBI, the Goochland County Sheriff's Office, the
United States Attorney's Office, and the Goochland County Commonwealth's Attorney's Office,
the United States Attorney's Office decided to accept the case for federal prosecution and opened
a case file on Wednesday, June 27, 2018.  (Tr. 20:13-21:9).

Thereafter, Agent Weber set about gathering evidence and preparing an affidavit to
support a search of the two phones recovered from the defendant.  Among other things, Agent
Weber reviewed the minor victim's cell phone and Discord account, observed a forensic
interview of the minor victim, obtained evidence from the Walmart where defendant purchased
pepper spray, duct tape, and a knife, and finalized evidence logs for the items collected.  (Tr.

24:9-25:8; 25:22-26:14).  Agent Weber, who had no prior experience with an international investigation, also spent considerable time discussing with the Department of Justice Office of International Affairs, the FBI's legal attaché in New Zealand, and New Zealand law enforcement officials how and what information she could share with New Zealand authorities, and what evidence (if any) she could obtain from New Zealand.  (Tr. 24:9-17; 25:22-26:5; 27:2-29:9).  Over the course of several days, Agent Weber prepared the initial draft of an affidavit that she sent the U.S. Attorney's Office on July 9, 2018.  (Tr. 26:16-25).  After that, Agent Weber discussed revisions with the federal prosecutor who reviewed and edited the affidavit, and worked to verify the accuracy of all the facts set forth in the affidavit.  (Tr. 36:1-16; 71:15-72:15).

Of course, this case was not the only important matter Agent Weber handled during this time.  In June and July 2018, Agent Weber was leading 27 other investigations, including 9 investigations involving crimes against children (Tr. 31:16-22).  She traveled to FCI Butner in North Carolina, as well as FCI Petersburg where she executed a search related to a case involving the sexual assault of an inmate.  (Tr. 29:18-30:2; 31:1-4).  She assisted with the execution of a search warrant on a separate child exploitation investigation.  (Tr. 30:3-5).  She helped to look for a missing Dinwiddie, Virginia teenager, who later was found dead.  (Tr. 30:5-9).  She assisted with an interview in Greensville County related to a public corruption investigation.  (Tr. 31:5-8).  She spent a day responding to all citizen complaints received by the Richmond Field Office, which covers all of Virginia except for Northern Virginia and Tidewater.  (Tr. 30:14-24; 73:7-18).  She served as the Crisis Negotiation Coordinator for the Richmond Field Office, and planned a crisis negotiation course to train state and local partners on how to handle hostage situations.  (Tr. 33:14-35:5).  She served as acting supervisor of her squad, which

3

was responsible for all child exploitation, public corruption, and civil rights investigations for the Office. (Tr. 32:3-33:13). And finally, Agent Weber attended Cyber Security training in Washington, D.C. from July 15 through July 20, 2018. (Tr. 35:6-22).

To prevent unreasonable delay, Agent Weber asked the other designated child exploitation agent on her squad to serve as affiant for the warrant while she was out of the office for this previously scheduled training. (Tr. 31:16-22). Accordingly, on July 20, 2018, a Magistrate Judge signed a warrant authorizing the search of the two cell phones seized from defendant. *See* GEX 1. Thereafter, the affiant provided a copy of the warrant and accompanying documents to an FBI forensic examiner who conducted the search of the phones. (Tr. 39:2-14). The communications log between the forensic examiner and the case agent indicated that the examiner reviewed the legal authority for his search on July 24, 2018. (Tr. 40:6-41:16). And it was the standard practice of the forensic examiner to review attachments to a warrant before beginning his examination so that he knew the limitations of his search. (Tr. 41:17-42:4).

Importantly, defendant was not deprived of his cell phones during this time because he was hospitalized from June 22 through July 22, 2018 while he recovered from a gunshot wound to the neck. (Tr. 12:23-16:9). Defendant remained under arrest by the Goochland County Sherriff's Office the entire time that he was hospitalized. (Tr. 14:11-13). Indeed, the Sherriff's Office endured a significant drain on its resources because it posted deputies around the clock inside defendant's hospital room to stand guard. (Tr. 14:14-15:11; 74:21-75:13). Neither defendant nor even the deputies standing guard were allowed cell phones in the hospital room. (Tr. 15:12-15; 58:18-59:1). Moreover, defendant did not ask for the return of his cell phones when interviewed by Goochland County deputies, nor did a third party offer to take possession of the phones on defendant's behalf. (Tr. 15:16-23).

Following the forensic examination of defendant's cell phones, the government obtained additional search warrants. In particular, on October 12, 2018, a Magistrate Judge signed two warrants authorizing the search of two email accounts maintained by Google. *See* GEXs 2, 3. Later that same day, Agent Weber served the search warrants on Google via the company's Law Enforcement Request or "LERS" electronic system. (Tr. 44:1-7). In doing so, Agent Weber provided Google with both the warrants and the warrants' accompanying attachments. (Tr. 44:8-45:16).

## ARGUMENT

There are three separate warrants at issue here: (1) a warrant obtained on July 20, 2018 authorizing the search of the two cell phones seized from defendant at the time of his arrest (Case No. 3:18-sw-180) (hereinafter "Cell Phones Warrant"); (2) a warrant obtained on October 12, 2018 authorizing the search and seizure of information associated with email account johnvlogchamber@gmail.com (Case No. 3:18-sw-267); and (3) another warrant also obtained on October 12, 2018 authorizing the search and seizure of information associated with email account lottic.ysw@gmail.com (Case No. 3:18-sw-268) (hereinafter "Gmail Warrants").

Defendant raises three separate arguments aimed at suppressing evidence obtained from these warrants: (1) the warrants did not clearly describe the evidence to be seized; (2) the scope of the warrants was not limited by the probable cause on which the warrants were based; and (3) the delay between seizure of defendant's cell phones and execution of the search warrant was unreasonable.

But defendant's arguments are not supported by the Fourth Amendment's clear particularity and breadth principles. And defendant's assertions about the sweeping scope of the warrants fall flat when he cannot point to any evidence seized from his cell phones or email

accounts that exceeded the probable cause on which the warrants were based.  Rather, the sexually explicit image and videos seized from defendant's phone and email accounts were particularly authorized, and directly connected to the facts set forth in the warrants.

**A.      The Warrants Were Sufficiently Particular**

To begin with, the warrants' descriptions of the items subject to seizure were sufficiently particularized because the warrants identified the items to be seized by their relation to specific crimes – production of child pornography, distribution or receipt of child pornography, enticement of a minor, and attempted kidnapping.  *See* Cell Phones Att. B; Gmail Att. B; *see also United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013) (quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010).  In addition to requiring that the evidence seized be related to specific crimes, the warrants also identified an illustrative list of the records at issue, including, for example, any and all visual depictions of minors.  *See* Cell Phones Att. B ¶ 1; Gmail Att. B ¶ II.  The search of defendant's email accounts was also temporally confined – agents were only authorized to seize evidence and instrumentalities of the subject offenses occurring after December 25, 2017.  *See* Gmail Att. B ¶ II.

Nevertheless defendant argues more expansively against the seizure of electronic devices (such as cell phones) and data storage (such as email accounts), seemingly arguing that the government should not be allowed to search an entire electronic device or data storage account for specific types of evidence related to specific crimes.  But this argument misapprehends both the law and the nature of digital evidence.

It is axiomatic that law enforcement may need to conduct a complete review of an electronic device or data storage account to locate evidence responsive to a warrant.  For example, in *United States v. Ulbricht*, the Second Circuit concluded that a warrant authorizing

the search of an entire laptop for specific types of evidence relating to an alleged criminal

enterprise did not lack particularity, stating:

> A warrant may be broad in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement. For example, a warrant may allow the government to search a suspected drug dealer's entire home where there is probable cause to believe that evidence relevant to that activity may be found anywhere in the residence. Similarly, when the criminal activity pervades an entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements.

858 F.3d 71, (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 138 S.

Ct. 2206 (2018) (internal quotations omitted).

In this case, the warrants authorized a search of defendant's cell phones and email

accounts for evidence relating to the subject offenses. Such evidence could have been found in

any location on the devices or in the accounts. It would have been impracticable to specify the

exact areas of the devices or specific documents in the accounts in advance given the nature of

electronic evidence and the tendency of criminals to mislabel, hide, and attempt to delete

evidence of their crimes. *See United States v. Williams*, 592 F.3d 511, 522 (4th Cir. 2010) ("[A]

search could not be limited to reviewing only the files' designation or labeling, because the

designation or labeling of files on a computer can easily be manipulated to hide their substance.

Surely the owner of a computer, who is engaged in criminal conduct on that computer, will not

label his files to indicate their criminality"), s*ee also United States v. Mann*, 592 F.3d 779 (7th

Cir. 2010) ("Unlike a physical object that can be immediately identified as responsive to the

warrant or not, computer files may be manipulated to hide their true contents"); *United States v.

Hill*, 459 F.3d 966, 978 (9th Cir. 2006) ("Images can be hidden in all manner of files, even word

processing documents and spreadsheets. Criminals will do all they can to conceal contraband,

including the simple expedient of changing the names and extensions of files to disguise their

7

content from the casual observer."). Accordingly, "[w]hen a search requires review of a large collection of items, such as papers, 'it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.'" *Williams*, 592 F.3d at 519-20 (quoting *Andersen v. Maryland*, 427 U.S. 463, 482 n. 11 (1976)). That does not render a search lacking in particularity. Accordingly, suppression on this ground is inappropriate.

## B.    The Warrants Were Not Overbroad

The scope of a warrant must be "limited by the probable cause on which the warrant is based." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (internal citations omitted). In this respect, the Supreme Court has made clear that probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found" in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). But here defendant is not satisfied with a showing of probable cause. Instead, he would require the government to identify direct evidence to justify the seizure of particular items. He argues, for instance, that the government should have been limited to seizing only communications and visual depictions of the minor victim referred to in the affidavits. Setting aside that ultimately the government did only find evidence related to the minor victim referred to in the affidavits, it was not limited to searching only for images and communications it already knew about.

For example, in *United States v. Campos*, a defendant appealed the denial of his motion to suppress evidence obtained from the search of his residence. 221 F.3d 1143 (10th Cir. 2000). Specifically, the defendant argued that the warrant was overbroad because it was not limited to a search of defendant's computer for two child pornography images law enforcement already knew about. *Id.* at 1146. The Tenth Circuit disagreed, concluding that the warrant did not authorize an

unfocused inspection of all of defendant's property, but rather was directed at items related to child pornography.  *Id.* at 1147.

So too here.  The affidavits accompanying the warrants described specific sexually explicit images and/or videos possessed or viewed by defendant in multiple digital locations – including his phones and his email accounts.  Cell Phones Aff. ¶¶ 34-39; Gmail Aff. ¶¶ 30-32, 39-40.  The Magistrate Judge who authorized the warrants could reasonably infer from those facts and based on common sense and experience that defendant possessed other visual depictions of minors.  The affidavits also described the means by which defendant communicated with the minor victim, including on online gaming platform.  Cell Phones Aff. ¶¶ 31-34; Gmail Aff. 25-27.  Again, the Magistrate Judge who authorized the warrants could reasonably infer from those facts and based on common sense and experience that defendant may have communicated with multiple minors on this online gaming platform.  Indeed, he could have communicated with other minors about the specific minor victim referred to in the affidavits.  Of course, the particular items to be seized listed in Attachment B to the warrants must be read in light of the subject offenses before it.  When it is so read, it is clear that the reference to "all visual depictions of minors" and "all communications with minors" is confined to all visual depictions and communications related to the subject offenses.  *See* Cell Phones Att. B ¶¶ 1a, 1b; Gmail Att. B ¶¶ IIc, IId.

Thus, these warrants satisfied the Fourth Amendment's breadth requirement as the attached affidavits established probable cause to believe that evidence of the subject offenses would be found on defendants' cell phones and in his email accounts.

C.   **The 29-Day Delay Between Seizure Of Defendant's Cell Phones And Obtaining the Cell Phones Warrant Was Reasonable**

An unreasonable delay between the seizure of property and obtaining a search warrant may violate a defendant's Fourth Amendment rights.  Of course, the touchstone is reasonableness.  *See United States v. Van Leeuwen*, 397 U.S. 249, 252-53 (1970).  To determine whether a seizure was reasonable courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *United States v. Place*, 462 U.S. 696, 703 (1983).  In balancing these interests, courts may consider whether "overwhelmed police resources or other overriding circumstances could justify extended delays."  *United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019) (internal citations omitted).  Such determinations are highly fact specific. *See Van Leeuwen,* 397 U.S. at 253.

Here, the 29-day delay between the seizure of defendant's cell phones by the Goochland County Sheriff's Office and the search warrant obtained by the government was reasonable under the totality of the circumstances.  Because the Sherriff's deputies who initially seized the phones did not have the capability to perform the forensic search of the phones or navigate the international aspects of this case, they transferred the devices to the FBI.  (Tr. 17:17-19:7) Thereafter, the United States Attorney's Office decided to accept the case for federal prosecution.  (Tr. 20:13-21:9).  The case agent then diligently gathered evidence to support a probable cause determination that defendant's phones contained evidence of various federal crimes.  (Tr. 24:9-25:8; 25:22-26:14).  She carefully coordinated with law enforcement officials in New Zealand.  (Tr. 24:9-17; 25:22-26:5; 27:2-29:9).  She managed other important job responsibilities, including 27 other cases she was assigned to investigate.  (Tr. 31:16-22).  And when the case agent realized that her participation in previously scheduled training might

unreasonably delay securing a warrant, she asked the only other law enforcement agent designated to handle child exploitation investigations in her office to obtain the warrant in her stead.  (Tr. 31:16-22).

In any event, the extent of the intrusion on defendant's possessory interests was minimal. He was hospitalized and under arrest by the Goochland County Sherriff's Office during the entire time his cell phones were retained by the government.  (Tr. 14:11-13).  Defendant was not allowed to possess his cell phones while detained by state and then federal authorities.  (Tr. 15:12-15; 58:18-59:1).  And during the 29 days the government retained the cell phones before it obtained a search warrant defendant did not seek the return of the phones to himself or a third party.  (Tr. 15:16-23).  Simply put, defendant cannot claim that he could have made use of his cell phones while he was under arrest.

Accordingly, the government's seizure of these phones did not meaningfully interfere with defendant's possessory interests.  And defendant's limited interests were outweighed by the government's strong interest in seizing and retaining devices suspected of containing child pornography.  Suppression on this ground is inappropriate.

## CONCLUSION

The Court should deny the defendant's motion to suppress these three search warrants obtained from two separate neutral federal Magistrate Judges.

Respectfully submitted,


G. Zachary Terwilliger
United States Attorney

By:    /s/_____
Katherine Lee Martin
Brian Hood
Assistant United States Attorneys
United States Attorney's Office 919
East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **March 4, 2020**, I filed the foregoing with the Clerk of

Court, and provided a true copy to all counsel of record.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:   /s/_____
Katherine Lee Martin
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: katherine.martin@usdoj.gov