IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:19cr19 |
| ) | |
| TROY GEORGE SKINNER, ) | |
| Defendant ) | |

## MR. SKINNER'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING HIS MOTION TO SUPPRESS EVIDENCE

Troy Skinner, through counsel, responds to the government's supplement, *see* ECF No. 101, to its response to his Motion to Suppress Evidence, *see* ECF No. 80, as follows:

**I.  The government has not proven that the FBI's resources were overwhelmed, and thus, justified the 29-day delay in obtaining a search warrant for Mr. Skinner's cell phones.**

The government's supplement asserts that Agent Weber was only one of two agents assigned to the FBI's Richmond Field Office able to handle child exploitation cases. *See* ECF No. 101 at 1. That is not what Agent Weber testified to. Agent Weber said that in June and July 2018, the FBI had about ninety to 100 agents working at the FBI Richmond Field Office. 2/13/20 Tr. at 54. Most of these agents were divided into at least five investigative squads. 2/13/20 Tr. at 53-54. Only Agent Weber and one other agent—Melvin Gonzalez, the affiant for the search warrant affidavit for the cell phone search warrant—had specialized training in child exploitation investigations on Agent Weber's squad, which was Squad Four. *See* 2/13/20 Tr. at 54. But, Agent Weber agreed that numerous other individuals within the Richmond Division would have had similar training in writing such search warrants. 2/13/20 Tr. at 54.

1

Further, the government cites that Agent Gonzalez was "focused on" another case in this district that was being prepared for trial. *See* ECF No. 101 at 2. In its supplemental brief, the government provided the case number for that case, 3:16cr139, in the Eastern District of Virginia. In looking at the docket report for that case[1], Judge Payne had granted a defense motion to continue the trial in that case on May 14, 2018. *See United States v. Haas*, 3:16cr139, ECF No. 125 (E.D. Va. May 14, 2018). On May 14, 2018, Judge Payne scheduled the trial in *Haas* to begin on September 10, 2018. *Id.* Agent Weber did not provide any detail about what Agent Gonzalez was doing to prepare for a trial that had been continued nearly six weeks before the FBI learned of the case and was not scheduled to start for another eleven and a half weeks after that time. Agent Weber also provided no explanation as to why she did not ask another member of her squad or in the Richmond Field Office—all of whom had been trained in writing search warrant affidavits and "numerous" other agents who had child exploitation training, *see* 2/13/20 Tr. at 46-47, 54—for assistance in drafting the affidavit. While Agent Weber certainly seemed busy, it can hardly be said that the FBI's resources were overwhelmed.

Lastly, in its supplement, the government argues that the intrusion on Mr. Skinner's privacy was minimal because he was in a guarded hospital room recovering from being shot in the neck during the twenty-nine days it took the FBI to ask for a warrant to search his cell phones. *See* ECF No. 101 at 11. As Agent Weber testified, Mr. Skinner had traveled to the United States from New Zealand with only his phones and a handful of contacts written in his wallet to connect him to his

---

[1] The Court can readily take judicial notice of the docket report and Judge Payne's May 14, 2018, scheduling order in *United States v. Haas*. *See* Fed. R. Evid. 201(b)(2) (providing for judicial notice of fact not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989) (observing that "'the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records'") (quoting 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5106 at 505 (1977)).

family and support system back home. 2/13/20 Tr. at 59. Law enforcement officials had his wallet, both of his phones, and he was being guarded round the clock in a hospital bed after suffering a significant injury to his neck. *Id.* As the Supreme Court has recognized, "there is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception." *Riley v. California*, 134 S. Ct. 2473, 2490 (2015).[2] There is nothing about depriving Mr. Skinner of his phones—his cache of sensitive personal information—at such a critical, and isolated, time of his life that seems minimal.

## II. The cases the government relies on to try to save the overbroad warrants in this case demonstrate the issues that Mr. Skinner has raised with the warrants.

The government has cited several cases in its supplement in response to Mr. Skinner's overbreadth argument. A closer look at these cases reveals that these cases actually support Mr. Skinner's argument. For example, the government cited *United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018), as support for its argument that its agents complied with the Fourth Amendment by downloading, searching, and keeping the entire contents of Mr. Skinner's phones and Google accounts. While the *Ulbricht* court discussed that the search of digital devices is often quite broad, it also relied on the uncontested fact that the officers carrying out the search faithfully executed the warrant. *Id.* at

---

[2] Whether or not Mr. Skinner asked for his cell phones does not in any way diminish his significant expectation of privacy in the contents of his phones. There is absolutely no indication that he abandoned the phones. *See, e.g., Combs v. United States*, 408 U.S. 224, 227 (1972) ("If petitioner can establish facts showing such a[ possessory or proprietary] interest, he will have demonstrated a basis for standing to attack the search."). And while Mr. Skinner himself may not have been able to access his phones while in his hospital room, his lawyer or someone from the New Zealand consulate presumably could have in their endeavors to assist Mr. Skinner.

103 ("Because we have no reason to doubt that the officers faithfully executed the warrant, its execution did not result in an undue invasion of Ulbricht's privacy.").

Likewise, the government cites *United States v. Campos*, 221 F.3d 1143 (10th Cir. 2000), as support for its argument that the warrants were limited in some meaningful way. *See* ECF No. 101 at 8-9. The *Campos* court took special care to note that "storage capacity of computers may require law enforcement officers to take a special approach." *Id.* at 1148. Specifically:

> [L]aw enforcement must engage in the intermediate step of sorting various types of documents and then only search the ones specified in a warrant. Where officers come across relevant documents so intermingled with irrelevant documents that they cannot feasibly be sorted at the site, the officers may seal or hold the documents pending approval by a magistrate of the conditions and limitations on a further search through the documents. The magistrate should then require officers to specify in a warrant which type of files are sought.

*Id.* (quoting *United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999), which found that officers conducted an unreasonable search of the defendant's computer). Because Mr. Campos offered no evidence of how the officers searched the devices at issue in that case, the court had no basis to analyze whether the officers complied with the special approach the Tenth Circuit had already specified for searching digital devices. *Campos*, 221 F.3d at 1148.

As discussed more extensively in Mr. Skinner's supplemental brief, *see* ECF No. 102, the agents in this case did not even attempt to limit their searches and seizures of Mr. Skinner's phones and Google accounts. They simply seized, searched, and kept every single file available to them. If the Court determines that the warrants are not overbroad, the Court will have to make a finding that the warrants in some way limited the authority of the police to seize the entire contents of the phones and Google accounts. While Mr. Skinner maintains that the warrants did not provide any meaningful limit to the executing officers, there is no way to say that the officers limited their

4

search and seizure in any way. The warrants authorized a fishing expedition, and that's exactly what the agents engaged in.

## CONCLUSION

Thus, as set forth above and in the original motion, the original reply, and the supplement, the Court should suppress images and videos the government obtained from Mr. Skinner's Google accounts and his cell phone in violation of the Fourth Amendment.

Respectfully submitted,
TROY GEORGE SKINNER

By: _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

Robert Wagner
Va. Bar No. 27493
Office of the Federal Public Defender
701 East Broad Street, Suite 3600
Richmond, VA 23219
Ph. (804) 565-0808
Fax (804) 648-5033
robert_wagner@fd.org

**CERTIFICATE OF SERVICE**

       I hereby certify that on March 11, 2020, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                                    _____/s/_____
                                                  Laura Koenig
                                                  Va. Bar No. 86840
                                                  Counsel for Defendant
                                                  Office of the Federal Public Defender
                                                  701 E Broad Street, Suite 3600
                                                  Richmond, VA 23219-1884
                                                  Ph. (804) 565-0881
                                                  Fax (804) 648-5033
                                                  laura_koenig@fd.org