# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA**

**v.**                                                    **Criminal No. 3:19cr19**
                                                         **UNDER SEAL**

**TROY GEORGE SKINNER,**

**Defendant.**

### MEMORANDUM OPINION II
### The Constitutional Motions Decision

This matter comes before the Court on six motions brought by Defendant Troy George
Skinner.  Skinner, a New Zealand citizen, faces kidnapping and production of child pornography
charges in the United States.

This is the second of three opinions released today.  The Court has issued its opinion on
Skinner's Motion to Suppress, ("Memorandum Opinion I" or the "Suppression Decision").[1]  The
third opinion addressing two motions, the Motion to Sever and the Motion for a Jury
Questionnaire, ("Memorandum Opinion III" or the "Severance Decision"), will follow.

This opinion addresses Skinner's three Motions to Dismiss (collectively, the
Constitutional Motions to Dismiss"):

(1)   Defendant Troy George Skinner's Motion to Dismiss Counts One through
      Nine of the Superseding Indictment for Lack of Subject Matter
      Jurisdiction and Violation of Due Process (the "Motion to Dismiss for
      Lack of Subject Matter Jurisdiction"), (ECF No. 69);

---

[1] In the Motion to Suppress, Skinner sought to exclude the fruits of three warrants:  one
that authorized the search of two cell phones and two warrants that, later, authorized the search
of one Google Mail ("Gmail") account each.  After two evidentiary hearings and additional
briefing, the matter was ripe for disposition.  The Court denied the Motion to Suppress for the
reasons stated in Memorandum Opinion and Order on the Motion to Suppress ("Memorandum
Opinion I" or the "Suppression Decision").

(2)     Skinner's Motion to Dismiss Counts One through Nine of the Superseding Indictment on First Amendment Grounds (the "First Amendment Motion to Dismiss"), (ECF No. 71); and,

(3)     Skinner's Motion to Dismiss Counts One through Nine of the Superseding Indictment on Fifth Amendment Due Process Grounds (the "Fifth Amendment Motion to Dismiss"), (ECF No. 72).

In the Motions to Dismiss, Skinner seeks the dismissal of Counts One through Nine of the Superseding Indictment charging him with the production of child pornography in violation of 18 U.S.C. § 2251(a).[2]  The United States responded to the three Motions to Dismiss, (ECF Nos. 79, 83, 84), and Skinner replied, (ECF Nos. 88, 90, 91).  After two evidentiary hearings and additional briefing, these matters are ripe for disposition.  For the reasons that follow, the Court will deny the Motions to Dismiss.

## I. Procedural History and Findings of Fact

The Court adopts and incorporates the procedural history and factual findings in both the Suppression Decision and the Severance Decision.  Its Speedy Trial findings in the Suppression

---

[2] 18 U.S.C. § 2251(a) criminalizes the production of child pornography and states that:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

Decision pertain to all three opinions as well.  This Memorandum Opinion will add factual findings and procedural events pertinent to the constitutional motions analyzed here.

## A.    **Procedural History**

On September 18, 2019, a federal grand jury returned an eleven-count superseding indictment (the "Superseding Indictment") against Skinner.  (ECF No. 58.)  The Superseding Indictment charged Skinner with nine counts relating to the production of child pornography, (Counts 1–9, the "Child Pornography Charges"), and two counts of attempted kidnapping, (Counts 10–11, the "Kidnapping Charges).  In January 2020, Skinner filed six pretrial motions, including the three Motions to Dismiss at issue.  (ECF Nos. 69, 70, 71, 72, 73, 76.)

### 1.    **The Motions to Dismiss**

Skinner first moves to dismiss for lack of subject matter jurisdiction, or, in the alternative, for violation of due process under the Fifth Amendment[3] because his conduct lacked a sufficient nexus to the United States.  (ECF No. 69.)  Second, Skinner moves to dismiss under the Fifth Amendment, claiming in an as-applied challenge that the absence of a knowledge requirement of the minor's underage status or a reasonable mistake of age defense in § 2251(a) renders his prosecution unconstitutional, or that the penalties he faces renders the prosecution fundamentally unfair.  (ECF No. 72.)  Third, Skinner moves to dismiss under the First Amendment,[4] contending in an as-applied challenge that subjecting him to liability for his online sexual encounters with V1 would chill protected speech. (ECF No. 71.)

---

[3] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, . . . nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. I.

[4] The First Amendment states, in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. amend. I.

2.      **The Evidentiary Hearings**

As noted, Skinner also filed a Motion to Suppress, (ECF No. 70), a Motion to Sever, (ECF No. 73), and a Motion for Jury Questionnaire, (ECF No. 76), in January 2020.

The Court held two evidentiary hearings on all pending motions.  On February 13, 2020, the Court held a hearing addressing the Fourth Amendment challenge in the Motion to Suppress. Briefing followed, as did a delay in the second hearing necessitated by restrictions flowing from the COVID-19 pandemic.  (*See* ECF Nos. 101–03, 106; Gen. Order 2020-07 (Case No. 2:20mc7), ECF No. 7.))  During the August 6, 2020 hearing, the Parties placed evidence on the record, including that produced through the warrants.  That additional evidence will be referenced below.  The Court heard argument addressing all matters the Parties chose to address orally.

Having denied the Motion to Suppress in a separate Memorandum Opinion, the Court turns now to the relevant facts underlying the Motions to Dismiss.

B.      **Findings of Fact as to the Constitutional Motions to Dismiss**[5]

The Child Pornography Charges arise out of an online sexual relationship between Skinner, a resident and citizen of New Zealand, and a minor residing in Goochland, Virginia

---

[5] At the August 6, 2020 Oral Argument, the Parties submitted a signed stipulation to the Court, stating that:

> [1] The parties stipulate that the video files and chat excerpts that have been identified by both parties as exhibits are authentic and admissible without further foundation . . . . [2] The parties stipulate that date and time information incorporated into the video file names and chat excerpts was generated by reliable electronic processes, and acknowledging the ordinary time difference between New Zealand and United States Eastern Time . . . . [and] [3] The parties stipulate that consistent with the provisions of 18 U.S.C. § 3509(d)(1)(A)(i) and § 3509(d)(2)(A), the parties' exhibits should all be filed under seal.  The parties further stipulate that given the nature of the contents of the exhibits, meaningful redaction of exhibits for the purpose of placing them in the public record is not possible, and the provisions of 18 U.S.C. § 3509(d)(2)(B) are therefore inapplicable.

(hereafter, "V1").  In December 2017, Skinner met V1 through an online gaming site called Steam.  Skinner and V1 began to exchange messages on Steam before transitioning, at Skinner's suggestion, to a different online-gaming platform called Discord.  These exchanges continued through June of 2018.

Over the course of their interactions, Skinner and V1 had a number of conversations discussing V1's age.  Some referenced the fact that V1

(Jt. Stip., ECF No. 116.)  The Court will redact aspects of the evidence from the public record accordingly.

[6] During the time covered by the Superseding Indictment, V1 turned fourteen.

On January 7, 2018, Skinner told V1 that he wanted to be her boyfriend.



(U.S. Ex. 23, ECF No. 114.)

Also, on January 7, 2018, Skinner and V1 discussed the age of consent in the United States (18) versus New Zealand (16).

On January 9, 2017, Skinner and V1 discussed

On February 3, 2017—nearly one month later—Skinner and V1 again discussed V1's

youthful appearance.



While initially an online friendship,[7]

---

[9] SpongeBob is an animated character from a television show, SpongeBob Squarepants, aimed to some degree, if not predominantly, at children.  All characters live in the sea.  The animated characters in the show include Patrick the starfish and Sandy Squirrel.

(Aug. 6, 2020 Hr'g Tr. 27.)  Counsel for Skinner explained during the hearing that two cursors appear on the video, "which indicates that [Skinner and V1] are screen sharing" as V1 can be heard responding to what the video suggests is Skinner reading the story to her.[10]  (*Id.*)  VI and Skinner discuss this in January:



---

[10] Most videos, all of which were recorded by Skinner, do not contain audio from Skinner's side of the conversation.  (*See, e.g.*, Aug. 6, 2020 Hr'g Tr. 49; U.S. Ex. 15 (showing recording activation and deactivation)).



_____

[11] When the Court asked Counsel for Skinner whether he had engaged in grooming V1 over the course of their relationship, Counsel for Skinner replied that here Skinner and V1 were having an "obscene conversation."  (Aug. 6, 2020 Hr'g Tr. 29.)



On January 10, 2018, Skinner recorded a video during which he repeatedly encouraged

---

[12] Virginia Code § 18.2-370.1 states that

Any person 18 years of age or older who, except as provided in § 18.2-370, maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally (i) proposes that any such child feel or fondle the sexual or genital parts of such person or that such person feel or handle the sexual or genital parts of the child; or (ii) proposes to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361; or (iii) exposes his or her sexual or genital parts to such child; or (iv) proposes that any such child expose his or her sexual or genital parts to such person; or (v) proposes to the child that the child engage in sexual intercourse, sodomy or fondling of sexual or genital parts with

 The video shows that the first portion of that

statute was briefly displayed on the screen:

> Any person 18 years of age or older who . . . maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally (i) propose that any such . . . .

New Zealand law enforcement discovered the January 26, 2018 Video saved on Skinner's

computer.

Several months later, on June 4, 2018, Skinner and V1

---

another person; or (vi) sexually abuses the child as defined in subdivision 6 of § 18.2-67.10 is guilty of a Class 6 felony.

VA. CODE. ANN. § 18.2-370.1.



Around early June 2018,

After V1 ended the relationship, Skinner traveled from his home in New Zealand to Richmond, Virginia. On June 21, 2018, Skinner arrived in Richmond and spent the night at a hostel. The next day, on June 22, 2018, Skinner traveled to the Wal-Mart Supercenter located at 11400 West Broad Street Road, Glen Allen, Virginia. While there, Skinner made two separate purchases: one for pepper spray, and the second for a clip knife and duct tape.

Later that afternoon, Skinner traveled to V1's family home in Goochland, Virginia. V1 had previously given Skinner her home address during one of their online chat sessions. Skinner attempted to gain access to the home through a sliding glass door. V1's mother refused Skinner entry to the house, at which point Skinner attempted to break the glass door. Alarmed, V1, together with her mother and sister, retreated upstairs where V1's mother retrieved a handgun. At this point, Skinner proceeded to a different entrance, broke a glass panel, and attempted to manipulate the doorknob through the broken panel to enter the home. After issuing several verbal warnings, V1's mother shot the handgun twice to prevent Skinner from forcing entry into the home. Shortly thereafter, law enforcement arrived at V1's home and found Skinner lying in a neighbor's yard. Law enforcement found Skinner with, among other things, two cell phones, duct tape, pepper spray, and a knife in an open, extended position.

13

The Court turns now to the three pending Motions to Dismiss, concluding, alongside most circuit courts, that Skinner prevails on none of them.

## II.  Analysis:  The Court Will Deny the Three Motions to Dismiss

Skinner brings three motions to dismiss the Superseding Indictment, arguing that the United States' prosecution of him for the nine counts of production of child pornography under § 2251(a) violates the Constitution.  First, Skinner moves to dismiss for lack of subject matter jurisdiction, or, in the alternative, for violation of due process under the Fifth Amendment because his conduct lacked a sufficient nexus to the United States.  (ECF No. 69.)  Second, Skinner moves to dismiss under the Fifth Amendment, claiming in an as-applied challenge that the absence of a knowledge requirement of the minor's underage status or a reasonable mistake of age defense in § 2251(a) renders his prosecution unconstitutional, or because the penalties he faces render the prosecution fundamentally unfair.  (ECF No. 72.)  Third, Skinner moves to dismiss under the First Amendment, contending in an as-applied challenge that subjecting him to liability for his online sexual encounters with V1 would chill protected speech.  (ECF No. 71.) For the reasons set forth below, the Court will deny each motion to dismiss.

### A.      Skinner Moves to Dismiss for Lack of Subject Matter Jurisdiction and on Due Process Grounds

In the Motion to Dismiss for Lack of Subject Matter Jurisdiction and on Due Process Grounds, Skinner makes two arguments relating to the partially foreign nature of his offense. First, he contends that Congress did not intend for § 2251(a) to apply to a non-citizen for acts committed in a foreign land.  (Subject Matter Jurisdiction Mot. Dismiss 2–6, ECF No. 69.)  He submits that § 2251(a) does not have extraterritorial effect and that this Court lacks subject matter jurisdiction.  (*Id.*)  Second, Skinner posits that prosecution for the child pornography offenses violates the Due Process Clause of the Fifth Amendment because his conduct lacks a

14

sufficient nexus to the United States. (*Id.* 6–8.) The Court concludes that these arguments lack merit.

The Court first discusses the law concerning the extraterritorial application of criminal statutes. Applying those principles, the Court concludes that § 2251(a) applies to conduct outside the territory of the United States, and, even if it did not, that this case represents a domestic application of the statute. Finally, the Court determines that a sufficient nexus exists between Skinner and the United States, meaning application of § 2251(a) to his conduct while in New Zealand would not be arbitrary or fundamentally unfair.

### 1. Legal Standard: The Presumption Against Extraterritoriality and Subject Matter Jurisdiction

"When interpreting a statute, courts must first and foremost strive to implement congressional intent by examining the plain language of the statute." *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (internal quotation marks and citation omitted). Absent ambiguity or a clearly expressed legislative intent to the contrary, courts apply the plain meaning of the statute, which courts must determine by reference to the statute's words and their ordinary meaning at the time of the statute's enactment. *Id.*

"Criminal statutes are to be strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has plainly and unmistakenly proscribed." *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012) (internal quotation marks and citation omitted). Considering the serious consequences flowing from a criminal conviction, the rule of strict construction rests on the principle that "no [person] shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Lanier*, 520 U.S. 259, 265 (1997) (internal quotation marks and citation omitted)). "Accordingly, although the simple existence of some statutory ambiguity is not sufficient to trigger automatic

resolution of the ambiguity in favor of a defendant, [courts] will construe a criminal statute strictly and avoid interpretations not clearly warranted by the text." *Hilton*, 701 F.3d at 966(internal quotation marks and citation omitted). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267.

Whether Congress has exercised its authority in expanding the scope of a criminal law outside the borders of the United States "is a matter of statutory construction." *Roe v. Howard*, 917 F.3d 229, 240 (4th Cir. 2019). When determining whether a statute applies extraterritorially, courts adhere to the rule that "unless a contrary intent appears, [a statute is] meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotations and citations omitted). This presumption against extraterritoriality represents "a canon of construction," which "rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign matters." *Id.* (citations omitted).

In determining whether the presumption against extraterritoriality applies, courts utilize a two-step framework. *Id.* (citing *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2102 (2016)). First, under the so-called *RJR Nabisco* framework, the Court should look to "'whether the statute gives a clear, affirmative indication that it applies extraterritorially,' and thereby rebuts the presumption against extraterritoriality." *Id.* (quoting *RJR Nabisco*, 136 S. Ct. at 2101). Importantly, "an express statement of extraterritoriality is not essential." *RJR Nabisco,* 136 S. Ct. at 2102. Courts should consider the history and context of the statute, along with its text, in determining whether Congress meant the statute to apply to conduct outside of the United States. *Id.* In some cases, the statute's "context may be dispositive." *Howard*, 917 F.3d at 240.

Case 3:19-cr-00019-MHL   Document 128   Filed 04/29/21   Page 17 of 59 PageID# 1224
Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 17
of 59 PageID# 1081

Congressional intent regarding extraterritoriality may also be "'inferred from the nature of the offense.'" *United States v. Ayesh*, 702 F.3d 162, 166 (4th Cir. 2012) (quoting *United States v. Bowman*, 260 U.S. 94, 97–98 (1922)). If limiting the prohibition to only domestic conduct would "greatly . . . curtail the scope and usefulness of the statute," then the prohibition should apply extraterritorially. *Id.* (quoting *Bowman*, 260 U.S. at 98).

Second, if the statute does not have extraterritorial effect, the *RJR Nabisco* framework directs the Court to "'determine whether the case involves a domestic application of the statute' by considering the challenged conduct in light of the statute's 'focus.'" *Howard*, 917 F.3d at 240 (quoting *RJR Nabisco,* 136 S. Ct. at 2101). If "the conduct relevant to the statute's focus" occurred in the United States, then application of the statute cannot be considered "truly extraterritorial." *Id.* In such circumstances, prosecution under a criminal statute would constitute a "permissible domestic application" of the statute. *Id.*

### 2. The Presumption Against Extraterritoriality Does Not Apply to § 2251(a) Because the Text, History, and Context of the Statute Indicate That Congress Expected Its Sanction to Apply Outside of the United States

Congress intended § 2251(a) to apply extraterritorially. In reaching this conclusion, the Court considers the text of the statute, the history of its amendments, and the goals it seeks to promote consistent with the first step of the *RJR Nabisco* framework.

### a. The Text of § 2251(a) Indicates a Congressional Purpose to Extend Its Coverage Extraterritorially

Section 2251(a) states that:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or *foreign commerce*, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such

17

> conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or *foreign commerce* or in or affecting interstate or *foreign commerce* or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or *foreign commerce* by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or *foreign commerce* or in or affecting interstate or *foreign commerce* or mailed.

18 U.S.C. § 2251(a) (emphases added).  Keeping in mind that "an express statement of extraterritoriality is not essential," the text of § 2251(a) evinces a Congressional intent that its sanction against the production of child pornography apply to extraterritorial conduct.  *RJR Nabisco,* 136 S. Ct. at 2102.

The text of the statute refers to "any person," not just citizens of the United States. 18 U.S.C. § 2251(a).  And the statute criminalizes the production of child pornography "affecting interstate or *foreign commerce*, or in any Territory or Possession of the United States."  *Id.* (emphasis added).  Indeed, § 2251(a) invokes the term "foreign commerce" six times, plainly indicating an extraterritorial effect.  Furthermore, by clearly demarcating between "foreign commerce" on the one hand, and "any Territory or Possession of the United States" on the other, the statute conspicuously indicates "a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control." *Foley Bros.*, 336 U.S. at 285.  Given the plain language of § 2251(a) demonstrating Congress's intent that the statute applies to foreign conduct, the statute applies extraterritorially.

### b.     The History of § 2251(a) and Subsequent Amendments Indicate That Congress Added the Term "Foreign Commerce" to the Statute to Give It Extraterritorial Effect

The history of § 2251(a) and the subsequent addition of the term "foreign commerce" buttresses the Court's finding that the statute applies extraterritorially.

In 1977, Congress passed the Protection of Children Against Sexual Exploitation Act, which created the modern version of § 2251(a).  Pub. L. No. 95-225, 92 Stat. 7 (1978), 18 U.S.C. § 2251.  The Senate Report on the bill indicated that the act was passed to "greatly enhance . . . the weapons to combat child pornography and child prostitution."  S. Rep. No. 95–438, 95th Cong., 2d Sess. 10, reprinted in 1978 U.S.C.C.A.N 40, 47.  The Senate Committee explained that one rationale for the expansion of child pornography laws was that "many of the sources of child pornography never came within the purview of federal investigators."  *Id.* at 10–11.  The Senate Committee further noted that some of the pornography available in the United States was produced abroad, therefore requiring the Customs Service and other federal agencies "to insure that these [] efforts continue to receive top priority."  *Id.* at 10.  Furthermore, while previous laws criminalized only the "mailing, distribution, and importation of obscene materials," § 2251 "fill[ed] the gap in existing law by declaring . . . use of children punishable."  H. Rep. No. 95-696, 95th Cong., 1st Sess. 11, reprinted in 1978 U.S.C.C.A.N 40, 47.

Congress has amended § 2251(a) several times since, and "moved quickly to fill" any gaps in the child pornography statutes.[13]  In 2008, Congress passed the Effective Child Pornography Prosecution Act of 2007, P.L. 110-358, 122 Stat. 4002, 4003 (Oct. 8, 2008). (ECPPA), which amended § 2251(a), § 2251A and § 2252(a).[14]  In Section 102 of the ECPPA, entitled "Findings," Congress set forth its rationale for amending those statutes.  Congress observed that "[c]hild pornography is estimated to be a multibillion-dollar industry of global

---

[13] *See* Statement of Sen. Joseph R. Biden, Hearing on Child Pornography Protection Act of 1996, available at 1996 WL 292976 (F.D.C.H.) (June 4, 1996) (stating that Congress has "kept a sharp eye on the problem of child pornography, and where [it] ha[s] found gaps in the coverage of the criminal law, [it] ha[s] moved quickly to fill them").

[14] Section 2252(a) "prohibits the interstate transportation, shipping, receipt, distribution, or reproduction of visual depictions of minors engaged in sexually explicit conduct." *United States v. X-Citement Video*, 513 U.S. 64, 65–66 (1994) (citing 18 U.S.C. § 2252).

proportions" and that child pornography is made "readily available through virtually every Internet technology, including Web sites, email, instant messaging, Internet Relay Chat, newsgroups, bulletin boards, and peer-to-peer." ECPPA § 102(4).  Congress further found that "[t]he technological ease, lack of expense, and anonymity in obtaining and distributing child pornography over the Internet has resulted in an explosion in the *multijurisdictional* distribution of child pornography." *Id.* § 102(5) (emphasis added).  Following these findings, Congress amended § 2251(a) by inserting "using any means or facility of interstate or *foreign commerce or*" in each of subsections (a), (b), (c) and (d).  *Id.* § 103(a)(1) (emphasis added).

The legislative history of the ECPPA informs Congress's motivation for these changes. In 2007, when considering an early version of the ECPPA, the House Committee on the Judiciary held a hearing on "Sex Crimes and the Internet."  Chair John Conyers (D-MI) opened the hearing by stressing the revolutionary nature of the internet, and how it has provided a "venue for unscrupulous sexual predators to commit their crimes."  House Committee on the Judiciary Hearing, "Sex Crimes and the Internet" 1, 110th Cong. 87 (Oct. 17, 2007). Representative Randy Forbes (R-VA) concurred, stating that Congress needed to enact legislation "to make the Internet safer . . . . to protect the vulnerable and innocent children of our country from sexual predators, [and] to provide law enforcement with the tools they need to protect our children." *Id.* 2.

At the same hearing, Michael A. Mason, Executive Assistant Director of the FBI Criminal, Cyber Response, and Services Branch, testified about the international nature of the FBI's efforts in pursuing child predators, including its joint efforts with foreign law enforcement stating that "child pornography is a global threat that requires a global response." *See id.* 31.  In his prepared statement, EA Director Mason said that "globalization has brought about new

challenges" and observed that "[o]ne of the most insidious uses of the Internet is for child sexual exploitation." *Id.* 32. EA Director Mason called specific attention to the exploitative use of "file sharing and e-mail . . . in real time with web cams and streaming video." *Id.* Another law enforcement official testified to the difficulties of suppressing the production of child pornography on a global scale, stating that in "the Internet age, demand for child pornography images in California or Europe can now result in the rape of a child in Texas, Florida or Michigan." *Id.* 48.

Notably, the United States Court of Appeals for the Eleventh Circuit, the only civilian court of appeals yet to have considered in a published opinion the extraterritorial effect of a related child pornography statute, § 2251A,[15] after Congress amended both § 2251(a) and § 2251A in 2008 to include the terms "foreign commerce," found that including the term "travel[] in . . . interstate or foreign commerce" in a child pornography statute makes "plain Congress's intent that the statute sweep broadly and apply extraterritorially."[16] *United States v. Frank*, 599 F.3d 1221, 1230 (11th Cir. 2010).

---

[15] Pursuant to 18 U.S.C. § 2251A(b)(2)(A) and (c)(1),

[w]hoever purchases . . . a minor . . . with intent to promote . . . the engaging in of sexually explicit conduct by such minor for the purpose of producing any visual depiction of such conduct . . . [and] . . . in the course of the conduct described . . . the minor or the actor traveled in or was transported in or affecting interstate or foreign commerce . . . is guilty of an offense punishable by fine and not less than 30 years' imprisonment or for life.

18 U.S.C. § 2251A(b)(2)(A) and (c)(1).

[16] Although the United States Court of Appeals for the Armed Forces found in 2005 that the Child Pornography Protection Act does *not* have extraterritorial effect where the conduct occurred outside the United States and involved only a "virtual" child, its reasoning is inapposite because the Court considers here the current version of the statute and a live minor located in the United States. *See United States v. Martinelli*, 62 M.J. 52, 54 (C.A.A.F. 2005) ("We hold that the CPPA does not have extraterritorial application and therefore does not extend to Martinelli's conduct in Germany."). And, as discussed, in 2007 Congress amended both § 2251(a) and

21

The Eleventh Circuit looked to the "inclusion of a 'travel in interstate or foreign commerce' provision" in other criminal statutes, and agreed with other circuits in finding that such language "'strongly suggests that Congress intended to cast a broad net and apply the statute to all offenders, whether or not they are found in the United States.'" *Id.* at 1230 (quoting *United States v. Hill*, 279 F.3d 731, 739 (9th Cir. 2002)). Both § 2251A and § 2251(a) criminalize conduct relating to the production of child pornography when that offense involves "foreign commerce." Like the *Frank* Court, this Court concludes that this phrase "foreign commerce" demonstrates Congressional "intent that the statute sweep broadly and apply extraterritorially." *Id.*

Although Skinner argues that "Congress did not clearly provide in the statutory language that 18 U.S.C. § 2251(a) criminalize extraterritorial conduct," (Mot. Dismiss SMJ 3), the Court may discern legislative intent from the statutory text and its legislative history. Given Congress's findings in the ECPPA, it is plainly evident that Congress added the term "using any means or facility of interstate or foreign commerce" to § 2251(a) to ensure that the statute would apply beyond the borders of the United States. Congress observed the global nature of the child pornography industry—facilitated by the internet—and set out to ensure the extraterritorial application of the statute by inserting "foreign commerce" into § 2251(a). The plain text and history of § 2251(a), therefore, "give a clear, affirmative indication that it applies extraterritorially." *Howard*, 917 F.3d at 240 (quoting *RJR Nabisco*, 136 S. Ct. at 2102).

---

§ 2251A(c) to include "using any means or facility of interstate or foreign commerce." ECPPA § 103.

    **c.**    **Courts Have Found that Limiting Application of § 2251(a) to Domestic Offenders Would Curtail the Scope and Usefulness of the Statute, <u>Further Supporting its Extraterritorial Application</u>**

While the Fourth Circuit has never spoken to the scope of § 2251(a), three United States Courts of Appeals have concluded that extraterritorial application of § 2251(a) acts as "an important enforcement tool" in carrying out the stated goals of Congress in sanctioning child pornography. *See, e.g.*, *United States v. Kapordelis*, 569 F.3d 1291, 1307 (11th Cir. 2009); *United States v. Harvey*, 2 F.3d 1318, 1327–28 (3d Cir. 1993); *United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir. 1990).[17] A district court in the Eastern District of New York has reached the same conclusion, applying § 2251(a) to extraterritorial acts committed by a foreign national while in Ukraine. *United States v. Kalichenko*, No. 14cr95, 2019 WL 1559422 (E.D.N.Y. Apr. 10, 2019).

At oral argument, Counsel for Skinner acknowledged that no court has ever determined that § 2251(a) lacked extraterritorial effect, but suggested that the *Thomas*, *Frank*, *Kapordelis*, and *Harvey* Courts had "run amok" with the Supreme Court's holding in *United States v. Bowman*, 260 U.S. 94 (1922). (Aug. 6, 2020 Hr'g Tr. 12.) Counsel for Skinner argued that *Bowman* stands for a "limited exception to the presumption against extraterritorial application of United States law when the offense is specifically against the United States or where the United States is a victim."[18] (*Id.*)

---

[17] The Court notes that several of these decisions predate ECPPA's amendments to § 2251(a) where Congress further clarified that § 2251(a) applies extraterritorially.

[18] Counsel also asserted at oral argument that courts erroneously rely on *United States v. Baker*, 609 F.2d 134 (5th Cir. 1980) to apply statutes extraterritorially. In *Baker*, the context of drug smuggling laws, the United States Court of Appeals for the Fifth Circuit found the necessary congressional intent to overcome the presumption against extraterritorial application. In that case, the defendants were arrested on an American flag vessel in international waters, (but within the twelve-mile "customs waters" area), for possession of 51,280 pounds of marijuana. *Baker*, 609 F.2d at 135. The Fifth Circuit concluded that "so long as it is clear that the intended distribution would occur within the United States . . . jurisdiction may be maintained, where

In *Bowman*, the Supreme Court reviewed a criminal fraud provision used to indict individuals who committed acts on a United States vessel outside of American territorial waters. The Supreme Court permitted the extraterritorial application of a statute outlawing conspiracy to defraud the government of the United States, including, under a recent amendment, a "corporation in which the United States of America is a stockholder." *Id.* at 101. The Court reiterated its presumption that, in most cases, if a substantive criminal provision is to be applied extraterritorially, "it is natural for Congress to say so in the statute." *Id.* at 98. But the Court found that "the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated." *Id.* The Court then proceeded to discuss a series of statutes unified by the fact that "to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute." *Id.* By way of example, *Bowman* cited statutes involving enticing desertions from naval service, thwarting the disposition of property captured as prize, bribing an officer of the United States to violate his duty, or a U.S. consul's certifying a false invoice. In such cases, congressional intent may be "inferred from the nature of the offense." *Id.* The Supreme Court added that to apply such a statute only territorially would "[g]reatly . . . curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home." *Id.*

As with the statute in *Bowman* criminalizing fraud against a corporation in which the United States is a stockholder, congressional intent to exercise jurisdiction over criminal conduct

---

defendants are apprehended outside the territorial waters, and inside the contiguous zone." *Id.* at 139. The Court does not find that *Baker* detracts from the *RJR Nabisco* analysis here because the child pornography statute at issue similarly intends to prohibit illicit conduct from occurring within the United States.

that centers on a minor present in the United States may be inferred from the nature of the offenses proscribed in § 2251(a).  Section 2251(a), by its plain language and stated purpose, represents part of a "comprehensive statutory scheme to eradicate sexual exploitation of children."  *United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir. 1990).  Congress has determined that child pornography represents an affliction on a "global" and "multijurisdictional" scale, facilitated by the growth of the internet.  *See* ECPPA § 102.  Given the global nature of the child pornography market, the Court concludes that limiting the application of § 2251(a) to domestic conduct would severely diminish the effectiveness of the statute.  *See Ayesh*, 702 F.3d at 166 (internal citations omitted).

Indeed, extraterritorial application of the statute is essential to combatting the harms Congress recognized in enacting § 2251(a) and other legislation criminalizing the production and dissemination of child pornography.  The damage caused by the production of child pornography does not depend on the locality of its production.  In the electronic age, foreign nationals or American citizens present in foreign nations can readily produce child pornography online with video capture and editing tools.  Distributors can then send these images or videos instantaneously through "Web sites, email, instant messaging, Internet Relay Chat, newsgroups, bulletin boards, and peer-to-peer [networks]."  ECPPA § 102(4).  Those images feed the "multibillion dollar industry of global proportions" that affects the United States and other nations.  *Id.* § 102(1).  As EA Director Mason of the FBI testified in the lead up to the passage of the ECPPA, those seeking to use child pornography may do so using "file sharing and e-mail . . . in real time with web cams and streaming video."  House Judiciary Hearing, "Sex Crimes and the Internet" 32.  Given these manifest and global harms, limiting § 2251(a)'s application to the shores of the United States would diminish the statute's effectiveness and contravene Congress's

Case 3:19-cr-00019-MHL   Document 128   Filed 04/29/21   Page 26 of 59 PageID# 1233
Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 26
of 59 PageID# 1090

stated purpose. Overseas producers and distributors of child pornography would be able to

sustain the global market beyond "the purview of federal investigators." S. Rep. No. 95–438,

95th Cong., 2d Sess. 10. The strength of Congress's sanction would be limited to a domestic

application in a global market.

Considering this uniform persuasive authority, the plain text of the statute, its history, and

its effect, the Court concludes that Congress intended for § 2251(a)'s prohibition on the

production of child pornography to apply outside the territorial limits of the United States when

the minor victim resides in the United States. Thus, under the first step of the *RJR Nabisco*

framework, § 2251(a) may extend to Skinner.

### 3. Even if the Presumption Against Extraterritoriality Did Apply, Skinner's Case Involves a Domestic Application of § 2251(a)

Even if § 2251(a) did not apply to conduct outside the United States, Skinner's offense

involves a domestic application of the statute.[19] This satisfies the second step of the *RJR*

*Nabisco* test to overcome the presumption against extraterritoriality. 136 S. Ct. at 2101.

### a. The "Focus" Test for Determining Domestic Application

Regarding the second step of the *RJR Nabisco* framework, the presumption against

extraterritoriality does not apply when the conduct in question is domestic in nature. *Morrison*,

561 U.S. at 266–67. Courts must look to the "focus of congressional concern" in the particular

---

[19] The Court assumes, without deciding, in this step of the analysis that § 2251(a) does not have extraterritorial effect.

The two steps of the *RJR Nabisco* framework are not mutually exclusive. As a district court in the Northern District of California recently explained, "the United States Supreme Court has authorized courts to start with the second step of the [*RJR Nabisco*] analysis in appropriate cases, such as where the first step would require resolving difficult questions that do not change the outcome of the case." *United States v. Wolfenbarger*, 2020 WL 2614958, at *5 (N.D. Cal. May 22, 2020) (internal quotation marks and citations omitted). In *Wolfenbarger*, the district court analyzed only the second *RJR Nabisco* step to determine that the conduct of inducing the sexual abuse of children located in the Philippines, with the inducement occurring in the United States, constituted a domestic application of § 2251(a). *Id.* at *4.

26

Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 27 of 59 PageID# 1091

statute or the "objects of the statute's solicitude" when determining a statute's domestic application. *Id.* at 266–67. The line between foreign and domestic conduct may be difficult to draw. *French v. Liebmann (In re French)*, 440 F.3d 145, 149 (4th Cir. 2006) ("defining 'foreign conduct'—is particularly challenging in cases . . . that involve a mixture of foreign and domestic elements."). The Fourth Circuit has stated that a 'court should consider whether the participants, acts, targets, and effects involved' in the transaction at issue 'are primarily foreign or primarily domestic.'" *Id.*

Typically, in a prosecution for the production of child pornography, the producer and the subject victim are found in the same location when the underlying crime is committed. Here, however, Skinner and V1 communicated via an online video and messaging platform while several thousand miles apart. The Court must therefore discern the "focus of congressional concern" in what Skinner characterizes as a case that warrants treatment other than those already reported. *Morrison*, 561 U.S. at 266. Looking to the "object of the statute's solicitude" as commanded in *Morrison*, the Court concludes that any alleged violation of § 2251(a) in this case was domestic in nature. *Id.* at 267.

### b.    The Minor Victim Is the Object of § 2251(a)'s "Solicitude"

The production of child pornography statute, § 2251(a), seeks to protect the minor victim. The *act* of producing child pornography—while clearly an essential element of the offense—is *not* the "object of the statute's solicitude." *Morrison*, 561 U.S. at 267. The child victim who needs protection is.

Skinner argues that the "clear focus" of § 2251(a) is the act of production of child pornography because the "statute is keenly focused on the creation of child pornography not simply sexual acts involving a child." (Skinner Reply Mot. Dismiss SMJ 6, ECF No. 88.)

Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 28 of 59 PageID# 1092

Because, Skinner reasons, the "production of the visual representations" occurred in New Zealand—that is, the physical acts or clicks necessary to stop and start the videos—the focal point of § 2251(a) must lie there as well. (*Id.*) This argument is misguided. The object of § 2251(a)'s solicitude is not on the non-descript technical acts of creating a file, but on the actual minor victim harmed in the production of that file.

*Morrison* proves instructive here. In that case, the Supreme Court considered the application of American securities law within Section 10(b) of the Securities and Exchange Act of 1934[20] to stock purchased on an Australian stock exchange. 561 U.S. at 267. Plaintiffs argued that the "deception" leading to the fraudulent sale of stock occurred in the United States, meaning that domestic law should apply. *Id.* The Supreme Court rejected this argument. The focus of the act was "not upon the place where the deception originated, but upon purchases and sales of securities in the United States." *Id.* at 266.

The same principles lead the Court to conclude that the minor victim is the "object of § 2251(a)'s solicitude." *Morrison*, 561 U.S. at 267. The focus of the act at bar does not lie with the place where the technical production of the pornographic picture or film "originated" but on the effect on the victim in the United States. While the language of the statute is plain, the

---

[20] Section 10(b) states, in relevant part, that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or
>
> deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.

Congressional history of § 2251(a)'s passage confirms this interpretation. Under the original

Protection of Children Against Sexual Exploitation Act of 1977, the Senate Judiciary

Committee's Report concerning the legislation determined "[t]hat the use of children as

prostitutes or as the subjects of pornographic materials is very harmful to both the children and

the society as a whole." S. Rep. No. 95–438, 95th Cong., 2d Sess. 10. Representative Dale

Kildee (MI-5), the sponsor of the House version of the bill stated that the goal of the bill was:

"child protection . . . the protection of children from sexual abuse. In my mind it parallels the

concept of child labor laws." Statement of Representative Dale Kildee, Conf. Comm. Rep. No.

95–438, 95th Cong., 2d Sess. 10; *see also* Statement of Representative Randy Forbes, House

Committee on the Judiciary Hearing, "Sex Crimes and the Internet" 2 ("We need to continue this

effort by using our common sense to protect the vulnerable and innocent children of our country

from sexual predators, [and] to provide law enforcement with the tools they need to protect our

children." )

Subsequent amendments to § 2251(a) similarly attest to Congress's focus on the victims

of child trafficking and child pornography. In 2006, Congress passed the Adam Walsh Child

Protection and Safety Act of 2006, amending § 2251(a) (and other statutes) with the stated

purpose "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse

and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and

other child crime victims." Pub. L. No. 109-248, 120 Stat. 587, 288 (2006). Two years later, in

2008, Congress passed additional amendments to § 2251(a) through the ECPPA, observing that

"[c]hild pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed." ECPPA § 102(3).

In each piece of legislation, Congress has focused on the victim and the continuing harms caused by the production and dissemination of child pornography.[21]  The statute, in both its texts and its context, focuses on the victim, not the location of the "production of the visual representations."  (Skinner Reply Mot. Dismiss SMJ 6.)  Under this common-sense approach, the actual "act" of producing the video or photographic content merely represents the consummation of an injury felt by the child victim.

### c.   Skinner's Prosecution Is a Domestic Application of § 2251(a) Because at All Times the Victim Lived in Virginia and the Harms Attendant to the Offenses Occurred in the United States

When Skinner made and produced the photographic and video material involving V1 while she resided in Virginia, the harms associated with child pornography occurred in the United States.  The Government's prosecution therefore constitutes a domestic application of § 2251(a).

Under the *French* Court's reasoning, a court "should consider whether the participants, acts, targets, and effects involved in the transaction at issue are primarily foreign or primarily domestic."  440 F.3d at 149.  Although Skinner was in New Zealand during the period in question, the remaining factors favor a domestic application.  The "acts" in question—those which made the videos child pornography under the statute—occurred in the United States.[22]  *Id.*

---

[21] As will be discussed at more length in the sections addressing Skinner's Motions to Dismiss under the Fifth Amendment Due Process Clause and First Amendment, these continuing harms are present regardless of whether the child victim is in the same room as the person producing the child pornography.

[22] The relevant statute, § 2251(a) forbids inducing or enticing a minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  18 U.S.C. § 2251(a).  "Sexually explicit conduct" includes "graphic or simulated lascivious . . .

The "target" of the crime was V1, a United States citizen residing in Virginia at the time the videos were made. *Id.* And the "effects" of the production, and any subsequent violations of privacy that V1 suffers, were felt and continue to be felt by the minor victim in the United States. *Id*; S. Rep. No. 95–438, 95th Cong., 2d Sess. 10. ("The use of children . . . as the subjects of pornographic materials is very harmful to both the children and the society as a whole.") As a result, the "participants, acts, targets, and effects involved" in this case are primarily domestic in nature. *French*, 440 F.3d at 149.

Skinner contests that this is domestic in nature. He argues that the evidence shows "that production of the visual representations in Counts One through Nine occurred in New Zealand." (Skinner Reply Mot. Dismiss SMJ. 6) Counsel for Skinner further argued at oral argument that "the acts that happened in this case in the United States ███████████████████████ ██████████████████████████ That is not something that Congress has any business in regulating in the United States." (Aug. 6, 2020 Hr'g Tr. 17.)

This argument overlooks the harms inherent to the *minor* victim in producing child pornography, whether in person or online, and the reasons Congress enacted § 2251(a). Skinner recorded a minor victim, V1, performing sex acts in real time, while she lived in Virginia. He did so without her knowing he was recording anything. V1, as the minor victim and the subject of the child pornography, suffers the harms and loss of innocence inherent in its production. *See* ECPPA § 102(3) (the pornographic image "revictimizes the child each time the image is viewed"). Neither § 2251(a), nor the Congressional findings detailing the harms inherent in the production of child pornography, center on "production of the visual representations" involved in

---

masturbation" and "graphic or simulated lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A). In this case, the alleged "graphic or simulated lascivious exhibition of the genitals or pubic area" occurred in the United States. *Id.* Thus, the *conduct* that actually *made* the video child pornography occurred in the United States.

Case 3:19-cr-00019-MHL    Document 128    Filed 04/29/21    Page 32 of 59 PageID# 1239
Case 3:19-cr-00019-MHL    Document 121 *SEALED* (Court only)    Filed 03/10/21    Page 32
of 59 PageID# 1096

the offense.  (Skinner Reply Mot. Dismiss SMJ. 6)  The statute and legislative history focus on

the acts central to the nature of child pornography and the effects or harms caused by that videos

production.  The harms and effects on the victim of that production fall on the minor victim

within the United States.  V1's requests that Skinner delete the videos as she distanced herself

from Skinner suggests V1's experience of harmful effects.  Furthermore, common sense dictates

that those acts central to the production of child pornography, the acts of a child who lacked

ability to give legal consent, occurred in the United States.

Skinner's contrasting interpretation of the statutory scheme yields aberrant results.

Section 2251(c), which Congress added in 2003, largely proscribes the same conduct as

§ 2251(a), except that it specifically targets persons using minors as subjects in child

pornography "outside of the United States, its territories or possessions."  18 U.S.C. § 2251(c).

Under Skinner's construct, Congress intended to protect minors outside of the territorial

boundaries of the United States from being used in production of pornography under § 2251(c),

but not minors within United States borders under § 2251(a).  Such an interpretation of § 2251(a)

is at odds with Congress's statutory scheme to combat the global child pornography market.  To

limit § 2251(a) to conduct by a pornographer in domestic territory of the United States would

weaken the statute's efficacy and thwart its stated purpose.

Even if § 2251(a) did not apply extraterritorially under the first step of the *RJR Nabisco*

analysis, the Court would have subject matter jurisdiction because the minor victim, not the

"production of the visual representations," (Skinner Reply Mot. Dismiss SMJ 6), is the "object[]

of the statute's solicitude."  *Morrison*, 561 U.S. at 267.  Because the victim of child pornography

serves as the focus of Congressional concern, the application of § 2251(a) to Skinner's conduct

represents a domestic application of the statute.  *Morrison*, 561 U.S. at 267.  In sum, the Court

Case 3:19-cr-00019-MHL    Document 128    Filed 04/29/21    Page 33 of 59 PageID# 1240
Case 3:19-cr-00019-MHL    Document 121 *SEALED* (Court only)    Filed 03/10/21    Page 33
of 59 PageID# 1097

has subject matter jurisdiction over the offenses reflected in Counts One through Nine of the

Superseding Indictment.  The Court turns next to Skinner's Due Process argument.

> **4.      Skinner's Prosecution Comports with Due Process Because A Sufficient Nexus Between Him and the United States Exists**

Because a sufficient nexus exists between Skinner and the United States and his

prosecution would not be arbitrary or unfair, the Court finds that his prosecution comports with

due process.

> **a.      Legal Standard:  Due Process and Nexus to the United States**

Even where a court has subject matter jurisdiction over a foreign defendant, courts must

ensure that "'a sufficient nexus between the defendant and the United States' exists, so that

applying a particular statute to the accused 'would not be arbitrary or fundamentally unfair.'"

*United States v. Bello Murillo*, 826 F.3d 152, 156 (4th Cir. 2016) (quoting *United States v.*

*Yousef*, 327 F.3d 56, 111 (2d Cir. 2003).  To apply a federal criminal statute extraterritorially,

due process requires this sufficient nexus between the defendant and the United States "so that

such application [of the criminal law] would not be arbitrary or fundamentally unfair."  *United*

*States v. Brehm*, 691 F.3d 547, 552 (4th Cir. 2012) (internal quotation marks and citations

omitted).

The sufficient nexus test "ensures that a United States court will assert jurisdiction only

over a defendant who should reasonably anticipate being hauled into court in this country."

*United States v. Mohammad-Omar*, 323 F. App'x 259, 261 (4th Cir. 2009) (quoting *United*

*States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998)).  Territorial jurisdiction is

proper where "the offense, or part of the offense, occurred within the United States."  *United*

*States v. Ayesh*, 762 F. Supp. 2d 832, 836 (E.D. Va. 2011) (quoting *United States v. Moncini*,

882 F.2d 401, 402–04 (9th Cir. 1989)).  For foreign nationals acting entirely abroad, a

Case 3:19-cr-00019-MHL   Document 128   Filed 04/29/21   Page 34 of 59 PageID# 1241
Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 34
of 59 PageID# 1098

"jurisdictional nexus exists where the aim of the activity is to cause harm inside the United States
or to U.S. citizens or interests." *United States v. Al Kassar*, 660 F. 3d 108, 118 (2d Cir. 2011).

The sufficient nexus test also requires that the defendant receive "fair warning" that the
extraterritorial conduct in question is criminal. *Brehm*, 691 F.3d at 554. Fair warning, however,
"does not require that the defendants understand that they could be subject to criminal
prosecution in the United States so long as they would reasonably understand that their conduct
was criminal and would subject them to prosecution somewhere." *Id.* (quoting *Al Kassar*, 660
F.3d at 119).

### b. A Sufficient Jurisdictional Nexus Between Skinner and the United States Exists Because the Offense Occurred in the United States

A sufficient nexus exists between Skinner and the United States because part of the
offense occurred in the United States, and the result of the activity was to cause harm to V1, the
minor victim who resided in the United States when recorded or photographed. *Murillo*, 826
F.3d at 157.

As with the Court's analysis regarding the "focus" of § 2251(a), "the offense, or part of
the offense" at bar "occurred within the United States." *Ayesh*, 762 F. Supp. 2d at 836 (quoting
*Moncini*, 882 F.2d at 402–04). At all times during the allegedly criminal conduct in question, V1
resided in the United States. The visual depictions of child pornography produced during
Skinner's relationship with V1 recorded scenes that were occurring within the United States.
Because the primary part of his offense occurred within the borders of the United States, a
sufficient nexus between Skinner and the United States exists.

Even if the Court were to assume that Skinner's conduct was entirely "foreign" in nature,
a jurisdictional nexus would remain because "the aim of that activity is to cause harm inside the
United States or to U.S. citizens or interests." *Al Kassar*, 660 F.3d at 118 (citation omitted).

Congress has thoroughly documented the harms inherent in the production of child pornography. *See* S. Rep. No. 95–438, 95th Cong., 2d Sess. 10. ("The use of children as prostitutes or as the subjects of pornographic materials is very harmful to both the children and the society as a whole.") The United States Supreme Court also has repeatedly recognized those harms. *See Ashcroft v. Free Speech Coalition*, 525 U.S. 234, 249 (2002) ("Like a defamatory statement, each new publication . . . [causes] new injury to the child's reputation and emotional well-being"). *New York v. Ferber*, 458 U.S. 747, 759 (1982) ("The materials produced [during the production of child pornography] are a permanent record of the child[]'s participation."). As will be discussed in addressing Skinner's arguments under the Fifth Amendment Due Process Clause and the First Amendment, concerns about the harms caused by the production of child pornography relating to the minor victim are present in this case.

Skinner's intent and actions in creating child pornography caused these harms to befall a United States citizen. *Al Kassar*, 660 F.3d at 118. Accordingly, his actions establish a sufficient nexus between him and the United States sufficient to satisfy due process.

### c.    Skinner Received Fair Warning that His Conduct Could Subject Him to Criminal Prosecution Within the United States

Skinner received fair warning that his conduct could submit him to prosecution. *Brehm*, 691 F.3d at 554. The Court draws that conclusion from the universal nature of child pornography offenses, the record in this case, and the laws of New Zealand.

### i.    Commonly Understood and Universal Moral Censure of Child Pornography

"[I]gnorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *United States v. Whorley*, 550 F.3d 326, 335 (4th Cir. 2008) (quoting *Cheek v. United States*, 498 U.S. 192, 199 (1991)). As the United States

Court of Appeals for the Ninth Circuit has observed, child pornography laws "are directly related to a commonly understood moral censure" and child pornography "is commonly regulated throughout the world." *Moncini*, 882 F.2d at 406. Given this universal censure, "a reasonable person [would] investigate the laws of the United States before sending such material into this country." *Id.*

In this case, Skinner knew he was engaging in, and taping, online sexual conduct with a United States teenager. The nature of child pornography offenses, and their common regulation throughout the world, should have led him to investigate those laws before recording a minor engaging in sexual conduct. Notably, he was on notice he was violating United States law.

### ii.    Record Before the Court

The record before the Court plainly establishes that Skinner had fair warning that his conduct was illegal under United States law because he saw listed the Virginia statute specifying the age of consent as eighteen and V1 was thirteen at the time.

On January 26, 2018, Skinner recorded a chat session with V1. During the ten-minute video (the "January 26, 2018 Video"), V1 viewed the website www.familywatchdog.us where she clicked on the profile of sex offenders located in her neighborhood. During that video, the record shows that V1 clicked on the profile of a sex offender convicted of violating Virginia Code § 18.2-370.1, which criminalizes taking indecent liberties with a child by a custodian. At that time, V1 conducted a Google search for Virginia Code § 18.2-370.1. The statute was displayed on the screen:

> Any person 18 years of age or older who . . . maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally (i) propose that any such . . . .

Va. Code § 18.2-370.1.  (U.S. Ex. 19.)  After discovering the video while searching Skinner's laptop, New Zealand authorities transmitted the January 26, 2018 Video to federal law enforcement in the United States.  The video provides strong evidence that Skinner knew the illegality of his conduct with a minor—despite her false claim that she was sixteen—because, even then, she would have been under the age of eighteen.

Case 3:19-cr-00019-MHL   Document 128   Filed 04/29/21   Page 38 of 59 PageID# 1245
Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 38
of 59 PageID# 1102



Finally, on June 4, 2018, Skinner and V1 exchanged text messages

The January 26, 2018 Video and Skinner's conversations with V1 unmistakably show

that Skinner received substantial notice of the potential criminality of his conduct.  During those

conversations, he viewed on his screen a Virginia statute that criminalized sexual contact with

children.  That statute defined children as those under the age of 18.

Ex. 26.)

### iii.     New Zealand Law

Skinner argues that because the age of consent is sixteen in New Zealand, at the very

least, he should be entitled to a mistake of age defense.  He suggests that, in fairness, the Court

should consider his perspective when assessing his conduct.  But, even presuming his

perspective could be considered under the strict liability statute here (which it cannot), Skinner

might have had warning of the potential criminality of his conduct pursuant to New Zealand law.

The New Zealand Crimes Act of 1961 (the "NZCA") criminalizes "[s]exual conduct with [a] young person under 16." NZCA § 134. Under § 134(1) of the NZCA, "[e]very one who has sexual connection with a young person [under the age of 16] is liable to imprisonment for a term not exceeding 10 years." *Id.* § 134(1). While the NZCA provides a defense to this charge, it requires action by the accused to mitigate the risk that an interaction could occur with someone under sixteen. It is not evident that Skinner's conduct would satisfy the New Zealand demands. Under NZCA § 134A(1):

> It is a defence to a charge under section 134 if the person charged proves that . . . (a) before the time of the act concerned, he or she had taken reasonable steps to find out whether the young person concerned was of or over the age of 16 years . . . and (b) at the time of the act concerned, he or she believed on reasonable grounds that the young person was of or over the age of 16 years . . . and (3) the young person consented.

*Id.* § 134A(1). The statute further provides that "it is not a defence to a charge under section 134 that the person charged believed that the young person concerned was of or over the age of 16 years." *Id.* § 134A(2)(b).

Seemingly, Skinner did not take the reasonable steps to ascertain V1's true age to invoke such a defense. While V1 told Skinner that she was sixteen years old, Skinner would have to prove that "he . . . had taken reasonable steps to find out whether [V1] was of or over the age of 16 years." *Id.* § 134A(1)(a). Skinner would also have to prove that his belief that V1 was sixteen years old rested "on reasonable grounds." *Id.* § 134A(1)(b). He could not simply claim, as he has done here, that he "believed the young person concerned was of or over the age of 16 years" without providing a basis for that belief. *Id.* § 134A(2)(b). No evidence before this Court suggests that Skinner made any effort to discern V1's true age beyond her representation of it. Regardless, the proximity of Skinner's conduct to criminally forbidden sexual contact with a child *even in his home country* should have made clear to him the potential illegality of his

conduct *in the United States*. And, of course, Skinner knew the age of majority in the United States was eighteen, not sixteen. New Zealand law is of no moment.

Indeed, Skinner received more than a "fair warning" that his actions could be considered criminal in the United States. *Brehm*, 691 F.3d at 554. Child pornography laws are common, and one engaging in sexual contact with a teenager can reasonably be expected to understand those laws before doing so. Skinner was also put on notice, through his interaction with V1 and seeing a Virginia statute prohibiting indecent liberties with minors, that his conduct was criminal here. Finally, while New Zealand provides a lower age of consent for sexual activity, nothing suggests that it would apply in the United States.

This Court concludes that, considering the circumstances at bar, a sufficient nexus between Skinner and the United States exists such that his prosecution is not arbitrary or fundamentally unfair. Skinner directed his actions towards the United States, and his actions harmed a minor victim within its borders. Skinner had fair warning that his conduct was potentially criminal, either by reference to common norms forbidding the production of child pornography, through his conversations with V1, or by the law of his home country. As explained in more detail below, its criminality in the United States stems solely from V1's minor age, not from Skinner's perception of it. For these reasons, the Court will deny Skinner's Motion to Dismiss for Lack of Subject Matter Jurisdiction and on Due Process Grounds.

### B. Skinner Moves to Dismiss on Fifth Amendment Due Process Grounds

In the Motion to Dismiss on Fifth Amendment Due Process Grounds, Skinner argues that § 2251(a) is unconstitutional as applied to him because he had no way of knowing whether V1 was a minor and therefore could not possess the criminal intent necessary under the statute. He also suggests that hailing him into a United States Court to face such harsh penalties is

fundamentally unfair. Because this contention runs afoul of binding Supreme Court and Fourth Circuit precedent and lacks a basis in the record, the Court will deny the Motion to Dismiss on Fifth Amendment Due Process Grounds.

### 1.    Legal Standard:  Fifth Amendment Due Process

It is a fundamental principle in American jurisprudence that "an injury can amount to a crime only when inflicted by intention." *Morissette v. United States*, 342 U.S. 246, 250 (1952). Generally, the existence of *mens rea*—otherwise known as a "guilty mind"—"is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."[23] *Staples v. United States*, 511 U.S. 600, 605 (1994) (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 436 (1978)). Nonetheless, while crimes without a *mens rea* requirement are disfavored, Congress may impose strict liability for certain types of offenses. *Id.* at 606.

"Determining the mental state required for commission of a federal crime requires 'construction of the statute and . . . inference of the intent of Congress.'" *Staples*, 511 U.S. at 605 (quoting *United States v. Balint,* 258 U.S. 250, 253 (1922)). Generally, "some indication of congressional intent . . . is required to dispense with *mens rea* as an element of a crime." *Id.* at 606. Despite this, certain offenses are exempted from the "guilty mind" requirement altogether. For example, the Supreme Court has expressly recognized the common-law exception for both public welfare offenses and "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl [or boy] had reached age of consent." *X-Citement Video*, 513 U.S. at 72 n.2 (discussing *Morissette*, 342 U.S. at 251 n.8).

---

[23] Many cases on this subject use *mens rea*, guilty mind, or scienter interchangeably to represent the general requirement that a person know their conduct could be illegal. The Court will refer to the requirement generally as *mens rea* but will not alter other courts' choice of language when quoting cases.

2.      **The Fourth Circuit Previously Rejected a Similar Argument Challenging the Facial Validity of § 2251(a) as Overbroad under the First Amendment on the Basis that it Chills a Substantial Amount of Protected Speech Without a Mistake of Age Defense**

Skinner brings an as-applied challenge to his prosecution for the Child Pornography Counts. Specifically, Skinner contends that his prosecution violates due process because he "had no opportunity to interact in person with the alleged victim" and was thus unable to "properly assess [her] age." (Fifth Am. Mot. Dismiss 1, ECF No. 72.) Skinner contends that § 2251(a) should be found unconstitutional as applied to his online relationship with V1 because he "never knew his conduct was illegal." (*Id.* 6.) At oral argument, Counsel for Skinner said, "the essence of this argument is that there was no in-person contact to provide Mr. Skinner the opportunity to actually ascertain the age of the person on the other end of this internet connection." (Aug. 6, 2020 Hr'g Tr. 60.) Skinner argues that because he was "literally on the other side of the planet, and the only opportunity to observe [V1] came from whatever images she chose to convey," his prosecution offends the constitution and must be dismissed. (Fifth Am. Mot. Dismiss 7.) In the alternative, Skinner asks the Court for "a reasonable mistake of age instruction." (*Id.* 1.)

The Fourth Circuit and the Supreme Court have both recognized that Congress purposefully omitted a knowledge requirement from § 2251(a), meaning the statute is facially constitutional.[24] *See United States v. Malloy*, 568 F.3d 166, 171 (4th Cir. 2009); *X-Citement Video*, 513 U.S. at 72 n.5. In *Malloy*, the defendant was convicted of videotaping intercourse between himself, another adult, and a fourteen-year-old girl. 568 F.3d at 66–67. The defendant, claiming that he believed the girl to be older, argued that the statute was "constitutionally infirm unless [read] to incorporate a reasonable mistake of age defense." *Id.* at 66.

---

[24] The Fourth Circuit recently reaffirmed that the elements of an offense under § 2251(a) *do not* include knowledge of the victim's age and remain the same as those elements set forth in *Malloy*. *See United States v. McCauley*, 983 F.3d 690, 695 n.3 (4th Cir. 2020).

The Fourth Circuit found no support for that argument. The Fourth Circuit first concluded, as a matter of statutory analysis, "that knowledge of the victim's age is neither an element of the offense nor textually available as an affirmative defense." *Malloy*, 56 F.3d at 171. Looking to the text of § 2251(a), the *Malloy* Court found it "immediately apparent that the statute on its face contains no requirement that the defendant know that the victim is a minor." *Id.* The lack of a *mens rea* requirement was not an oversight. Congress "considered and explicitly rejected such a knowledge requirement." *Id.* As the House Conference Report on the final bill established:

> The Senate Bill contains an express requirement in proposed section 2251(a) that the crime be committed 'knowingly.' The House amendment does not. The Conference substitute accepts the House provision *with the intent that it is not a necessary element of a prosecution that the defendant knew the actual age of the child.*

*Id.* (citing H.R. Rep. No. 95-811, at 5 (1977)) (Conf. Rep.) (emphasis added); *accord* S. Rep. No. 95-601, at 5 (1977). Considering the clear Congressional intent and legislative history, the Fourth Circuit determined that a "defendant's awareness of the victim's minority is not an element of the offense." *Id.* at. 172. Because knowledge of the victim's age was "irrelevant" to guilt, the *Malloy* Court also found that no reasonable mistake of age defense was available. *Id.*

In reaching these conclusions, the Fourth Circuit relied on the Supreme Court's decision in *X-Citement Video*. 513 U.S. at 76. In that case, the Supreme Court considered the interpretation of 18 U.S.C. § 2252, which prohibits the transportation, shipping, reception, or distribution of child pornography, and found that a person must know that the material in question constitutes child pornography for the statute to apply. *Id.* In 1977, when Congress first amended § 2252 and § 2251, it "retained the adverb 'knowingly' in § 2252 while simultaneously deleting the word 'knowingly' from § 2251(a)." *Id.* The Supreme Court determined that "[t]he

Case 3:19-cr-00019-MHL   Document 128   Filed 04/29/21   Page 44 of 59 PageID# 1251
Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 44
of 59 PageID# 1108

difference in congressional intent with respect to § 2251 versus § 2252 reflects the reality that producers are more conveniently able to ascertain the age of performers." *Id.* at 76 n.5.

The Supreme Court thus observed that § 2251(a) does not require knowledge that the minor is underage.  In a footnote, the Supreme Court discussed why the absence of a *mens rea* requirement in § 2251(a) was permissible, likening § 2251 to the common-law treatment of rape:

> *Morrissette*'s treatment of the common-law presumption of *mens rea* recognized that the presumption expressly excepted "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent."  But as in the criminalization of pornography production at 18 U.S.C. § 2251 . . . the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age.  The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver.  Thus we do not think the common-law treatment of sex offenses militates against our construction of the present statute.

*X-Citement Video*, 513 U.S. at 72 n.2.[25]  Because knowledge of the victim's age is not an element of the offense, a mistake of age defense is not mandated by the Constitution.  *Malloy*, 568 F.3d at 172. ("When Congress intends to include an affirmative defense, particularly in the context of laws involving child pornography and sexual exploitation of children, it can and has included the defense in the statute's text.").

---

[25] The federal courts of appeals are in near unanimous agreement with this view.  In addition to the Fourth Circuit in *Malloy*, the First, Third, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have found § 2251(a) does not require knowledge of age, and when the question has been considered, have declined to read an affirmative defense into the statute.  *See United States v. Henry*, 827 F.3d 16 (1st Cir. 2016); *United States v. Tyson*, 947 F.3d 139, 147 (3d Cir. 2020); *United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009); *United States v. Crow*, 164 F.3d 229 (5th Cir. 1999); *United States v. Humphrey*, 608 F.3d 955 (6th Cir. 2010); *United States v. Fletcher*, 634 F.3d 395 (7th Cir. 2011); *United States v. Wilson*, 565 F.3d 1059 (8th Cir. 2009); *United States v. Pliego*, 578 F.3d 938 (8th Cir. 2009); *United States v. Deverso*, 518 F.3d 1250 (11th Cir. 2008); *United States v. Ruggiero*, 791 F.3d 1281 (11th Cir. 2015).  Only the Ninth Circuit has reached a different conclusion, and six years before the Supreme Court's decision in *X-Citement Video*.  *See United States v. United States District Court* ("District Court"), 858 F.2d 534 (9th Cir. 1988).

3.    **The Facts of this Case Do Not Provide a Basis for Diverging from** *Malloy* **and** *X-Citement Video*

Skinner also argues that his circumstances present a "meritorious as-applied challenge,"

(Fifth Am. Mot. Dismiss 9), and asks this Court to provide the jury with a reasonable mistake of

age defense for Fifth Amendment fairness reasons because of the high penalty imposed by the

mandatory minimum sentence associated with § 2251(a). The facts of this case do not justify a

departure from *Malloy* and *X-Citement Video*, nor does the penalty associated with § 2251(a)

mandate a mistake of age defense under the Due Process Clause.

To sustain his argument, Skinner focuses on isolated portions of the Supreme Court's

ruling in *X-Citement Video*. He admits, as a general matter, that in most cases involving the

production of child pornography, "the perpetrator confronts the underage victim personally and

may be reasonably required to ascertain that victim's age." *X-Citement Video*, 513 U.S. at 72

n.2. Here, however, Skinner submits that he "was literally on the other side of the planet, and the

only opportunity to observe [V1] came from whatever images she chose to convey." (Fifth Am.

Mot. Dismiss 7.) Because he "was not afforded an opportunity for a face-to-face personal

encounter," Skinner believes the facts of his case merit different treatment. (*Id.*)

Skinner's as-applied argument falters for two reasons. First, Skinner treats the language

of *X-Citement Video* about confronting "the underage victim personally" as establishing an as-

applied requirement for production of child pornography offenses. 513 U.S. at 72 n.2. It did not.

*X-Citement Video* merely held, as a matter of statutory interpretation, that § 2252 required proof

of knowledge that a piece of child pornography depicted a minor. The Supreme Court's decision

did not speak to the constitutionality of either § 2252 or § 2251. More importantly, *X-Citement*

*Video* did not speak to Congress's ability to impose liability without a knowledge requirement

for certain elements of offenses. *Staples*, 511 U.S. at 606 ("The definition of the elements of a

45

criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.").

Second, even if *X-Citement Video* had engrafted a constitutional requirement that the child pornography producer "confront[] the underage victim personally," Skinner would not be able to avail himself of its protection. *X-Citement Video*, 513 U.S. at 72 n.2. The record before the Court indicates that Skinner had ample opportunity to "ascertain [V1]'s age." *Id.* Skinner and V1 routinely engaged in video chat sessions. During those sessions, Skinner could observe V1, both clothed and unclothed. He could speak with her, ask her questions, and assess her maturity. Skinner knew V1 was under the age of eighteen through their online conversations. Indeed, despite the emphasis Skinner places on the lack of a "face-to-face personal encounter" with V1, he identifies no information that he could have obtained at a face-to-face meeting that he could not have obtained during their video chats. *Id.*

This is true because, despite Skinner's persistent attempts to characterize it otherwise, Skinner's conduct was not "virtual" or "simulated" but rather "online" with an "actual" underage victim. Skinner and VI interacted visually and vocally in real time. Skinner's argument relies on *one* definition of "virtual" which is "being on or simulated on a computer or computer network" such as "occurring or existing primarily online." (Virtual, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/virtual, last visited Mar. 10, 2021 at 2 and 2a.) But this definition does not override the fact that he interacted with an *actual* child. V1 "existed in fact or reality" and was not "false or apparent." (Actual, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/actual, last visited Mar. 10, 2021 at 1a and 1b). V1 was not animated or computer generated. Skinner cannot rely on this colloquial use of the word "virtual" to escape liability for his conduct with an actual child under this criminal statute.

In the electronic age, social networking platforms such as live streaming sites and Discord allow users to interact face-to-face and in this intimate manner. To find that Skinner could not be subject to prosecution because his actions, requests, and commands happened over a livestream would turn these statutes on their head—especially when a potentially permanent recording results from the exchange. It defies common sense that Congress would impose liability on an accused under, for instance, Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), for communicating over the internet with an *adult* undercover agent, but exclude Skinner's actions toward an actual child here. *See, e.g.*, U.S. Sent'g. Guidelines Manual § 2G2.1 cmt. n.1 (U.S. Sent'g Comm'n 2018) (defining a "minor" for purposes of § 18 U.S.C. § 2422 (b) as including "an individual, whether fictitious or not, who a law enforcement officer represented to a participant . . . had not attained the age of 18 years" or "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years.").

More importantly, Congress's stated concerns about the abuse of children inherent in the production of child pornography, as discussed further below in denying Skinner's First Amendment Motion to Dismiss, are clearly present. For these reasons, the imposition of criminal liability in this case aligns with the common-law rationale, reflected by Congress in passing § 2251(a), does not violate the Fifth Amendment as applied to Skinner.

Case 3:19-cr-00019-MHL   Document 128   Filed 04/29/21   Page 48 of 59 PageID# 1255
Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 48
of 59 PageID# 1112

4.    **The Penalty Associated With The Charged Offenses Does Not Violate Due Process As Applied to Skinner**

Skinner faces a fifteen-year mandatory minimum sentence should he be convicted of the offenses with which he is charged.  Skinner argues that the facts of this case and the statute, as applied to him, violates his Fifth Amendment Due Process rights, as he had "only opportunity to observe [V1] came from whatever images she chose to convey, having full control over the camera and the images she sent." (Fifth Am. Mot. Dismiss 7.)  Skinner contends that the conduct at issue lacks "any suggestion that a child is being exploited in any way," and he should not be "subjected to a strict liability punishment of this magnitude." (*Id.* 8.)  Skinner suggests that because of his "very unique prosecution" he did not have fair notice of the penalties associated with the offenses with which he is now charged.  (Aug. 6, 2020 Hr'g Tr. 77.)

The record belies Skinner's argument.  Skinner had control over whether to record or copy anything V1 sent him, and he did so.  V1 stated herself that the files he possessed of her constituted child pornography.  Skinner also had the ability to turn off his computer at any time or disengage from interacting with V1.  Skinner could have ended his relationship with V1 upon learning her age (which he believed to be sixteen), and seeing the Virginia statute prohibiting a sexual relationship between an adult and a minor under the age of eighteen. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ *Malloy*, 568 F.3d at 175.  That Skinner did not have the opportunity for a tactile encounter during this alleged offense is of no moment, because the record before the Court shows that he had personal interaction with V1 in every meaningful sense even though it occurred online.

Additionally, Skinner's due process rights do not turn on whether he had notice of the specific penalty associated with his alleged offenses.[26]  As the Fourth Circuit has stated, ignorance of the law or a mistake of law is no defense to criminal prosecution.  *United States v. Whorley*, 550 F.3d 326, 335 (4th Cir. 2008).  Skinner may not have known about the mandatory–minimum penalty associated with his charged offenses, but that provides him no legal cover.

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  While the Court may or may not agree with the severe penalties that mandatory minimum sentences can require, the Court must follow Congress's unequivocal directives regarding what it deems the appropriate penalty for crimes.[27]

Skinner, of course, remains innocent until proven guilty.  But his alleged conduct falls within the reasoning of *Malloy* and *X-Citement Video*, meaning his as-applied argument fails under the rationales of those cases.  Under the traditional common-law rationale for sex offenses involving minors, "[i]t thus makes sense to impose the risk of error" on Skinner.  *X-Citement*

---

[26] The Supreme Court "has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his [or her] conduct is proscribed."  *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).  While this case involves a strict liability statute lacking a scienter requirement, as discussed in this Memorandum Opinion, Skinner had notice that law proscribed his conduct with V1, a minor.

[27] At oral argument on August 6, 2020, Counsel for Skinner asserted that "fundamental fairness" should be considered because of the mandatory minimum penalty associated with the statutes, meaning the "consequence of the prosecution should be factored in when determining fundamental fairness."  (Aug. 6, 2020 Hr'g Tr. 68–69.)  While asking the Court to consider fundamental fairness in Skinner's case, Counsel for Skinner recognized that Fourth Circuit precedent does not allow for "a reasonable mistake of age defense."  (*Id.* 69.)
While the Court sees that Judge Kozinski's 1988 Opinion in *United States v. United States District Court for Central District of California* allows such a defense, that case is a legal outlier this Court declines to stand by.

*Video*, 513 U.S. at 72 n.5.  For these reasons, the Court will deny Skinner's Motion to Dismiss on Fifth Amendment Due Process Grounds.

### C.      Skinner Moves to Dismiss on First Amendment Grounds

The Court will also deny Skinner's Motion to Dismiss on First Amendment Grounds.  In the Motion to Dismiss on First Amendment Grounds, Skinner brings an as-applied challenge to § 2251(a), claiming that its application in this case "inhibits the exercise of expression and chills protected speech."  (First Am. Mot. Dismiss 1, ECF No. 71.)  Skinner contends "[i]t is the government's allegations of a violation of the statute through online sexual conduct, as it found here, that violates the First Amendment, and not through traditional applications of the statute involving production of child pornography, such as live in-person recording or photographing." (*Id.*)  The factual context of Skinner's offense—namely, that he only encountered his victim online—does not justify a departure from *Malloy* and the facial constitutionality of § 2251(a) as applied in this case.

### 1.      Legal Standard:  First Amendment and Child Pornography

The First Amendment commands that "Congress shall make no law . . . abridging the freedom of speech."  U.S. CONST. AMEND. I.  While the First Amendment generally "bars the government from dictating what we see or read or speak," freedom of speech "has its limits." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002).  Whether the First Amendment protects speech "often depends on the content of the speech." *Ferber*, 458 U.S. at 763.  For instance, the First Amendment "does not embrace certain categories of speech, including defamation, incitement, obscenity, and *pornography produced with real children*." *Free Speech Coal.*, 535 U.S. at 245 (emphasis added).

While Congress and the states may criminalize speech not protected by the First Amendment, strict liability "cannot be applied in settings where they have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it." *Smith v. California*, 361 U.S. 147, 152–53 (1959). Imposing strict liability for unprotected speech might have "an undoubted 'chilling' effect on speech . . . that does have constitutional value." *Hustler Magazine v. Falwell*, 485 U.S. 46, 52 (1988). In the context of child pornography, in a First Amendment analysis, "criminal responsibility may not be imposed without some element of scienter on the part of the defendant." *Ferber*, 458 U.S. at 765 (citations omitted).

Again, *Malloy* controls the outcome. The Fourth Circuit has upheld § 2251(a) as facially constitutional. *See Malloy*, 568 F.3d at 173–75. Recognizing this, Skinner brings an as-applied challenge to the statute. "In an as-applied challenge, a statute is unconstitutionally vague if it fails to put a defendant on notice that his conduct was criminal. For statutes involving criminal sanctions the requirement for clarity is enhanced." *United States v. Osinger*, 753 F.3d 939, 946 (9th Cir. 2014); *United States v. McLamb*, 985 F.2d 1284, 1291 (4th Cir. 1993) (similarly observing that penal statutes must define crimes so "that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encouraged").

> **2.** **Skinner's As-Applied First Amendment Challenge Fails Because His Conduct Was Not "Virtual" or "Simulated" but Occurred "Online" With an Actual Victim that He Knew was a Minor During their Interactions**

Skinner concedes that his challenge to the constitutionality of § 2251(a) "is not brought as a facial challenge because . . . the statute has not been found to be unconstitutional in all or a substantial number of its applications." (First Am. Mot. Dismiss 1.) Instead, Skinner contends that "materials voluntarily created by a minor . . . do not implicate the concern with

'exploitation' or abuse'" inherent in the criminalization of child pornography.[28] (First Am. Mot. Dismiss 10.) Therefore, the reasoning underlying the criminalization of child pornography does not apply to his case. In Skinner's view, applying strict liability to his conduct would chill protected speech—consensual online sex between *adults*. (*Id.*)

In both his Fifth Amendment and First Amendment arguments, Skinner claims that the fact that his conduct occurred online, and not in person, differentiates his case from binding Fourth Circuit precedent. For the reasons identified above, it does not. The conduct underlying his prosecution occurred "in-person" in every meaningful sense of the phrase, as Skinner had every opportunity to assess the age of V1 before engaging in sexual conduct. As with Skinner's Fifth Amendment Due Process argument, *United States v. Malloy* controls Skinner's First Amendment argument. 568 F.3d at 173–75. The *Malloy* court found, as a matter of statutory interpretation, that knowledge of a victim's minor status was not a necessary element of an offense under § 2251(a). *Id.*; *see also United States v. McCauley*, 983 F.3d 690, 695 n.3 (4th Cir. 2020) (reaffirming that the elements of a § 2251(a) offense do not include knowledge of the victim's age and remain the same as those elements set forth in *Malloy*).

The defendant in *Malloy* also argued, as Skinner does here, that the First Amendment required a reasonable mistake of age defense to "avoid [the statute] reaching too broadly and chilling a substantial amount of protected speech." 568 F.3d at 172. The *Malloy* Court rejected

---

[28] At the August 6, 2020 oral argument, Counsel for Skinner articulated that "*Ferber* was very different than what we have here. *Ferber* was dealing with the exploitation and abuse of children, not the voluntary acts of a minor over the internet on the other side of the world. The Court in *Ferber* was also concerned with the distribution of those materials. And it's our position that there was no distribution of materials. And also, *Ferber* was very much concerned with the economic mode of the producers. All concerns that do not apply here." (Aug. 6, 2020 Hr'g Tr. 70–71.)

The Court does not find this argument persuasive because, as discussed here, the harms associated with the production of child pornography are present in this case regardless of how Skinner made the pornographic files, because he involved an actual minor victim in real time.

this rationale. First, the *Malloy* court considered the government's interest in prohibiting child pornography, and with reference to *Ferber*, found it substantial. The Fourth Circuit reiterated the Supreme Court's finding that "the exploitive use of children in the production of pornography has become a serious national problem" and that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Malloy*, 568 F.3d at 174 (quoting *Ferber*, 458 U.S. at 757). The Fourth Circuit continued:

> sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults . . . [t]he government has a compelling interest in protecting even children who lie about their age. As the Eighth Circuit notes, 'the State may legitimately protect children from self-destructive decisions reflecting the youthful poor judgment that makes them, in the eyes of the law, beneath the age of consent.'

*Id.* (quoting *Ferber*, 458 U.S. at 757). Considering these interests, the Fourth Circuit echoed *Ferber*'s pronouncement the government possesses "greater leeway in the regulation of pornographic depictions of children." *Id.* (quoting *Ferber*, 458 U.S. at 757).

Second, the Fourth Circuit noted that there was little risk of § 2251(a) chilling protected speech. Under 18 U.S.C. § 2257(b)(1),[29] pornography producers "are already required to authenticate actors' ages." *Malloy*, 568 F.3d at 175. Only a small subset of pornography—that which purposefully involve youthful appearing but adult subjects—would be implicated by such age authentication restrictions, and "prosecution in such cases is rare." *Id.* at 175–76. Considering the producer's "superior ability" to ascertain the age of the subject, the Fourth Circuit found it "unlikely that producers of such pornography will be chilled, much less substantially chilled, by the unavailability of a mistake of age defense in § 2251(a)." *Id.* at 176.

---

[29] Section 2257(b)(1) requires anyone who produces pornography to "ascertain, by examination of an identification document containing such information, the performer's name and date of birth, and require the performer to provide such other indicia of his or her identity as may be prescribed by regulations." 18 U.S.C. § 2257(b)(1).

Considering the important governmental interest and the lack of a chilling effect on protected speech, the Fourth Circuit "decline[d] to engraft onto it a reasonable mistake of age defense that is neither grounded in the statutory text nor mandated by the Constitution." *Id.* at 174.[30]

> ### a. Because This Case Involves an Actual Child and Not a Computer-Animated Child, *Free Speech Coalition* Does Not Persuade the Court to Find § 2251(a) Unconstitutional As Applied to Skinner

Skinner acknowledges that *Malloy* and *Ferber* remain valid law. Skinner seeks to rest his argument on an as-applied challenge by claiming he engaged in "virtual sexual conduct" or "video phone sex" with V1, and arguing that § 2251(a) may not subject him "to a strict liability standard for misjudging this boundary in the context of virtual online sex." (First Am. Mot. Dismiss 6.) Skinner seems to suggest that § 2251(a) did not put him on notice that his conduct was criminal and submits "that the rule established in *Ferber*" does not apply in this case because of how the child pornography was made, namely that "[a] minor who is at home, and who voluntarily initiates an exchange of sexually explicit material with an individual literally on the other side of the planet cannot implicate the concerns with coercion and exploitation that were the basis of the decision in *Ferber*."[31] (First Am. Mot. Dismiss 7, 9–10.) Skinner cites

---

[30] As noted above, when the Fourth Circuit decided *Malloy*, the Ninth Circuit had determined that a mistake of age defense was constitutionally required; whereas the Eighth and Eleventh Circuits had found that a reasonable mistake of age defense was not required under the First Amendment. *See United States v. United States District Court* ("District Court"), 858 F.2d 534 (9th Cir. 1988); *Gilmour v. Rogerson*, 117 F.3d 368, 373 (8th Cir. 1997); *United States v. Deverso*, 518 F.3d 1250 (11th Cir. 2008). The Fourth Circuit concurred with the Eighth and Eleventh Circuit's reasoning.

The Ninth Circuit stands alone on this issue today. In addition to the Fourth Circuit in *Malloy*, seven circuit courts of appeals have "rejected the reasoning and rationale adopted by the Ninth Circuit" and concluded that § 2251(a) does not violate the First Amendment or the Due Process Clause. *United States v. Henry*, 827 F.3d 16, 24 (1st Cir. 2016).

[31] For example, although Skinner recognizes the existence of binding Fourth Circuit precedent on this issue, he claims that his prosecution violates the First Amendment because of the Supreme Court's ruling in *Smith v. California*, 361 U.S. at 147. In that case, the Supreme Court indicated that *some* measure of *mens rea* was necessary in *some* child pornography

*Free Speech Coalition* in support of his argument that § 2251(a) violates the First Amendment as applied to him. (*Id.* 9–10.) Again, Skinner inappropriately treats a virtual conversation as something that can subsume interaction with an actual child in real time. It cannot.

In *Free Speech Coalition*, the Supreme Court considered whether the criminalization of computer-animated child pornography—where the sexual images did not depict an actual child but rather a computer-generated version of one—violated the First Amendment. 535 U.S. at 240 ("By prohibiting child pornography that does not depict an actual child, the statute goes beyond *Ferber* which distinguished child pornography from other sexually explicit speech because of the State's interest in protecting the children exploited by the production process."). As Justice O'Connor explained in her concurring opinion, the pornography at issue in that case initially "looks like the material at issue in *Ferber*, [but] no children are harmed in the process of creating such pornography" because the materials only appear to be of a minor. *Free Speech Coal.*, 535 U.S. at 262. In differentiating the production of computer-animated child pornography from *Ferber*, the majority found that computer-animated child pornography "is not 'intrinsically related' to the sexual abuse of children." *Free Speech Coal.*, 535 U.S. at 250. Therefore, the

---

offenses. *See id.* The Supreme Court later confirmed that holding in *Ferber*, stating that "criminal responsibility may not be imposed without some element of scienter on the part of the defendant." 458 U.S. at 765. Skinner suggests that he lacked the requisite *mens rea* that V1 was underage, and therefore his prosecution would chill protected speech. But this approach mirrors the Ninth Circuit's approach in *District Court* and misapplies *Ferber*.

"Some element of scienter" does not mean that every element of § 2251(a) requires knowledge of the act in that element. *Ferber*, 458 U.S. at 765. The statute proscribes inducing a minor to engage in sexual conduct "for the purpose of producing" a visual depiction of such conduct. § 2251(a). "In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent." *United States v. Bailey*, 444 U.S. 394, 405 (1980). Therefore, true to *Ferber*'s command, an offense under § 2251(a) does require "some element of scienter." *See, e.g., United States v. Tollefson*, 367 F. Supp. 3d 865, 874 (E.D. Wis. 2019) (determining that § 2251(a)'s inclusion of the word purpose reflected a scienter requirement under the language of *Ferber*). The defendant must specifically intend to produce the pornographic material at issue. Therefore, § 2251(a) does not constitute a pure strict liability statute that would violate *Ferber*.

government did not have the same interests in banning computer-animated child pornography that it did in banning child pornography produced with *actual* children.  *See id.*

Skinner rests his argument on *Free Speech Coalition*'s observation that the production of child pornography was "intrinsically related" to the abuse of children.  535 U.S. at 250.  He claims that because V1 was at home and voluntarily initiated the exchange of sexually explicit material "with an individual literally on the other side of the planet," the production of child pornography of her actions "cannot implicate the concerns and exploitation that were the basis of the decision in *Ferber*."  (First Am. Mot. Dismiss 10.)  Skinner argues that because he produced child pornography through online means, and not through direct physical contact with V1, his case does not implicate concerns about the protection of actual children articulated in *Ferber* and draws this case closer to the Supreme Court's ruling in *Free Speech Coalition.*

Not so.  This case bears little to no factual similarities with *Free Speech Coalition* because it involves an actual child in real time, regardless of how the child pornography was made, rather than computer-generated or virtual children as in *Free Speech Coalition.*  The record shows that Skinner had notice of a Virginia statute proscribing sexual relations with minors and that he knew V1 was under the age of eighteen.  Though Skinner allegedly thought V1 was sixteen, she was thirteen years old at the time of the offense.  Skinner could see and observe V1 through their online interactions.  Skinner recorded V1 without her consent. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Despite this request, Skinner did not delete the files, and brought one video with him to the United States on his cell phone.  Although not necessary for liability to attach under § 2251(a), Congress's stated purpose of protecting children from revictimization applies here.

Case 3:19-cr-00019-MHL   Document 121 *SEALED* (Court only)   Filed 03/10/21   Page 57 of 59 PageID# 1121

The harms that both Congress and case law identify regarding child pornography are not dispelled simply because a relationship with an actual child exists solely online. Congress has detailed the harms that flow from the production of those images when the subject used is an actual child, not a computer-generated image. Congress has found that even the act of viewing child pornography is intrinsically harmful to the child victim. "Child pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed." ECPPA § 102(3). Whether or not he distributed the images or videos, Skinner created such a permanent record of V1.[32]

Skinner's characterization of his relationship as "consensual" also fails to place this case outside the bounds of *Malloy*.[33] First, as a matter of law, V1, a thirteen-year-old girl, could not consent to the "self-destructive decisions" that Skinner claims were consensual. *Malloy*, 568 F.3d at 175. The record here more closely resembles one where an adult man grooms and convinces a minor child to engage in legally prohibited conduct than one which is consensual.



United States law

---

[32] Despite Skinner's attempts to differentiate *Ferber*, that case concluded that "the materials produced [during the production of child pornography] are a permanent record of the child[]'s participation and the harm to the child is exacerbated by their circulation." *Ferber*, 458 U.S. at 757. In *Free Speech Coalition*, the Supreme Court stated that "each new publication of the speech [causes] new injury to the child's reputation and emotional well-being." 535 U.S. at 249. And just recently, the Fourth Circuit emphasized the "deeply harmful effects" that the production of child pornography "can wreak on individual lives and on our social fabric." *McCauley*, 983 F.3d at 696. Skinner's argument that § 2251(a)'s censure serves only to protect children from in-person exploitation finds no support in congressional proscription of child pornography, nor in the case law.

[33] Counsel for Skinner suggests that he was an immature man who thought he was in love and acted improperly based on that. In part because Skinner threatened suicide, Counsel emphasizes that he likely had mental health issues. If convicted, these issues could be raised as potential mitigating arguments for sentencing. But they are improper here as a defense, even presuming the facts supported such a stance.

proscribes a sexual relationship between a twenty-four-year-old man and an actual  child, even online.  Skinner encouraged V1 to ▮▮▮▮ Those photographs and videotapes are child pornography.

The evidence submitted to the Court strongly suggests that Skinner encouraged and pressured V1 ▮▮▮▮ Because V1 was not a computer-animated image, but an actual child, § 2251(a) is constitutional as applied to Skinner.  Accordingly, the Court will deny Skinner's Motion to Dismiss on First Amendment Grounds.

As previously stated, the Court incorporates its Speedy Trial Act findings from the Suppression Decision.  As explained, the delays in this case are not the result of an improper Government purpose or of Government negligence.  The Government pursued its prosecution with reasonable diligence, but delays occurred for valid reasons outside the control of either party.  As a result, the Court concludes that the Speedy Trial factors do not weigh in favor of Skinner, despite the length of time that has passed since the superseding indictment and the issuance of this Memorandum Opinion.  Under these circumstances and on this record, Skinner's Sixth Amendment right to a speedy trial has not been violated.

### III. Conclusion

For the foregoing reasons, the Court will deny Skinner's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Violation of Due Process, (ECF No. 69), Skinner's Motion to Dismiss on Fifth Amendment Due Process Grounds, (ECF No. 72), and Skinner's Motion to Dismiss on First Amendment Grounds, (ECF No. 71).

An appropriate order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 3-16-21
Richmond, Virginia