IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:19-cr-19-MHL |
| | ) |
| TROY GEORGE SKINNER, | ) |
| | ) |
| *Defendant*. | ) |

**UNITED STATES' POSITION ON SENTENCING AND RESPONSE IN
OPPOSITION TO DOWNWARD VARIANCE MOTION**

The United States of America, through undersigned counsel, submits the following position regarding the sentencing of defendant TROY GEORGE SKINNER. The defendant's Presentence Report (PSR) calls for a Total Offense Level of 38 and a Guidelines range of 235–293 months' imprisonment on Count One. The United States objects to the PSR's failure to include a two-level enhancement under § 2G2.1(b)(2)(A) because the offense involved "sexual contact." Accordingly, the government believes the appropriate Total Offense Level is 40, bringing with it a Guidelines range of 292–365 months' incarceration. A Guidelines range sentence is appropriate for the defendant, and the Court should therefore deny the defendant's motion for downward variance.

**Discussion**

During sentencing, federal courts must follow a multistep process that analyzes both procedural and substantive concerns. First, the court must correctly calculate the applicable Guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Second, "the court must determine whether a sentence within that range serves the factors set forth in § 3553(a)

and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted). To the extent the Court deems some deviation from the Guidelines range appropriate, the Court must give serious consideration to the extent of the deviation and must adequately explain it "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 365 (internal quotation marks omitted). In all events, the Court must impose a sentence that takes into consideration the factors listed under 18 U.S.C. § 3553(a). *See id.* at 364.

I. THE PRESENTENCE REPORT GUIDELINES CALCULATIONS.

    A. **Government's Objection to the PSR's Failure to Provide the "Sexual Contact" Enhancement Pursuant to § 2G2.1(b)(2)(A).**

The defendant's offense of conviction in Count One of the Indictment involved his creation of a child pornography video depicting the victim engaged in masturbation and lascivious exhibition of the genitals. (PSR ¶ 24). By way of relevant conduct, the defendant also used the minor victim to record numerous other videos depicting masturbation, in addition to the lascivious exhibition of genitals and the victim's fondling of her own breasts. The information included in Government's Exhibit 1 was previously provided to the U.S. Probation Office and counsel for the defendant in support of the government's position with regard the application of both the two-level "sexual contact" enhancement under § 2G2.1(b)(2)(A) and the five-level enhancement for Repeat and Dangerous Sex Offender Against Minors pursuant to § 4B1.5 discussed further below. Government's Exhibit 1 shows

that from January 11, 2018, through February 9, 2018,[1] the defendant created 49 videos[2] memorializing the victim's masturbation during surreptitiously recorded video calls.

SKINNER should receive a 2-point enhancement under § 2G2.1(b)(2)(A) because "the offense involved the commission of a sexual act or **sexual contact**." As set forth in the Sentencing Guidelines, "sexual contact" has the meaning given that term in 18 U.S.C. § 2246(3). *See* U.S.S.G. § 2G2.1, comment. (n.2).

Title 18, United States Code, Section 2246(3) states:

> [T]he term "**sexual contact**" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of <u>any person</u> with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of <u>any person</u>

As alleged in the Indictment and agreed to by the defendant as part of his guilty plea, the child pornography video that the defendant produced depicted masturbation. Masturbation obviously involves the intentional touching of genitals. The defendant also induced the victim to engage in the intentional touching of her breasts. There can be no real question, then, that the activities the defendant induced the victim to engage in involved several forms of intentional touching described in § 2246(3). The only question is whether one person touching another is necessary for application of the enhancement. Because

---

[1] The GeForce Experience application the defendant used to record the videos on his desktop incorporated the file creation date in the file name. For example, in line 32 the file named "Desktop 01.11.2018 - 07.14.07.87.DVR.mp4" was recorded on January 11, 2018.

[2] The government's review of the file descriptions in Exhibit 1 identified the following videos depicting child pornography, designated by line number: 32, 39, 40, 43, 44, 45, 46, 52, 54, 56, 58, 60, 62, 63, 64, 65, 66, 68, 69, 71, 72, 73, 74, 78, 80, 83, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 96, 98, 101, 102, 103, 104, 105, 113, 114, 115, 116, 117, 119.

§ 2246(3) does not use the term "another person" but instead uses "any person," the answer to this question is an easy "yes."

*United States v. Shafer*, 573 F.3d 267 (6th Cir. 2009) is instructive. The *Shafer* defendant, like SKINNER, induced a minor to masturbate for purposes of creating sexually explicit photographs for the defendant's enjoyment. *Id*. at 269. The victim in *Shafer* was an 11-year-old boy and the defendant produced seven images. On rehearing, the Sixth Circuit held that "sexual contact" was not limited to acts where one person touched another but rather included self-masturbation by the victim. *Id*. at 273–274. The Sixth Circuit ultimately affirmed the application of the two-level enhancement under § 2G2.1(b)(2)(A) and the *Shafer* defendant's 30-year-sentence.

Key to the analysis of the enhancement is the plain language of 18 U.S.C. § 2246(3). The definition for "sexual contact" provided by § 2246(3) twice makes reference to "any person." First, the actor is "any person" who is doing the touching. Second, the same broad language is used to describe the first actor's intentions for the contact, i.e., that it was done "with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of *any person*." *Id*. at 271. (Emphasis added.) The term "another person" is simply not included in § 2246(3)'s definition.

Multiple other circuits have reached the same conclusion as *Shafer* that masturbation, including a victim's masturbation, satisfies the "any person" component of "sexual contact" for purposes of § 2G2.1(b)(2)(A). *See, e.g., United States v. Raiburn*, 20 F.4th 416, 423–24 (8th Cir. 2021) (victim's masturbation); *United States v. Pawlowski*, 682 F.3d 205, 211–12 (3d Cir. 2012) (defendant's masturbation); *United States v. Aldrich*, 566 F.3d 976, 979 (11th

Cir. 2009) (defendant's masturbation); *United States v. Dean*, 591 F. App'x 11 (2d Cir. 2014) (unpublished summary order) (presumably defendant's masturbation).

The weight of circuit opinions supports the application of the two-level "sexual contact" enhancement. Moreover, the government is not aware of any courts reaching a contrary conclusion. Accordingly, applying the enhancement under § 2G2.1(b)(2)(A) in SKINNER's case is clearly appropriate. The government respectfully asks this Court to sustain its objection.

> **B. The 5-point Enhancement Under § 4B1.5 for Repeat and Dangerous Sex Offender Against Minors is Correctly Applied and Defendant's Objection Should be Overruled.**

The five-level enhancement for Repeat and Dangerous Sex Offender Against Minors is correctly applied in the defendant's case. As noted in Exhibit 1, over a 29-day period the defendant produced 49 child pornography videos. Section § 4B1.5(b) provides that:

> *(b) In any case in which the defendant's instant offense of conviction is a **covered sex crime**, neither §4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a **pattern of activity** involving **prohibited sexual conduct**:*
>
> > *(1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three. However, if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from §3E1.1.*

As defined in the Sentencing Guidelines, "**covered sex crime**" includes an offense under Chapter 109A of Title 18 (not including trafficking in, receipt of, or possession of, child pornography). The defendant's offense of conviction for production of child pornography is thus a covered sex crime. U.S.S.G. § 4B1.5, comment. (n.2). A "**pattern of activity,**" as that term is defined for subsection (b) of § 4B1.5, occurs if on <u>at least two separate occasions</u>, the defendant engaged in **prohibited sexual conduct** with a minor. *See*

U.S.S.G. § 4B1.5, comment. (n.4.(B)). It does not matter whether the occasions occurred during the course of the instant offense or lead to a conviction. *Id*. "**Prohibited sexual conduct**" includes the production of child pornography. *See* U.S.S.G. § 4B1.5, comment. (n.4.(A)).

Contrary to the defendant's objection, the enhancement does not require multiple victims. The plain language of the enhancement and its use of the singular noun "a minor" indicates that the repeated abuse of a single victim can trigger the enhancement. *See* U.S.S.G. § 4B1.5, comment. (n.4.(B)(i)). Multiple circuit courts have held this to be true. *See*, *United States v. Fox*, 926 F.3d 1275, 1279 (11th Cir. 2019); *United States v. Pappas*, 715 F.3d 225, 229 (8th Cir. 2013) (explaining that the use of "a minor" in Application Note 4(B)(i) shows that repeated sexual offenses against the same minor meet § 4B1.5(b)(1)); *United States v. Brattain*, 539 F.3d 445, 447–48 (6th Cir. 2008) (holding that the use of "a minor" in Application Note 4(B)(i) demonstrates that repeated sexual offenses against the same victim also meet § 4B1.5(b)(1)); *United States v. Phillips*, 431 F.3d 86, 90 n.5 (2d Cir. 2005) ("[u]nder Application Note 4 . . . the 'pattern' can be satisfied by the exploitation of one minor, instead of two.")

The defendant's objection to the five-level enhancement under § 4B1.5(b) lacks merit and should therefore be overruled.

II. **THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553 SUPPORT A STATUTORY MAXIMUM SENTENCE.**

Under 18 U.S.C. § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. In determining a particular sentence to be imposed, the Court shall consider:

 (1)  the nature and circumstances of the offense, and the history and characteristics of the defendant; and

 (2)  the need for the sentence imposed—

   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the defendant; and

   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The factors also include "the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct" and "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(6), (7)[3]. To arrive at the appropriate sentence, "the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the case before it." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009).

 A.  **Nature and Circumstances of the Offense**

The facts of SKINNER's case are extremely well known to the Court by this point and do not require extensive repetition. Like undoubtedly thousands, or tens of thousands, of other individuals prosecuted over the years in the United States, the defendant began an online relationship with a minor. Initially their relationship was, at a minimum, age inappropriate. As things quickly evolved and crossed over into the emotional and sexual

---

[3] Section 3553(a) also requires consideration of the kinds of sentences available, the applicable Guidelines range, and pertinent policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3553(a)(3)(4), (5).

realm, it became illegal.  Also like many other defendants caught in SKINNER's spot, his criminal conduct involved the secret production of child pornography that the victim was unaware of at the time.

While the government and the defense have perspectives that are very different, there is one thing the parties agree on: "Troy Skinner's case is different."  To the government's knowledge, this is the only case involving a defendant who flew halfway around the globe for the purpose confronting a 14-year-old girl who broke off their online relationship.  The defendant now claims that once he was denied entry into the victims' home, his thoughts of killing himself came full circle.  He realized at that moment that the situation became an opportunity for "suicide-by-girlfriend's-mom."

Such assertions should be taken with a healthy pinch of salt.  The defendant undeniably has a history of depression and was significantly depressed when his 14-year-old victim felt compelled to break off their relationship.  His actions and demeanor on June 22, 2018, however, strongly indicated fury and not sadness.  It was wild-eyed rage that the victim and her mom recalled seeing in the defendant's face when he was denied entry into the house.  As described by the victim's mother, the defendant did not simply stand there and allow himself to be shot.  Rather, he was pushing his body through the opening he had created by smashing a window and was wildly flailing his arm in an apparent attempt to open the door from the inside when she fired her gun.

B. **History and Characteristics of the Defendant**

SKINNER is 28 years old and has no known criminal convictions prior to this offense.  The defendant's childhood was truly awful.  He was physically and emotionally

abused until the age of 12 by a mentally ill mother who suddenly disappeared and hasn't been seen or heard from since. Thereafter the defendant moved in with a father whom he knew little of during the previous 12 years. The defendant's father was emotionally absent, inattentive as a parent, and failed on a regular basis to meet the defendant's basic needs.

Unsurprisingly, the defendant has a history of mental health issues that include severe depression, anxiety disorder and attachment disorder, among others. And like many people with severe mental illness, he has a history of self-medicating with some illicit drugs and much alcohol.

### C. Seriousness of the Offense

The seriousness of SKINNER's offense is another topic that is patently obvious and should not require extensive analysis. Still, there are a number of points worth noting. One is the horror the victim's family felt as they first learned that the defendant was someone their 14-year-old daughter had met online on the day that he tried to force his way into their house. The fact that the mother was able to successfully prevent the defendant's forcible entry by shooting him in the neck did not diminish the horror then and does not diminish the horror now.

The overwhelming majority of parents of child abuse victims feel the pain of knowing that their underage son or daughter has been sexually violated. Many will unfairly blame themselves for not better protecting their children. In SKINNER's case, not only did the victim's parents undoubtedly experienced that anguish, but they also felt real fear that their entire family was in physical danger from this unidentified presence trying to smash his way into their house.

Another impact is the damage to trust in all directions within the victim's family. The trust between parents and a teenage girl who was about to enter her dating years could not help but be damaged. And every boy or young man who could be a potential romantic date for the victim will likely be viewed with some level of distrust by both the victim and her parents.

Some outside indicators of the seriousness of the defendant's conduct are the penalties that Congress and the Sentencing Commission have ascribed to each offense the defendant committed or arguably committed. Had the defendant gone to trial and been convicted of two or more counts of production of child pornography, or one count of production and one count of kidnapping pursuant to 18 U.S.C. § 1201, the grouping principles for multiple counts under U.S.S.G. § 3D1.1 would have yielded a Guidelines range of life.

Worth considering also is the statutory mandatory minimum penalty for kidnapping or attempted kidnapping of a child less than 18 years of age. Pursuant to 18 U.S.C. § 3559(f)(2), the penalty for violent crimes against children, including kidnapping, is a 25-year mandatory minimum. Defendant will predictably argue that he was not convicted of kidnapping, and moreover it was his intention that day not to restrain or remove anyone for an appreciable period of time but rather to get himself shot. But the facts of the case present more than a colorable claim that his intent when entering the home was either to remove or restrain someone, which in either case would have been against their will. It was not until he was already shot and lying on the grass that he ever said to anyone "shoot me."

These penalties are not mandatorily applicable in the defendant's case, obviously. They are, nonetheless, informative when engaged in the process of attempting to quantify in months the assessments made by the legal system and society regarding the gravity of the defendant's conduct.

### D. Need to Deter Future Criminal Conduct and Promote Respect for the Law

A sentence at the upper end of the Guidelines range would achieve the goals of specific deterrence for this defendant while also promoting respect for the law. The Court must also consider how to deter others as a general matter from engaging in similar conduct. *See, e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionally minimized."). Absent a long term of imprisonment to punish egregious online predation of children, general deterrence— "the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real, and that the grim consequence of imprisonment is likely to follow" —will not be achieved. *United States v. Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976). An upper-end Guideline range sentence is necessary to send the appropriate message to both SKINNER and others that those who engage in this conduct will be caught and punished significantly.

### E. Need to Protect the Public from the Defendant's Future Criminal Conduct

A Guidelines range sentence would provide adequate protection to the public from future criminal conduct by the defendant. As genuinely sympathetic as SKINNER's

childhood and mental health issues may be, they actually militate against a downward variance. The defendant's mental health issues have been a long time in the making, and likely will not be resolved easily, if ever. Multiple previous rounds of therapy and treatment appear to have yielded only grudging and temporary progress. More disturbingly, the defendant himself has stated that when he has gone as low as he can go with sadness his mind goes next to anger. The events of June 22, 2018, certainly appear to confirm that. The defendant's wild impulsivity, the extremeness of his behavior, and the apparent intransigence of his mental health problems, whether considered separately or collectively, do not bode well for giving the defendant a lenient sentence and an early release from prison.

### F. Substance Abuse and Mental Health Treatment or Vocational Training

As noted above, the defendant has multiple mental health and substance abuse issues that would benefit from the treatment programs offered in the Bureau of Prisons.

### G. Need to Avoid Unwarranted Sentencing Disparities

There is no compelling reason to treat SKINNER differently from those who have engaged in comparable criminal conduct. A quick review of cases discussed above involving defendants found guilty of production of child pornography shows that sentences around 360 months are common. *See, e.g., United States v. Raiburn*, 20 F.4th 416 (8th Cir. 2021) (360 months' imprisonment); *See*, *United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019) (360 months' imprisonment); *United States v. Pappas*, 715 F.3d 225, 229 (8th Cir. 2013) (360 months' imprisonment for sexual exploitation with 120 months' consecutive for child pornography possession). SKINNER's offense fits squarely within the recommended

Guidelines range of 292–365 months. Sentencing him within that range would avoid unwarranted disparities with other similarly situated defendants.

### III. DEFENDANT'S MOTION FOR A DOWNWARD VARIANCE IS UNWARRANTED

As the government has repeatedly argued above, a Guidelines range sentence for SKINNER is appropriate. The government offered the defendant a guilty plea to a single count of production of child pornography because it did not deem a life sentence necessary to satisfy the sentencing factors set forth in § 3553(a). There is sufficient latitude within a Guidelines range 292–365 months for the Court to craft a sentence that is sufficient but not greater than necessary to satisfy those factors. It is worth remembering, however, that to a certain degree the defendant has already received leniency. A downward variance below the above sentencing range would not be sufficient to satisfy § 3553(a)'s factors and is not warranted in this case.

### CONCLUSION

SKINNER's conduct was beyond egregious. The mitigation he presents regarding his abusive childhood and mental health issues falls short of negating the multiple factors calling for a tough sentence. For the reasons discussed above, the United States respectfully requests that the Court impose a sentence at the upper end of the Guidelines range.

Moreover, regardless of whether certain sentencing enhancements are correct applied, or what is the correct sentencing range recommended by the Guidelines, a sentence at, or close to, 360 months is required to adequately address all the factors set forth in § 3553(a).

The United States requests that this Court expressly make such a finding on the record at sentencing.

                                                Respectfully submitted,

                                                JESSICA D. ABER
                                                UNITED STATES ATTORNEY

By:   */s/  Brian R. Hood*
       Assistant United States Attorney
       United States Attorney's Office
       919 East Main Street, Suite 1900
       Richmond, VA 23219
       Telephone: (804) 819-5400
       Email: brian.hood@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **February 1, 2022**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties of record.

                              Respectfully submitted,

                              JESSICA D. ABER
                              UNITED STATES ATTORNEY

By:   */s/  Brian R. Hood*
        Assistant United States Attorney
        United States Attorney's Office
        919 East Main Street, Suite 1900
        Richmond, VA 23219
        Telephone: (804) 819-5400
        Email: brian.hood@usdoj.gov