IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:19cr19 (MHL) |
| | ) |
| TROY SKINNER, | ) |
| | ) |
| *Defendant.* | ) |

**MR. SKINNER'S RESPONSE TO GOVERNMENT'S
SENTENCING POSITION AND OBJECTION AND
REPLY TO GOVERNMENT'S RESPONSE TO VARIANCE SENTENCE**

Troy Skinner, through counsel, responds as follows to the government's sentencing position and objection to the presentence report and replies to the government's response to his variance motion:

**I.   This Court should not add two additional levels because this case did not involve sexual contact as defined by 18 U.S.C. § 2246.**

The probation officer has correctly determined that this Court should not add two additional levels to Mr. Skinner's offense level under U.S.S.G. § 2G2.1(b)(2)(A). Masturbation during an online video call does not qualify as "sexual contact." Application note two to § 2G2.1 provides that that term has the same definition as provided in 18 U.S.C. § 2246(3). "Sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

While some circuits have found that masturbation qualifies as "sexual contact" under § 2246(3), *see* ECF No. 150 at 4-5, the analysis of those decisions is generally the same—those

courts have interpret the "any person" in § 2246(3) to mean every person. These cases ignore a plain reading of the statute in an attempt to cover additional conduct. The "intentional touching" refers to the intent, and therefore conduct, of the defendant. As the legislative history details, "[t]he touching must be intentional, which requires proof that the touching was the defendant's conscious objective." H. REP. NO. 99-594, 99th Cong., 2d Sess. (May 9, 1986) (citing H. REP. NO. 1396, 96th Cong., 2d Sess. 33 *17 (1980)). The legislative history of 18 U.S.C. § 2246(3) also evidences a legislative intention that 18 U.S.C. § 2246(3) "reach all forms of sexual abuse of another," not self-directed activity. H. REP. NO. 99-594, 99th Cong., 2d Sess. at 11 (May 9, 1986).

Further, Congress has specifically included "masturbation" in other statutory definitional sections, yet chose not to specifically use this language in 18 U.S.C. § 2246. For example, 18 U.S.C. § 2256(2)(A)(iii) defines "sexually explicit conduct" to include masturbation. If Congress had intended to include masturbation within the definition of sexual contact, when it has done so in other statutes, it would have done so here. *See, e.g.*, *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."). Thus, masturbation during an online video call does not constitute "sexual contact."

The rule of lenity requires the same. When there are two plausible interpretations for a phrase, here "sexual contact," the Court cannot apply the harsher of the two interpretations against a criminal defendant:

> [W]hen there are two equally plausible interpretations of a criminal statute, the defendant is entitled to the benefit of the more lenient one. "[T]he tie must go to the defendant." *United States v. Santos*, 553 U.S. 507, 514 (2008) . . . . "This venerable rule not only vindicates the fundamental principle that no [defendant] should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is

2

not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead."

*United States v. Taylor*, 640 F.3d 255, 259-60 (7th Cir. 2011) (internal citations omitted) ("masturbation is a form of 'sexual activity' in the ordinary-language sense of the term, which judges use on occasion just as laypersons do. Masturbation is also a 'sexual act' in that sense, but not in the statutory sense."). Thus, under the plain language of the statute, the presumption that Congress intentionally omitted the act of masturbation from the definition of "sexual contact," and the rule of lenity, this two-point enhancement cannot be applied to Mr. Skinner's conduct in this case.

### II. The government's position on the "repeat and dangerous sex offender" enhancement fails to appreciate the rationale underlying that enhancement.

Section 4B1.5 of the guidelines is entitled, "Repeat and Dangerous Sex Offender Against Minors." It comes immediately following the sections of the guidelines that provide for enhanced punishments for career offenders (requiring proof of at least two prior crimes of violence or drug distribution felony convictions) and armed career criminals (requiring proof of at least three prior crimes of violence or certain drug distribution felony convictions) and those who make their livelihood from criminal activity. *See* U.S.S.G. §§ 4B1.1-4B1.4. Those guideline sections clearly target criminal defendants who continue to engage in criminal behavior despite intervention—the definition of recidivism.

So too § 4B1.5. In 1998, as a part of the Protection of Children from Sexual Predators Act, Congress directed the Sentencing Commission to promulgate guidelines that targeted defendants "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Pub. L. No. 105-314, § 505, 112 Stat. 2974 (1998). This legislation was in response to

3

testimony from "federal law enforcement [who] testified about the nature of child sex offenders, how they seek out relationships with children and how the recidivism rates for such offenders are 10 times higher than other types of criminal offenders." H.R. Rep. 105-557, at *12 (1998).

The Sentencing Commission decided that because of this concern for recidivism, "prior criminal conduct should have a direct effect on the level of punishment, and thus the Commission created a new criminal history guideline that focuses on repeat child sex offenders. Under the amended guideline, offenders with prior convictions for sexual abuse of a minor will receive greatly enhanced sentences, and those who have exhibited prior prohibited sexual conduct with two or more victims[1] will also receive increased sentences." Diana E. Murphy, Symposium, *Inside the United States Sentencing Commission: Federal Sentencing Policy in 2001 and Beyond*, 87 Iowa L. Rev. 359, 374 (2002) (chair of Sentencing Commission commenting that § 4B1.5(b) was adopted to punish sex offender recidivists). As the Fourth Circuit has observed in *United States v. Dowell*, 771 F.3d 162, 171 (4th Cir. 2014), the commentary to § 4B1.5 makes clear that this provision is designed to increase punishment for those a court finds "present a continuing danger to the public" because they are "repeat sex offenders."

None of that applies to Mr. Skinner. Mr. Skinner's sexual conduct in this case is limited to an online sexual relationship he had with a young woman he reasonably believed was sixteen-years old—the age of consent in New Zealand—for a month and a half. Mr. Skinner has never had any other similar relationship. He has never been engaged in any sexual way with any other minor. He has never contacted this young woman after his arrest in this case. He is not a sexual

---

[1] The Sentencing Commission later amended this comment to reflect that the recidivist conduct forming the pattern of abuse could be based on continued sexual abuse of one minor. But that change did nothing

4

recidivist. And he certainly does not present a continuing danger to the public. The letter from the jail superintendent makes it patently clear that Mr. Skinner "has demonstrated significant and material growth in his personal level of responsibility and accountability" and "[i]n every aspect he has come to be a model inmate and an example to his peers. In the truest sense, he is an example of how the correctional system is supposed to work." ECF No. 147-1. This Court should not apply a recidivist enhancement to Mr. Skinner—who has not recidivated—that would have the effect of adding **one hundred months** to the low end of his sentencing guidelines.

### III. The facts and circumstances of this case do not warrant a sentence above 180 months.

The government's position that Mr. Skinner should serve a sentence of twenty-five to thirty years in prison before being deported to New Zealand belies several critical aspects of this case. First, the idea that Mr. Skinner traveled to the young woman's house for the purpose of kidnapping her is at odds with the facts. After arriving in the mid-Atlantic region, Mr. Skinner took a Greyhound bus from Washington, D.C. to Richmond. He stayed overnight in a hostel in the Richmond area. He took a ride share from the Richmond area to Goochland, Virginia. The ride share driver dropped him off at the young woman's home and left. If Mr. Skinner's true purpose in traveling to the young woman's house was to kidnap her, how would he have managed to do that? Walk on foot with her down the street in a neighborhood he had never been to, in a town he knew nothing of and no one else in, twenty miles from the nearest public transportation? Hardly. All reasonable inferences and evidence indicate that Mr. Skinner's intent was that he would either happily reunite with the young woman he loved (delusional as that hope was) or perish.

---

to diminish that § 4B1.5 targets sexual predators who have a history of ***prior*** sexual abuse of a minor.

Mr. Skinner did not come to the young woman's home at night under a cloak of darkness. He came in the middle of the day. No disguises. No ruses. He knocked on the front door, and got no answer. He walked around to the back door to the basement and knocked again. Realizing then that he was not going to be let in—that there was to be no happy reunion, he went up the porch stairs to the other back door, determined then to self-destruct. When the young woman's mother pointed a gun at him through the window, he prompted her to shoot him. She did so, hitting him in the neck. He staggered off, making it to a neighbor's yard before collapsing. Numerous surgeries and many weeks in the hospital later, Mr. Skinner found himself alive, in custody, and facing for the first time in his life criminal charges.

Rather than succumb to the overwhelming depression that shrouded him, Mr. Skinner has spent the last three years trying to come to grips with his actions and his future. He has been incredibly productive. He studied hard and obtained his G.E.D. at Northern Neck Regional Jail, achieving the highest score that the teacher there remembers anyone else at the jail attaining. He has worked for years as a trustee in the jail's kitchen, first serving trays and later washing dishes and preparing food. He developed an exercise program for himself, losing an immense amount of weight in the process. He has shared this exercise program with other inmates at the jail, inspiring them to become healthier and more productive citizens. He has mentored other inmates and worked to prove to himself and others that he will not be bound by his past actions. According to the jail superintendent, "[i]n every aspect [Mr. Skinner] has come to be a model inmate and an example to his peers. In the truest sense, he is an example of how the correctional system is supposed to work." ECF No. 147-1.

Second, the government has said nothing about this rehabilitation, ignoring that this Court must account for Mr. Skinner's post-offense rehabilitation. *See, e.g.*, *United States v.*

6

*McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) ("While the district court is still empowered in its discretion to consider the facts of Appellants' original transgressions, the district court must also at least weigh Appellants' conduct in the years since their initial sentencings."); *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019) ("The district court must provide an individualized explanation for why Martin's steps toward rehabilitation are meaningless. On remand, the district court should explain to Martin why her sentence of life imprisonment for a nonviolent drug offense must remain undisturbed despite overwhelming evidence of rehabilitation."); *Pepper v. United States*, 562 U.S. 476, 491 (2011) ("evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider"). The type of rehabilitation that Mr. Skinner has been able to achieve on his own over the last three years warrants significant consideration from this Court at sentencing.

Third, the government has also failed to grapple with Dr. Nelson's evaluation of Mr. Skinner. Dr. Nelson has found that, due in large part to severe neglect and abuse from his childhood, Mr. Skinner suffers from several very serious mental health conditions that were inflamed by the events in this case. And while he sought treatment for depression and anxiety in New Zealand, the efforts of professionals—as sincere as they were—only heightened Mr. Skinner's dependency on others for his sense of self and well-being. Dr. Nelson finds hope in Mr. Skinner's progress at the jail. She has made several attainable treatment recommendations for Mr. Skinner to aid in his progress. Mr. Skinner's past cannot be written off simply because he had mental health treatment before. Rather, the complexities of Mr. Skinner's mental health struggles require further, and appreciable, recognition from the Court in sentencing Mr. Skinner.

Fourth, the government attempts to lump Mr. Skinner with the "undoubtedly thousands, or tens of thousands" of child pornography defendants by pointing out the obvious similarity that

other defendants have met their minor victims online. *See* ECF No. 150 at 7. That is, however, where the comparison ends. Mr. Skinner did not seek out a relationship with a minor. He never had any sexual contact with a minor. And he had no intent sitting in his home in New Zealand to do that which the law prohibits. He spent almost his entire life online at that time, rarely signing off of his computer. He found others who lived similar lives and tried to build a community creating music and gaming. As a virtual recluse, particularly one with severe social anxiety and a very low sense of self-esteem, Mr. Skinner blossomed when he found someone he loved for the first time he could ever remember. That he could spend days online and hardly be out of touch except to sleep seemed to him to represent the depth of the feelings he had and believed were reciprocated in kind.

      What Mr. Skinner did not at the time understand but now appreciates as deeply as he possibly can is that his experience did not mirror that of the young woman's in this case. He is truly sorry that his actions harmed others, even if that was not his intent. This Court must sentence Mr. Skinner to no less than 180 months in prison based on the nature of the conviction in this case. But to sentence Mr. Skinner to more than that would contravene the unique circumstances of this case, the tragic history that Mr. Skinner brings to this Court, the fruits he has demonstrated he can achieve through rehabilitation, and the recognition that he will be deported from the United States with an effective lifetime ban on ever reentering the country. Fifteen years in prison is more than sufficient time to satisfy every factor this Court must consider in sentencing Mr. Skinner under 18 U.S.C. § 3553(a).

                                                   Respectfully submitted,
                                                   TROY SKINNER

                    By:          /s/
                          Robert J. Wagner, PLC

Va. Bar No. 27493
Counsel for Defendant
101 Shockoe Slip, Suite J
Richmond, VA 23219
(804) 814-8172
robwagnerlaw@gmail.com

Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org